**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:10-CIV-80644-RYSKAMP**

| | |
|---|---|
| ANDREA MIYAHIRA, Individually And On Behalf of All Others Similarly Situated, | ) ) ) |
| | ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| VITACOST.COM, INC., IRA P. KERKER, RICHARD P. SMITH, STEWART GITLER, ALLEN S. JOSEPHS, DAVID N. ILFELD, LAWRENCE A. PABST, ERAN EZRA, and ROBERT G. TRAPP, | ) ) ) ) ) ) |
| | ) |
| Defendants. | ) ) ) |

**DECLARATION OF JULIE PRAG VIANALE IN SUPPORT OF THE MOTION OF MONTGOMERY COUNTY EMPLOYEES' RETIREMENT FUND TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

I, Julie Prag Vianale, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a member in good standing of The Florida Bar. I am a member of the law firm of Vianale & Vianale LLP, proposed liaison counsel for Movant, Montgomery County. I submit this declaration in support of the motion filed by Montgomery County to: (1) be appointed as lead plaintiff, and (2) approve proposed lead plaintiff's selection of co-lead counsel for the Class.

2.      Attached as exhibits are true and correct copies of the following:

1

Exhibit A:     Certification and loss chart of Montgomery County with detailed listings of transactions.

Exhibit B:     Notice published on *Market Wire* on May 28, 2010, of the first securities class action complaint filed in this matter in the United States District Court for the Southern District of Florida.

Exhibit C:     Firm Biographies for proposed co-lead counsel, Kahn Swick & Foti, LLC and Chimicles & Tikellis LLP.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of July, 2010, at Boca Raton, FL.

                                        s/ Julie Prag Vianale

                                        **VIANALE & VIANALE LLP**
                                        Julie Prag Vianale (FBN 184977)
                                        jvianale@vianalelaw.com
                                        2499 Glades Road, Suite 112
                                        Boca Raton, FL  33431
                                        Telephone:  (561) 392-4750
                                        Facsimile:   (561) 392-4775

<u>**CERTIFICATE OF SERVICE**</u>

**I hereby certify** that on July 23, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<div style="margin-left: 40%;">

*/s/* Julie Prag Vianale
Julie Prag Vianale (FBN 184977)
jvianale@vianalelaw.com
2499 Glades Road, Suite 112
Boca Raton, FL  33431
Telephone:  (561) 392-4750
Facsimile:   (561) 392-4775

</div>

## SERVICE LIST (by CM-ECF)

*Miyahira v. Vitacost.com, Inc., et al*
Case No.9:10-cv-80644-RYSKAMP
United States District Court, Southern District of Florida

Paul R. Bessette
bessette@gtlaw.com
Michael J. Biles                          Joseph Clay Coates, III.
bilesm@gtlaw.com                          coatesj@gtlaw.com
Sandra D. Gonzalez                        **Greenberg Traurig LLP**
gonzalezsd@gtlaw.com                      Phillips Point - East Tower
Royale Price                              777 S Flagler Drive, Suite 300E
pricer@gtlaw.com                          West Palm Beach, FL 33401
**Greenberg Traurig LLP**                 Tel. (561) 650-7900
300 W 6th Street, Suite 2050              Fax. (561) 655-6222
Austin, TX 78701
Tel. (512) 320-7200
Fax. (512) 320-7210

Attorneys for Defendants Vitacost.com, Inc., Allen S. Josephs, David N. Illfeld, Eran
Ezra, Ira P. Kerker, Lawrence A. Pabst, Richard P. Smith, Robert G. Trapp,
and Stewart Gitler

Maya Susan Saxena
msaxena@saxenawhite.com
Joseph E. White, III
jwhite@saxenawhite.com
Lester Rene Hooker
lhooker@saxenawhite.com
Christopher Steven Jones
cjones@saxenawhite.com
**Saxena White PA**
2424 N Federal Highway, Suite 257
Boca Raton, FL 33431
Tel. (561) 394-3399
Fax. (561) 394-3382

Attorneys for Plaintiff Andrea Miyahira

# Exhibit A

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, James R. Matthews, hereby certifies as follows:

1.     I am fully authorized to enter into and execute this Certification on behalf of Montgomery County Employees Retirement Fund ("Montgomery County") concerning legal claims to be asserted involving VITACOST.COM, Inc. ("Vitacost.com") alleging violations of the federal securities laws.

2.     I have reviewed the complaint prepared by counsel against Vitacost.com, certain of its officers and directors, and the companies that served as the underwriters for Vitacost.com's stock offering. I have authorized counsel to file the complaint and the papers necessary to include me as a named plaintiff, a lead plaintiff, and a proposed class representative, in this action.

3.     Montgomery County did not purchase or otherwise acquire the security that is the subject of this action at the direction of counsel or in order to participate in this private action or other litigation arising under the federal securities laws.

4.     Montgomery County is willing to serve as a lead plaintiff in this matter and a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.     Montgomery County purchased common stock of Vitacost.com on the dates and at the prices indicated in the table, attached hereto as Exhibit A.

6.     During the three years prior to the date of this certification, Montgomery County has not sought to serve as a lead plaintiff in any class action under the federal securities laws.

6.     Montgomery County will not accept any payment for serving as a lead plaintiff or representative party on behalf of the class beyond its pro rata share of any recovery, except

1

reimbursement of reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I, James R. Matthews, declare under penalty of perjury that the foregoing is true and correct.

Executed this ___12___ day of ___July___, 2010.

James R. Matthews

# EXHIBIT A

| Date | Number of VITC Shares | Purchased/Sold | Price |
|------|------------------------|----------------|-------|
| 9/23/2009 | 2046 | Purchased | $12.00 |
| 9/24/2009 | 242 | Purchased | $11.45 |
| 9/24/2009 | 242 | Purchased | $11.63 |
| 10/9/2009 | 630 | Purchased | $10.82 |
| 10/12/2009 | 200 | Purchased | $10.77 |
| 10/16/2009 | 510 | Purchased | $10.83 |
| 10/23/2009 | 527 | Purchased | $10.72 |
| 10/26/2009 | 143 | Purchased | $10.49 |
| 10/27/2009 | 240 | Purchased | $10.69 |
| 11/9/2009 | 225 | Purchased | $8.60 |
| 12/23/2009 | 345 | Purchased | $10.03 |
| 12/24/2009 | 116 | Purchased | $10.04 |
| 12/29/2009 | 17 | Purchased | $10.05 |
| 12/30/2009 | 246 | Purchased | $10.08 |
| 1/6/2010 | 20 | Purchased | $10.60 |
| 1/7/2010 | 341 | Purchased | $10.53 |
| 1/8/2010 | 324 | Purchased | $10.66 |
| 1/11/2010 | 527 | Purchased | $10.80 |
| 3/10/2010 | 1,444 | Sold | $11.52 |
| 3/10/2010 | 341 | Sold | $11.37 |
| 3/11/2010 | 100 | Sold | $11.25 |
| 4/21/2010 | 1,190 | Sold | $8.97 |

**Loss Chart**
**MONTGOMERY COUNTY**
**Vitacost.com**

**Shares Sold After Close of Class Period**

| Purchase Date | Shares | Purchase Price | Cost | Sale Date | Sale Price | Proceeds | Loss |
|---|---|---|---|---|---|---|---|
| 10/16/2009 | 4 | $10.83 | $43.32 | 4/21/2010 | $8.97 | $35.88 | ($7.44) |
| 10/23/2009 | 527 | $10.72 | $5,649.44 | 4/21/2010 | $8.97 | $4,727.19 | ($922.25) |
| 10/26/2009 | 143 | $10.49 | $1,500.07 | 4/21/2010 | $8.97 | $1,282.71 | ($217.36) |
| 10/27/2009 | 240 | $10.69 | $2,565.60 | 4/21/2010 | $8.97 | $2,152.80 | ($412.80) |
| 11/9/2009 | 225 | $8.60 | $1,935.00 | 4/21/2010 | $8.97 | $2,018.25 | $83.25 |
| 12/23/2009 | 51 | $10.03 | $511.53 | 4/21/2010 | $8.97 | $457.47 | ($54.06) |
| **Total** | **1190** | | **$12,204.96** | | | **$10,674.30** | **($1,530.66)** |

**Shares Held**

| Purchase Date | Shares | Purchase Price | Cost | Holding Price* | Held Value | Gain/Loss |
|---|---|---|---|---|---|---|
| 9/23/2009 | 2046 | $12.00 | $24,552.00 | $9.59 | $19,621.14 | ($4,930.86) |
| 9/24/2009 | 242 | $11.45 | $2,770.90 | $9.59 | $2,320.78 | ($450.12) |
| 9/24/2009 | 242 | $11.63 | $2,814.46 | $9.59 | $2,320.78 | ($493.68) |
| 10/9/2009 | 630 | $10.82 | $6,816.60 | $9.59 | $6,041.70 | ($774.90) |
| 10/12/2009 | 200 | $10.77 | $2,154.00 | $9.59 | $1,918.00 | ($236.00) |
| 10/16/2009 | 506 | $10.83 | $5,479.98 | $9.59 | $4,852.54 | ($627.44) |
| **Total** | **3866** | | **$44,587.94** | | **$37,074.94** | **($7,513.00)** |

**Total Losses**:**          ($9,043.66)

*Closing Price on 5/24/10, date of filing of initial suit against Vitacost.com, used as holding price.

**Losses computed using the LIFO Method.

# Exhibit B

**Case 9:10-cv-80644-KLR   Document 12   Entered on FLSD Docket 07/23/2010   Page 11 of 80**

SOURCE: Saxena White P.A.

May 28, 2010 21:00 ET

### Saxena White P.A. Files Securities Fraud Class Action Against Vitamin-Maker Vitacost.com, Inc.

BOCA RATON, FL--(Marketwire - May 28, 2010) - In a class action filed on Monday, May 24, 2010, Boca Raton-based Vitacost.com, Inc. ("Vitacost" or the "Company") (NASDAQ: VITC) and several of its executives and directors, including its CEO and CFO, were sued for violations of the federal securities laws, including securities fraud. Vitacost operates as an online retailer and direct marketer of vitamins and other health products. According to the lawsuit, the Company's executives, among other violations, artificially inflated Vitacost stock by releasing false and misleading information regarding the Company's financial results and business prospects. As a result of these violations, Vitacost shareholders lost millions of dollars in damages.

Saxena White P.A. commenced the class action in the United States District Court for the Southern District of Florida on behalf of all persons or entities who purchased shares of Vitacost common stock pursuant and/or traceable to the Company's Initial Public Offering commencing on or about September 24, 2009 (the "IPO") and on behalf of purchasers of the Company's common stock between September 24, 2009 and April 20, 2010, inclusive (the "Class Period").

The complaint alleges that throughout the Class Period defendants knew or recklessly disregarded that their public statements concerning Vitacost's financial performance were materially false and misleading and failed to disclose: (1) that the Company was starting a product-mix shift away from their traditional high-margin proprietary products; (2) that Vitacost inflated demand for its proprietary products; (3) that the Company was pushing out excess product to customers so that it could mask declining demand; (4) that Vitacost was experiencing logistical issues at its own plants; (5) that the Company lacked significant oversight processes and procedures and utilized ineffective operations software, despite knowing that those issues existed; (6) that, as a result, Vitacost's financial results were materially inflated at all relevant times; (7) that the Company lacked adequate internal and financial controls; and (8) that Vitacost's projections regarding future growth lacked in any reasonable basis when made.

On April 20, 2010, after the close of the market, Vitacost issued a press release in which it announced updated guidance for revenue and earnings per share for the first quarter ending on March 31, 2010 and full year 2010. Contrary to the defendants' prior statements in which they emphasized the Company's strong business prospects and growth strategies, Vitacost slashed its first-quarter and full-year profit and revenue estimates, citing disappointing sales along with manufacturing problems. On this news, shares of Vitacost stock plunged $3.02 per share, or 24 percent, to close on April 21, 2010 at $9.54 per share on unusually heavy volume.

You may obtain a copy of the complaint and join the class action at www.saxenawhite.com. If you purchased Vitacost stock between September 24, 2009 and April 20, 2010, you may contact Joe White or Greg Stone at Saxena White P.A. to discuss your rights and interests.

If you purchased Vitacost shares in the Class Period, including purchases made pursuant to the September 24, 2009 Initial Public Offering, and wish to apply to be the lead plaintiff in this action, a motion on your behalf must be filed with the Court no later than July 23, 2010. You may contact Saxena White P.A. to discuss your rights regarding the appointment of lead plaintiff and your interest in the class action. Please note that you may also retain counsel of your choice and need not take any action at this time to be a class member.

Saxena White P.A., which has offices in Boca Raton and Boston, specializes in prosecuting securities fraud and complex class actions on behalf of institutions and individuals. Currently serving as lead counsel in numerous securities fraud class actions nationwide, the firm has recovered hundreds of millions of dollars on behalf of injured investors and is active in major litigation pending in federal and state courts throughout the United States.

Back

Joseph E. White, III
jwhite@saxenawhite.com

Greg Stone
gstone@saxenawhite.com

Saxena White P.A.
2424 North Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: (561) 394-3399
Fax: (561) 394-3382
www.saxenawhite.com

Privacy Statement | Terms of Service | Sitemap | © 2010 Marketwire, Incorporated. All rights reserved.
Your newswire of choice for expert news release distribution.
1-800-774-9473 (US)  |  1-888-299-0338 (Canada)  |  +44-20-7562-6550 (UK)

# Exhibit C



**Madisonville, Louisiana**

206 Covington Street
Madisonville, LA 70447
Toll Free: (866) 467-1400
Phone: (504) 455-1400
Fax: (504) 455-1498

**New York, New York**

500 5th Avenue, Suite 1810
New York, NY 10110
Phone: (212) 696-3730
Fax: (504) 455-1498

www.ksfcounsel.com

# Table of Contents

**The Firm** .......................................................................................................................... 2

**Securities Fraud** ............................................................................................................. 2
    **Current Cases** ............................................................................................................... 2
    **Recent Recoveries** ....................................................................................................... 3

**Corporate Governance and Shareholder Rights** ..................................................... 4
    **Current Cases** ............................................................................................................... 4
    **Recent Recoveries** ....................................................................................................... 4

**Mergers And Acquisitions** ............................................................................................ 5
    **Current Cases** ............................................................................................................... 5
    **Recent Recoveries** ....................................................................................................... 5

**Consumer Fraud** ............................................................................................................. 5
    **Current Cases** ............................................................................................................... 5
    **Recent Recoveries** ....................................................................................................... 6

**Attorneys** ........................................................................................................................ 6
    **Partners** ........................................................................................................................ 6
        *Lewis S. Kahn* ............................................................................................................ 6
        *Michael A. Swick* ....................................................................................................... 7
        *Charles C. Foti, Jr.* .................................................................................................... 7
        *Kim E. Miller* ............................................................................................................. 8
        *Albert M. Myers* ........................................................................................................ 9
        *Kevin L. Oufnac* ....................................................................................................... 11
    **Of Counsel** ................................................................................................................. 11
        *Neil Rothstein* ........................................................................................................... 11
    **Associates** ................................................................................................................. 12
        *Paul S. Balanon* ....................................................................................................... 12
        *Sarah Catherine Boone* ........................................................................................... 13
        *Melissa Ryan Clark* .................................................................................................. 13
        *Michael McGuane* .................................................................................................... 14
        *Melinda A. Nicholson* .............................................................................................. 15
        *Geoffrey Rodriguez* ................................................................................................. 15

# The Firm

Kahn Swick & Foti, LLC ("KSF") (www.ksfcounsel.com) is a law firm with offices in Louisiana and New York. KSF focuses predominantly on class action litigation, in the areas of securities and consumer fraud, and on shareholder derivative and other complex litigation. KSF was formed in 2000 as a partnership between established class action attorneys. Since its inception KSF has recovered tens of millions of dollars for its clients.

The lawyers of KSF have significant experience litigating complex securities cases. Among other cases the firm is involved in, KSF has been appointed to leadership roles in the following litigations:

# Securities Fraud

## Current Cases

*In re Allot Communications Ltd. Securities Litigation,* 1:07-cv-03455-RJH
    *S.D.N.Y.*
    *Co-Lead Counsel*

*In re China Sunergy Securities Litigation*, 1:07-civ-7895-DAB
    *S.D.N.Y.*
    *Lead Counsel*

*Gooden v. Smart Online et al.,* 1:07-cv-785-WLO
    *M.D. N.C.*
    *Co-Lead Counsel*

*In re HomeBanc Corporation Securities Litigation,* 1:08-cv-1461-TCB
    *N.D. Ga.*
    *Co-Lead Counsel*

*In re Nvidia Corporation Securities Litigation,* 08-CV-4260-JW
    *N.D. Cal.*
    *Co-Lead Counsel*

*In re Opteum, Inc., Securities Litigation,* 2:07-cv-14278-DLG
    *S.D. Fla.*
    *Co-Lead Counsel*

*In re ShoreTel, Inc. Securities Litigation*, 3:08-cv-00271-CRB
    *N.D. Cal.*
    *Lead Counsel*

*In re Superior Offshore International, Inc. Securities Litigation,* 4:08-cv-00687-NFA
    *S.D. Tex.*

*Lead Counsel*

*In re Virgin Mobile USA IPO Litigation,* 2:07-cv-05619-SDW-MCA
  *D. N.J.*
  *Co-Lead Counsel*


## Recent Recoveries

*In re BigBand Networks, Inc Securities Litigation,* 3:07-CV-05101-SBA(C.D. Cal.), *Co-Lead Counsel,* federal securities class action brought against a computer hardware corporation, certain officers and directors of the Company, and the Company's Underwriters, resulting in a cash settlement of **$11 million** for shareholders.

*In re U.S. Auto Parts Networks, Inc. Securities Litigation,* 2:07-cv-02030-GW-JC (C.D. Cal.), *Lead Counsel,* federal securities IPO-related class action against an online automotive supply company, certain members of its board of directors, and its underwriters, resulting in a cash settlement of **$10 million dollars** for shareholders.

*In re Xethanol Corporation Securities Litigation,* 1:06-cv-10234-HB (S.D.N.Y.), *Lead Counsel,* federal securities fraud class action against an ethanol production company and certain of its officers and directors, resulting in a cash settlement of **$2.8 million dollars** for shareholders.

*Mongeli v. Terayon Comm. Systems Inc. et al.,* 4:06-cv-03936-CW (N.D. Cal.), *Co-Lead Counsel,* federal securities fraud class action brought against a communications systems corporation, the Company's outside auditor, and certain officers and directors, resulting in a cash settlement of **$2.73 million dollars** for shareholders.

# Corporate Governance and Shareholder Rights

## Current Cases

***In re American International Group, Inc. 2007 Deriv. Litig.,*** 07-CV-10464 (LTS)
*S.D.N.Y.*
*Co-Lead Counsel*

***In re ArthroCare Corp. Sec. Lit.,*** No. 08-cv-574-SS
*W.D. Tex.*
*Co-Lead Counsel in the Consolidated Derivative Action*

***In re Bank of America Corp. Securities, Derivative, and Employment Retirement Income Security Act (ERISA) Litigation,*** 09 Civ.580 (DC)
*SDNY*
*Co-Lead Counsel in the Consolidated Derivative Action*

***In re Barnes & Noble Stockholder Derivative Litigation***, C.A. No. 4813-VCS
*Court of Chancery of the State of Delaware*
*Co-Lead Counsel*

***In re Morgan Stanley & Co., Inc. Auction Rate Secs. Deriv. Litig.,*** 1:08-cv-07587-AKH
*S.D.N.Y.*
*Lead Counsel*

## Recent Recoveries

***In re Proquest Company Shareholder Deriv. Litig. (pending),*** 2:06-cv-11845-AC-MKM (E.D. Mich.), *Co-Lead Counsel*, federal derivative action filed on behalf of ProQuest Company (now Voyager) against certain officers and directors, resulting in a settlement with important corporate governance changes.

# Mergers And Acquisitions

## Current Cases

**In re Alcon, Inc. Shareholder Litigation,** No. 10 Civ. 139
> *S.D.N.Y. 2010 (VM)*
> *Chair of Plaintiffs' Executive Committee*

## Recent Recoveries

**Golub v. Case, Pomeroy & Co., Inc. et al.,** C.A. No. 2449-N. (Delaware), *Co-Lead Counsel*, lawsuit challenging a merger agreement between Case, Pomeroy & Co. and CP Newco, Inc. resulting in a financial benefit of **$2.75 million** for the minority shareholders of the Company.

# Consumer Fraud

## Current Cases

**In re: Actimmune Marketing Litigation**, No. C 08-02376 MHP (N.D. Cal.), *member of Plaintiffs' Steering Committee*, putative nationwide class action on behalf of consumers and third-party payors who paid for the prescription drug Actimmune to treat idiopathic pulmonary fibrosis, an incurable disease for which Actimmune was not approved by the FDA as a treatment. The complaint alleges that Actimmune was improperly marketed as providing a survival benefit for people with idiopathic pulmonary fibrosis despite the lack of any scientific study confirming the claim.

**Rose Goudeau, et. al. v. The Administrators of the Tulane Educational Fund, et. al.**, No. 2004-04758, Sec. 13, Div. J (Civil District Court for the Parish of Orleans), *Class Co-Counsel*, certified nationwide class action on behalf of the near relatives of individuals who donated their bodies to the Tulane Willed Body Program. The complaint alleges that the Tulane Willed Body Program sold the donated bodies and/or body parts that it did not need to third parties.

### Recent Recoveries

***In re: General Motors Corp. Speedometer Products Liability Litigation,*** MDL No. 1896, *Co-Lead Counsel.* These multi-state consumer fraud actions, consolidated in federal court in the Western District of Washington, alleged that certain makes and models of GM vehicles contain a defective component that caused premature speedometer failure. The settlement required GMC to repair certain of the vehicles and to extend warranties for a substantial period of time or mileage duration, at an estimated value to the Class in excess of **$300 million.**

# Attorneys

## Partners

### Lewis S. Kahn

Lewis Kahn is the founding partner of KSF, and also serves as the firm's managing partner. A substantial portion of Mr. Kahn's practice is devoted to representing shareholders in connection with losses suffered as a result of securities fraud, and in shareholder derivative litigation.

Mr. Kahn manages the firm's portfolio monitoring program for public and private institutional investors. Additionally, Mr. Kahn oversees the firm's lead plaintiff motion practice in PSLRA class action litigation, and serves on the firm's settlement team, which has been responsible for settlements including *In re U.S. Auto Parts Networks, Inc. Securities Litigation,* 2:07-cv-02030-GW-JC ($10 million dollar settlement).

In addition to securities lawsuits, Mr. Kahn has significant experience with consumer fraud and mass tort class actions.  Mr. Kahn has been appointed to various leadership positions in federal class action litigation.

Mr. Kahn is often turned to by the media for expert commentary in the field of class action litigation. Mr. Kahn's firm has been profiled in the *New York Times, Washington Post, Boston Globe,* and many other media outlets. Mr. Kahn holds a Bachelor's degree from New York University and received a Juris Doctor from Tulane Law School in 1994. He has been a member in good standing of the Louisiana State Bar Association since 1995,

and is a member of the Federal Bars for the Eastern, Middle and Western Districts of Louisiana.

## Michael A. Swick

Michael A. Swick is the co-founding partner of Kahn Swick & Foti LLC, and also heads the firm's Securities Litigation Group. Mr. Swick began his career in the mid 1990s working at some of the nation's leading securities class action law firms.

Over the past decade, Mr. Swick has played a significant role in investigating large corporate frauds and in initiating litigations against the nation's largest corporations.  On behalf of shareholders, Mr. Swick has initiated actions in a variety of federal courts, primarily seeking to recover for violation the Securities Act of 1933 and the Securities Exchange Act of 1934.

Recent actions have resulted in tens of millions of dollars of recoveries for shareholders. Over his career, Mr. Swick has also participated in the litigation of cases that have resulted in hundreds of millions of dollars in recoveries for aggrieved shareholders and institutional investors.

Mr. Swick is also intimately involved with serving the firm's institutional investor clients, participating in the management and development of KSF's portfolio monitoring systems.

Mr. Swick received a Juris Doctor from Tulane Law School in 1994. Mr. Swick received a Masters of Political Philosophy from Columbia University in 1989 and a B.A. in Philosophy and Political Science from State University of New York at Albany in 1988. Mr. Swick was admitted to the State Bar of New York in 1997 and is admitted to practice before the United States District Court for the Southern District of New York.

## Charles C. Foti, Jr.

Charles C. Foti, Jr. served as the Attorney General for the state of Louisiana from 2004-2008, after serving for 30 years as one of the most innovative law enforcement officials in the United States as Orleans Parish Criminal Sheriff.  Throughout his career, General Foti has remained committed to public service.

As Attorney General for the state of Louisiana, General Foti's achievements include:

- Recovered over $24 million for Louisiana consumers in consumer fraud matters, $8 million in anti-trust litigation, $9.1 million for state employees through Office of Group Benefits, over $2 million for auto complaints, over $33 million in Medicaid Fraud.

- Investigated and apprehended numerous contractor fraud criminals in the wake of the worst natural disaster in United States history, Hurricane Katrina.

- Doubled the number of arrests for crime against children through the Louisiana Internet Crimes Against Children Task Force.

In his tenure as Orleans Parish Criminal Sheriff, General Foti oversaw the enormous expansion of the parish jail, growing from 800 prisoners in 1973 to more than 7,000 currently. As the prison expanded, so did the need for education and rehabilitation skills for prisoners. As Sheriff, General Foti started the first reading and GED programs, work release programs, drug treatment programs and the nation's first boot camp at the local level, all to prepare prisoners for a future without crime. Administratively, General Foti managed a multi-million dollar budget and a complex organization of more than 1,400 employees.

General Foti has for many years been an advocate for the elderly. As Sheriff, he and a small army of volunteers provided Thanksgiving meals for senior citizens in the New Orleans area who were alone or couldn't afford a proper holiday feast. He started a back to work program for senior citizens that helps people over the age of 55 get back into the workforce.

General Foti received his Juris Doctor degree from Loyola University Law School in 1965, after serving his country in the United States Army from 1955 through 1958.

### Kim E. Miller

Kim E. Miller is a partner of Kahn Swick & Foti, LLC, who specializes in securities, consumer, and commercial litigation. Prior to joining KSF in 2006, Ms. Miller was a partner at one of the nation's leading plaintiff class action firms. Ms. Miller also spent two years as a securities litigator on the defense side.

Over the course of her career, Ms. Miller has represented tens of thousands of wronged investors and consumers in class actions filed throughout the country. Among other cases, Ms. Miller has worked on more than 25 cases involving allegations of improper

directed brokerage arrangements and excessive charges in mutual fund cases brought pursuant to the 1934 Securities Exchange Act and/or the Investment Company Act of 1940. Ms. Miller was also involved in the mutual funds late trading/market timing litigation.

Ms. Miller has been involved in a variety of cases in which large settlements were reached, including:

- **Settlement value of $127.5 million** *Spahn v. Edward D. Jones & Co., L.P.,* 04-cv-00086-HEA (E.D. Mo.)

- **$110 Million Recovery.** *In re StarLink Corn Products Liability Litigation*, MDL No. 1403 (N.D. Ill.)

- **$100 Million Recovery.** *In re American Express Financial Advisors*, Inc. Sec. Litig., 1:04-cv-01773-DAB (S.D.N.Y.)

Ms. Miller is currently overseeing KSF's securities class actions.

Ms. Miller graduated with honors from Stanford University in 1992 with a double major in English and Psychology. She earned her Juris Doctor degree from Cornell Law School, *cum laude*, in 1995. While at Cornell, Ms. Miller was the Co-Chair of the Women's Law Symposium, Bench Brief Editor of the Moot Court Board, and a member of the Board of Editors of the Cornell Journal of Law & Public Policy. Her pro bono work includes representing families of 9/11 victims at *In re September 11 Victim Compensation Fund* hearings. Ms. Miller has also served as a fundraiser for the New York Legal Aid Society. She is admitted to practice in the States of California and New York and before the United States District Courts for the Southern and Eastern Districts of New York and the Northern, Southern, and Central Districts of California.

### Albert M. Myers

Albert M. Myers, a partner in the New Orleans office of KSF, prosecutes the rights of shareholders in class action litigation, shareholder derivative litigation, and corporate governance litigation around the world.  In addition, he represents consumers in financial services class action litigation.

Mr. Myers is currently handling many KSF lead counsel engagements, including:

- *In re Alcon, Inc. Shareholder Litigation*, No. 10 Civ. 139 (S.D.N.Y. 2010) (VM) (Chair of Plaintiffs' Executive Committee)

- *In re Bank of America Corp. Securities, Derivative, and ERISA Litigation*, No. 09 MDL 2058 (DC) (S.D.N.Y. 2009) (Co-Lead Counsel for Derivative Plaintiffs)

- *In re Barnes & Noble Stockholder Derivative Litigation*, C.A. No. 4813-VCS (Del. Ch. 2009) (Co-Lead Counsel)

- *In re Arthrocare Corp. Securities Litigation*, No. A-08-cv-00574-SS (W.D. Tex. 2009) (Co-Lead Counsel for Derivative Plaintiffs)

- *In re Morgan Stanley & Co., Inc. Auction Rate Securities Derivative Litigation*, No. 08 Civ. 7587 (AKH) (S.D.N.Y. 2008) (Lead Counsel)

- *In re American International Group, Inc. 2007 Derivative Litigation*, No. 07 Civ. 10464 (LTS) (S.D.N.Y. 2007) (Co-Lead Counsel)

Since he began his practice in 1994, Mr. Myers has represented clients in securities or corporate disputes in numerous courts.  Successful results for clients include:

- *In re Intelligroup Securities Litigation*, 468 F. Supp. 2d 670 (D.N.J. 2006)

- *Bailey v. Cumberland Casualty & Surety Co.,* No. 7:04-cv-02162-TMP, slip op. (N.D. Ala. June 3, 2005), aff'd, No. 05-13740-BB (11th Cir. May 11, 2006)

- *In re Recoton Corp. Securities Litigation*, 358 F. Supp. 2d 1130 (M.D. Fla. 2005)

- *Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000)

- *Kwiatkowski v. Bear Stearns Co.*, No. 96 Civ. 4798 (JGK), 1997 WL 538819 (Aug. 29, 1997)

- *Quaker Oats Co. v. Borden, Inc.*, No. 95 Civ. 9300 (RO), 1996 WL 255386 (S.D.N.Y. May 15, 1996).

Mr. Myers received his B.A. from Yale University and his J.D., *magna cum laude*, from New York Law School, where he was the John Ben Snow Scholar (1991-1994), a Teaching Fellow, and Chief Articles Editor of the *New York Law School Law Review*, and coached the school's moot court team in the Kaufman Securities Law Competition.

He served as a judicial intern to the Honorable Prudence Carter Beatty of the United States Bankruptcy Court for the Southern District of New York, and is the author of Anatomy of a Cross-Border Securities Investigation: A Case Study (Int'l Bar Ass'n Oct. 2004), Whom May the Corporation Serve?—The Constitutionality of Nonstockholder Constituency Statutes, 39 N.Y.L. Sch. L. Rev. 449 (1994), and other publications.

Mr. Myers is a member of the Georgia and New York bars, the Federal Bar Association, and the International Bar Association.

### Kevin L. Oufnac

Kevin Oufnac joined Kahn Swick & Foti, LLC in 2006. Prior to becoming a partner in KSF, Mr. Oufnac spent many years litigating cases with some of the nation's most recognized law firms, including Ness, Motley, Loadholt, Richardson, & Poole, PA; Richardson, Patrick, Westbrook & Brickman, LLC; and Motley Rice, LLC. Some of the litigations in which Mr. Oufnac has participated include *In re Community Bank of Northern Virginia and Guaranty National Bank of Tallahassee Second Mortgage Loan Litigation,* No. 03-0425 (W.D. Pa.) (which resulted in a settlement of $33 million to the class members), and *Dundon v. U.S. Bank,* No. 01-408 (S.D. Ill.) (which resulted in a settlement of $26 million to the class members).

Mr. Oufnac received his Juris Doctor in 1995 from the Loyola University School of Law, New Orleans. He is a member of the Louisiana State Bar Association, the South Carolina State Bar Association, and the Association of Trial Lawyers of America. Mr. Oufnac has also been admitted to the United States Court of Appeals for the Fourth Circuit and the United States District Courts for the Eastern District of Michigan, the Eastern District of Louisiana, and the District of South Carolina.

### *Of Counsel*

### Neil Rothstein

Neil Rothstein is of counsel to Kahn Swick & Foti, LLC.  Mr. Rothstein has spent more than twenty years involved in all aspects of class action litigation.  He is a graduate of Case Western Reserve University (B.A. 1986) and the Temple University School of Law (J.D. 1989).

During law school, Mr. Rothstein was a summer associate and a law clerk for two nationally known class action firms and later became an attorney at one of them. In 1997, he joined a small boutique law firm that worked on several important and widely-followed class action cases in the country.

Mr. Rothstein has extensive experience in all phases of securities, antitrust, consumer, and shareholder derivative litigation. He has always believed that the clients' needs come first.  In that light, he focuses on helping to lead Kahn Swick & Foti, LLC in client development and communications, client education and client participation in litigation in which they have been financially and otherwise injured.

## *Associates*

### Paul S. Balanon

Paul Balanon works as part of the KSF securities litigation team and is actively involved in all phases of litigation on matters asserted under the Securities Act of 1933 and the Exchange Act of 1934.  He has been instrumental in spearheading discovery for such cases as: *In re Superior Offshore Intl, Inc Sec Litig* (S.D. Tex.); *In re Virgin Mobile USA IPO Litig* (D. N.J.); and *In re ShoreTel, Inc Sec Litig* (N.D. Cal.).   Prior to joining the firm, Mr. Balanon worked for defense firms handling complex litigation involving products liability, federal preemption, oil and gas indemnity, vessel casualty, marine insurance, and toxic torts.

Mr. Balanon received a B.A. in Political Science/International Relations from UCLA (1999) and a J.D. from American University (2003).   During law school, Mr. Balanon worked for Judge David Tatel at the U.S. Court of Appeals for the D.C. Circuit, the Washington Lawyers Committee for Civil Rights and Urban Affairs, and the American University Criminal Justice Clinic.  Mr. Balanon then enrolled at Tulane Law School to pursue studies in one of his areas of interest, shipping, and served on the Tulane Maritime Law Journal.  He received a Master of Laws in Admiralty (2004) and the Edward A. Dodd Prize for graduating first in his class.

Mr. Balanon is admitted to practice in Louisiana, Maryland, the District of Columbia, and before the United States Court of Appeals for the Fifth Circuit, the United States District Courts for the Eastern, Middle, and Western Districts of Louisiana.

### Sarah Catherine Boone

Sarah Catherine Boone focuses primarily on federal securities class action litigation. While she works on all aspects of complex litigation, her particular areas of expertise are discovery -- including evolving applications of technology in e-discovery – and settlement. She has been actively involved in the e-discovery and technological aspects of document production and management in several securities class actions, including *In re Opteum, Inc., Securities Litigation,* 2:07-cv-14278-DLG (S.D. Fl.), *In re ShoreTel, Inc. Securities Litigation,* 3:08-cv-00271-CRB (N.D. Cal.), *In re Superior Offshore International, Inc. Sec. Litig.* (S.D. Tex.), and *In re Virgin Mobile USA IPO Litig.* (D. N.J.). She was heavily involved in all aspects of the settlement process for *In re Xethanol Corporation Sec. Litig.* (S.D.N.Y.), *In re U.S. Auto Parts Networks, Inc. Sec. Litig.* (C.D. Cal.), *Mongeli v. Terayon Commun. Sys., Inc. et al.* (N.D. Cal.), and *In re BigBand Networks, Inc. Sec. Litig.* (N.D. Cal).

Ms. Boone holds a Bachelor of Arts in Philosophy from the University of Southern California (1999), where she was a Trustee Scholar; a Master of Fine Arts in Writing from the Master of Professional Writing Program at USC (2002); and a Juris Doctor from Tulane Law School (2007). She was admitted to practice law in the State of Montana in 2007 and in the State of California in 2010. She is a member of the State Bar Associations of Montana and California and the San Diego Bar Association, and is admitted to the United States District Courts for the District of Montana, the Northern District of California, the Central District of California, and the Southern District of California.

### Melissa Ryan Clark

Ms. Clark practices in KSF's New York office where she focuses on all phases of federal securities litigation. She is actively involved in cases pending before various federal courts across the United States, including *In re Superior Offshore International, Inc. Sec. Litig.* 08-cv-00687 (S.D. Tex.) and *In Re Virgin Mobile USA IPO Litig.* 2:07-cv-05619 (D.N.J.), and has been involved in cases that have successfully settled, including *In re U.S. Auto Parts Network, Inc. Sec. Litig.* CV 07-2030 (C.D. Cal.).

Prior to joining KSF, Ms. Clark's legal work experience included clerking at the San Francisco District Attorney's Office and externing for the Honorable Chief Judge Jerry

Brown in the United States Bankruptcy Court, Eastern District of Louisiana and the Honorable Jay C. Zainey in the Eastern District of Louisiana.

Ms. Clark received her Juris Doctor from Tulane Law School in 2007. While at Tulane, Ms. Clark was president of her graduating class and of the Business Law Society, a chairperson for the Moot Court Board, and a Senior Fellow for Legal Research & Writing. In Fall 2006, Ms. Clark attended University of California – Berkeley where she received high honors in Securities & Class Action Litigation and was a Visiting Contributor to the *California Law Review*. She received her Bachelors of Science degree in International Affairs from Florida State University in 2004.

Ms. Clark was admitted to the State Bar of New York in 2008 and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York. She is also an active member of the New York State Bar Association and is a member of its Law, Youth & Citizenship Committee.

### Michael McGuane

Prior to joining Kahn Swick & Foti, LLC, Mr. McGuane served as law clerk to the Honorable John Preston Bailey, United States District Judge, and the late Honorable W. Craig Broadwater, United States District Judge, in the United States District Court for the Northern District of West Virginia.

Mr. McGuane received his J.D. cum laude from Tulane University Law School (2006) and his B.S. in Psychology with a Minor in Political Science from New York University (2003), where he was a University Honors Scholar.

While attending Tulane University Law School, Mr. McGuane served as a managing editor of the *Tulane Journal of International and Comparative Law*.  In this capacity, Mr. McGuane was honored with the Journal's Best Editor Award for his work during the 2005-2006 publishing year.

Mr. McGuane is admitted to practice in New York and is a member of the New York State Bar Association.

**Melinda A. Nicholson**

Melinda A. Nicholson's practice focuses on shareholder derivative and class action litigation.  She is actively involved in cases pending before various federal courts across the United States, including *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, 09 MD 2058 (DC) (S.D.N.Y. 2009).  Prior to joining the firm, Ms. Nicholson worked for defense firms in New York, handling complex commercial litigations and regulatory investigations involving a variety of legal issues, including fiduciary obligations, securities violations, contractual breaches, antitrust and insurance coverage.

Ms. Nicholson completed a joint B.A./J.D. program at Tulane University, receiving a B.A. in Political Science, with a concentration in American Politics and Policies and a minor in Economics, from Tulane in 2003 and a J.D. from Tulane in 2005.  While at Tulane Law School, Ms. Nicholson served as a Notes and Comments Managing Editor for the *Tulane Law Review*, which published her comment, *The Constitutional Right to Self-Representation: Proceeding Pro Se and the Requisite Scope of Inquiry When Waiving Right to Counsel*, 79 TUL. L. REV. 755 (2005).  She received numerous awards, including the Dean's Medal for attaining the highest grade point average during the third year, the George Dewey Nelson Memorial Award for attaining the highest grade point average in common law subjects throughout the three years of law study, and Order of the Coif.  She graduated from the law school *summa cum laude* and ranked second in her class.

Ms. Nicholson is admitted to practice in Louisiana and New York, and before the United States District Court for the Eastern District of Louisiana.

**Geoffrey Rodriguez**

Geoffrey Rodriguez focuses on class action and derivative litigation.  He is actively involved in cases pending before various federal courts across the United States.

Mr. Rodriguez received a B.A. *magna cum laude* with majors in economics, history, political science, philosophy, and political economy from Tulane University (2005), where he was a Dunbar Fellow and received departmental honors in history and political science.  In 2008, he received his J.D. from Georgetown University Law, where he was a Dean's Scholar.  As a member of the Law Center's Moot Court team, he competed in the European Tax College Moot Court Competition in 2007, and served as a coach in the same competition in 2008.

Mr. Rodriguez is admitted to practice in Louisiana and is a member of the Louisiana State Bar Association.

## Chimicles & Tikellis LLP

### Attorneys At Law

# Firm Resume

**HAVERFORD, PA**
361 West Lancaster Avenue
Haverford, PA 19041
Voice: 610-642-8500
Toll Free: 866-399-2487
Fax: 610-649-3633

**WILMINGTON, DE**
P.O. Box 1035
222 Delaware Avenue
Suite 1100
Wilmington, DE 19899
Voice: 302-656-2500
Fax: 302-656-9053

# Contents

OUR ATTORNEYS

   Partners

      Nicholas E. Chimicles      3
      Pamela S. Tikellis      8
      Robert J. Kriner, Jr.      12
      Steven A. Schwartz      15
      Kimberly M. Donaldson      18
      Joseph G. Sauder      21

   Of Counsel

      Morris M. Shuster      23
      Denise Davis Schwartzman      24
      Anthony Allen Geyelin      25
      David M. Maser      26

   Associates

      Meghan A. Adams      27
      Tiffany J. Cramer      27
      Alison R. Gabe      28
      Benjamin F. Johns      28
      Kimberly Litman Kimmel      30
      Timothy N. Mathews      32
      A. Zachary Naylor      34
      Kimberly A. Evans      36
      Matthew D. Schelkopf      37
      Scott M. Tucker      38

PRACTICE AREAS      40

REPRESENTATIVE CASES      43

# Our Attorneys-Partners

## Nicholas E. Chimicles



is senior partner and Chairman of the Firm's Executive Committee. Mr. Chimicles is a 1970 graduate of the University of Pennsylvania, where he received a Bachelor of Arts Degree with Honors. Mr. Chimicles graduated in 1973 from the University of Virginia School of Law, where he was a member of the Editorial Board of the University of Virginia Law Review and was the author of several published comments. While attending law school, he co-authored a course and study guide entitled "Student's Course Outline on Securities Regulation," published by the University of Virginia School of Law. Upon graduation from law school, Mr. Chimicles joined a major Philadelphia law firm where he practiced for eight years and specialized in litigation including complex commercial, antitrust and securities fraud cases and served as principal or assistant trial counsel in several matters.

Mr. Chimicles has actively prosecuted major complex litigation, antitrust, securities fraud and breach of fiduciary duty suits. Most recently, Mr. Chimicles was lead trial counsel for a Class of investors in a six-week jury trial of a securities fraud/breach of fiduciary duty case that resulted in a $185 million verdict. *In re Real Estate Associates Limited Partnerships Litigation*, No. CV 98-7035 DDP, was tried in the federal district court in Los Angeles before the Honorable Dean D. Pregerson. On November 15, 2002, the 10 member jury returned a unanimous verdict in favor of the Class (comprising investors in the eight REAL Partnerships) and against the REALs' managing general partner, National Partnership Investments Company ("NAPICO") and the four individual officers and directors of NAPICO. The jury awarded more than $25 million in damages against all five defendants on Count I, the Section 14(a), 1934 Act, proxy fraud claim and more than $67 million in damages against NAPICO on Count II for breach of fiduciary duty. On November 19, 2002, the jury returned a verdict of $92.5 million in punitive damages against NAPICO. This total verdict of $185 million was among the "Top 10 Verdicts of 2002," as reported by the National Law Journal (verdictsearch.com). The Court upheld in all respects the jury's verdict on liability as to both Count I and Count II, upheld in full the jury's award of $92.5 million in compensatory damages, upheld the Class's entitlement to punitive damages (but reduced those damages to $2.6 million based on the application of California law to NAPICO's financial condition), and awarded an additional $25 million in prejudgment interest. Based on the Court's decisions on the post-trial motions, the judgment entered in favor of the Class on April 28, 2003 totaled over $120 million, $91 million on Count II and $30 million on Count I.

Our Attorneys-Partners

*Nicholas E. Chimicles cont.*

In 2006, Mr. Chimicles, as lead counsel, negotiated the settlement of the *CNL Hotels & Resorts, Inc. Securities Litigation*, Case No. 6:04-cv-1231 (M.D. Fla., Orl. Div). The case settled Sections 11 and 12 claims for $35 million in cash and Section 14 proxy claims by significantly reducing the merger consideration (from $300 million to $73 million) that CNL paid for internalizing its advisor/manager.

In other federal securities fraud action, he served as a lead counsel in the *Hercules Securities Litigation*, Civil Action No. 90-442 (RRM) (D. Del.) ($18 million recovery); *Scott Paper Securities Litigation*, Civil Action No. 90-6192 (E.D. Pa.) ($8 million recovery); *Sunrise Savings & Loan Securities Litigation*, MDL No. 655 (E.D. Pa.) ($15 million recovery); *Storage Technology Corp. Securities Litigation*, Master File No. 84-F-1981 (D. Colo.) ($18 million recovery); *In re Fiddler's Woods Bondholders Litigation*, Civil Action No. 83-2340 (E.D. Pa.), a bondholders' class action arising out of a default on a $33 million industrial development bond issue (recovery of more than $7 million for the Class); and *Charter Securities Litigation*, Civil Action No. 84-448 Civ-J-12 (M.D. Fla.) (recovery of $7.75 million); *Continental Illinois Corporation Securities Litigation*, Civil Action No. 82 C 4712 (N.D. Ill.) involving a twenty-week jury trial conducted by Mr. Chimicles that concluded in July, 1987 (the Class ultimately recovered nearly $40 million).

Mr. Chimicles has been a principal counsel in several major litigations that have resulted in precedent-breaking recoveries for classes of limited partners. In addition to the *Real Estate Associates Limited Partnership Litigation*, discussed above, Mr. Chimicles was a member of the Executive Committee in the *Prudential Limited Partnerships Litigation*, MDL 1005 (S.D.N.Y.), where the Class recovered $130 million in settlement from Prudential, and other defendants. Mr. Chimicles was lead counsel in the *PaineWebber Limited Partnerships Litigation*, 94 Civ. 8547 (S.D.N.Y.) in which a $200 million settlement was approved in mid-1997. As co-lead counsel in several litigations involving ML-Lee Acquisition Fund, L.P., ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. (C.A. No. 92-60, 93-494, 94-422 and 95-724) that were prosecuted in the Delaware Federal District Court. Mr. Chimicles (together with partner Pamela Tikellis and financial specialist Kathleen Chimicles) negotiated settlements that resulted in more than $30 million in cash and other benefits to be paid or made available to investors in the various funds. In litigation involving PLM Equipment Growth and Income Funds IV-VII, Mr. Chimicles (together with financial specialist Kathleen Chimicles) was instrumental in negotiating a settlement reached in 2001 that provided both monetary and equitable relief for the limited partners. In February 2002, the Superior Court of Marin County, California, approved the settlement of a case in which Mr. Chimicles was co-lead counsel, involving five public partnerships sponsored by Phoenix Leasing Incorporated and its affiliates and resulting in entry of a judgment in the amount of $21 million. (*In Re Phoenix Leasing Incorporated Limited Partnership Litigation*, Superior Court of the State of California, County of Marin, Case No. 173739).

## Our Attorneys-Partners

*Nicholas E. Chimicles cont.*

Mr. Chimicles has represented limited partners who successfully have sought the liquidation of assets or the reorganization of the partnership. For example, in *In re the Mendik Real Estate Limited Partnership*, N.Y. Supreme Ct. No. 97-600185, Mr. Chimicles, as co-lead counsel, negotiated a settlement which provided for the prompt sale of more than $100 million of the partnership's real estate assets. Additionally, as co-lead counsel, Mr. Chimicles, together with partner Pamela Tikellis, negotiated the settlement of a suit filed against the general partners of Aetna Real Estate Associates, L.P., providing for the orderly liquidation of the more than $200 million in that partnership's real estate holdings, the reduction of general partner fees and the payment of a special cash distribution to the limited partners. (*Aetna Real Estate Associates, L.P., Area GP Corporation and Aetna/Area Corporation*, Delaware Chancery Court, New Castle County, Civil Action Nos. 15386-NC and 15393-NC).

Mr. Chimicles has also represented stockholders in suits arising from proposed mergers, acquisitions and hostile takeovers.  For example, in *Garlands, Inc. Profit Sharing Plan et al. v. The Pillsbury Company, et al.*, State of Minnesota, County of Hennepin, Fourth Judicial District, Court File No. 88-17834, Mr. Chimicles was a lead counsel in a suit brought to compel Pillsbury's board of directors to negotiate in good faith with Grand Metropolitan and persuaded the court to enjoin a proposed spin-off of Burger King. Additionally, Mr. Chimicles has represented shareholders in obtaining enhanced consideration for their stock in takeovers or going private transactions. *Randee L. Shantzer, et al. v. Charter Medical Corp., et al.*, Court of Chancery, State of Delaware, New Castle County, Consolidated Civil Action No. 9530; *In re Interstate Bakeries Corporation Shareholders Litigation*, Court of Chancery, State of Delaware, New Castle County, Consolidate Civil Action No. 9263.

In the antitrust field, Mr. Chimicles has acted as a lead and co-lead counsel in numerous class suits. He was co-lead counsel in the *Travel Agency Commission Antitrust Litigation*, (D. Minn.) in which the Firm represented the American Society of Travel Agents, an Alexandria, Virginia-based association that represents more than 9,000 travel agencies nationwide and worldwide in a suit against seven airlines for Section 1 (Sherman Act) violations involving commission cuts. The case was settled in late 1996 for more than $80 million. Mr. Chimicles was also co-lead counsel in the *Insurance Antitrust Litigation*, Case No. C-88-1688 (N.D. Calif.) which charged commercial general liability insurers, domestic and London-based reinsurers and an insurance service organization with violations of the Sherman and Clayton Acts. The case was settled after an earlier dismissal was reversed by the Ninth Circuit, a decision affirmed by the U.S. Supreme Court. *In re Insurance Antitrust Litigation*, 938 F.2d 919 (9th Cir. 1991); *aff'd sub nom. Hartford Fire Insurance Co. v. California*, 113 S.Ct. 2891 (1993).

As an appellate advocate, Mr. Chimicles has handled cases which have protected the rights of victims of securities fraud in bankruptcy proceedings.  In cases that he successfully argued before the Courts of Appeals for the Tenth and Eleventh Cir-

*Nicholas E. Chimicles cont.*

cuits, due process and notice principles were extended to protect securities purchasers filing claims in bankruptcy cases, *In re Standard Metals Corp.*, 817 F.2d 625 (10th Cir.), *rev'd in part on rehearing*, 839 F.2d 1383 (1987), and it was established that class proofs of claim are allowable in bankruptcy proceedings, *In re the Charter Company*, 876 F.2d 866 (11th Cir. 1989).

Mr. Chimicles has also actively prosecuted suits involving public utilities constructing nuclear plants. He was lead counsel in the *Philadelphia Electric Company Securities Litigation*, Master File No. 85-1878 (E.D. Pa.) and a lead counsel in the *Consumers Power Company Derivative Litigation*, Master File No. 84-CV-3788 AA (E.D. Mich.). Mr. Chimicles was co-lead counsel in the stockholder derivative suit arising from mismanagement claims against former officers of Philadelphia Electric Company involved in the closing of the Peach Bottom Nuclear Plant, a suit which Mr. Chimicles was authorized to bring by a PECO board of directors resolution. *In re Philadelphia Electric Company Derivative Litigation*, Case No. 7090, Court of Common Pleas, Philadelphia County, PA. That case resulted in a recovery of $35 million for the utility company in November 1990.

Mr. Chimicles was also a co-lead counsel in a major environmental litigation, *Ashland Oil Spill Litigation*, Master File M-14670 (W.D. Pa.), involving the claims of residents and businesses for damage arising from the largest inland waterway oil spill in history that occurred on January 2, 1988 in Pittsburgh. In 1990, the case was settled upon creation of a claims fund of over $30 million for the class. This and similar environmental suits in which the Firm was involved were the subject of a program, "Toxic Torts May Not Be Hazardous To Your Health: A Lawyer's Guide to Health Survival in Mass Tort Litigation," in which Mr. Chimicles was a principal speaker at this program which was held at the American Bar Association's 1989 Convention in Honolulu.

Mr. Chimicles has acted as special counsel for the City of Philadelphia and the Philadelphia Housing Authority in an action seeking to hold lead pigment manufacturers liable for federally mandated abatement of lead paint in properties owned, managed or operated by the plaintiffs. *City of Philadelphia, et al. v. Lead Industries Ass'n, et al.*, Civil Action No. 90-7064 (E.D. Pa.) and No. 92-1420 (3rd Cir.).

Mr. Chimicles is admitted to practice in the Supreme Court of the United States, numerous federal district and appellate courts, as well as the Supreme Court of Pennsylvania. Mr. Chimicles was appointed in 2008 to a 3-year term as a Hearing Committee Member of the Disciplinary Board of the Supreme Court of Pennsylvania. He is a member of the American Bar Association (Sections of Litigation; Antitrust; and Corporation, Banking and Business Law), the Pennsylvania Bar Association, and the Philadelphia Bar Association (Federal Courts Committee and various subcommittees). Mr. Chimicles has lectured frequently on securities law at the Rutgers University Law School Camden, the Wharton School Graduate Division of the University of Pennsylvania, New York University, the University of Virginia,

*Our Attorneys-Partners*

*Nicholas E. Chimicles cont.*

and for Prentice Hall Law and Business Publications. Mr. Chimicles has addressed numerous law and accounting conferences, including ALI-ABA, Practising Law Institute, the Pennsylvania Bond Counsel Association and the Pennsylvania Institute of Public Accountants, and has also frequently appeared as a speaker in numerous state and national bar association sponsored seminars on topics involving federal securities laws, RICO, class actions, hostile corporate takeovers, and professional ethics. Mr. Chimicles also is a contributor to and member of the advisory boards of various professional publications involving the securities law field. Mr. Chimicles is a member of the Board of Overseers of the School of Arts and Sciences of the University of Pennsylvania. He is the past President of the National Association of Securities and Commercial Law Attorneys. Mr. Chimicles is the author of numerous articles including an article co-authored with the Firm's Financial Specialist, Kathleen P. Chimicles nee Balon, published in the *New York Law Journal*, August 26, 1993, entitled "A Realistic Assessment Of The Need For Securities Class Action Litigation Reform;" and *The Securities Case: The Plaintiff's Perspective*, co-authored with Ira N. Richards, published in the Practical Litigator, Vol. 6, No. 6 (Nov. 1995).

# Our Attorneys-Partners



# Pamela S. Tikellis

is a name partner and a member of the Firm's Executive Committee. Ms. Tikellis was born in Lawrence, Kansas and is a 1974 graduate of Manhattanville College, where she received a Bachelor of Arts, and a 1976 graduate of the Graduate Faculty of the New School for Social Research, where she received a Master's in Psychology. Ms. Tikellis graduated in 1982 from Widener University School of Law, where she was the Managing Editor of the Delaware Journal of Corporate Law. Upon graduating from law school, Ms. Tikellis served as a law clerk in the nationally recognized Court of Chancery in Wilmington, Delaware. Before joining the Firm, Ms. Tikellis engaged in significant shareholder litigation practice. In 1987, she opened the Delaware office of the Firm, where she is a resident and has continued to specialize in litigation, including complex transactional cases, both derivative and class, limited partnership litigation, antitrust and securities fraud litigation. She is AV rated by Martindale Hubbell.

Ms. Tikellis has prosecuted class and derivative suits of national importance for over 20 years. Notably, Ms. Tikellis has represented stockholders in numerous suits, primarily in the Court of Chancery in Wilmington, Delaware arising out of mergers and acquisitions and hostile takeovers. Ms. Tikellis served as liaison counsel in the litigation arising out of the Paramount/Viacom merger. She and her co-counsel represented Paramount stockholders in the successful challenge to the merger and were instrumental in eliciting the highest possible value to the stockholders. (Court of Chancery Civil Action No. 13117; Delaware Supreme Court No. 427, 1993). Similarly, Ms. Tikellis served as lead counsel in *Home Shopping Network Shareholders and Securities Litigation*, (C.A. No. 93-406; Court of Chancery, Cons. C.A. No. 12868; Delaware District Court C.A. No. 93-336 (MMS)) obtaining over $15 million in settlement funds for the class of Home Shopping stockholders. More recently, as lead counsel, she actively prosecuted litigation on behalf of Cyprus Amax stockholders arising out of 0 proposed merger with Asarco and helped achieve a merger for Cyprus Amax with Phelps Dodge for greater consideration than was offered by Asarco. (*In re Cyprus Amax Shareholders Litigation*, Court of Chancery, C.A. No. 17383-NC). Ms. Tikellis also acted as one of lead counsel representing a Class of stockholders of First Interstate Bancorp prior to the acquisition of First Interstate by Wells Fargo & Co. The litigation resulted in Wells Fargo's acquisition of First Interstate for a substantially greater consideration than offered by the First Bank Systems in a battle for the company. (*First Interstate Bancorp Shareholders Litigation*, Cons. C.A. No. 14623). Most recently, in the merger amd acquisition arena, Ms. Tikellis serves as Co-Lead Counsel in the class action challenging the $21 billion management-led buyout of Kinder Morgan, Inc. *In re Kinder*

## Our Attorneys-Partners

*Pamela S. Tikellis cont.*

*Morgan, Inc. Shareholders Litigation*, Consol. C.A. No. 06-C-801 (Kan.). Additionally, she is serving as Lead Counsel in the class action challenging Roche Holding's buyout of Genentech, Inc. *In re Genentech, Inc. Shareholders Litigation*, Civil Action No. 3911-VCS. The litigation was settled shortly after the Court of Chancery held a hearing on Plaintiffs' motion for a preliminary injunction and prior to the closing of the transaction. The settlement provides for, among other things, the additional $4 Billion in consideration paid to the minority shareholders in the transaction.

Ms. Tikellis has actively prosecuted derivative litigation on behalf of companies and their stockholders. *Sanders v. Wang*, DE Court of Chancery C.A. No. 16640, was a derivative suit brought on behalf of Computer Associates International, Inc. The suit alleged that the board exceeded its authority under the KESOP by awarding 9.5 million excess shares to the participants. Ms. Tikellis was instrumental in achieving the return from the defendants of over $50 million in stock issued in violation of the Company's plan. This represented a recovery of substantially all of the relief sought by Plaintiffs. Reported decisions include 1998 Del. Ch. LEXIS 207 (Del. Ch. Nov 19, 1998); 1999 Del. Ch. LEXIS 203 (Del. Ch. Nov. 8, 1999); 2001 Del. Ch. LEXIS 82 (Del. Ch. May 24, 2001); 2001 Del. LEXIS 387 (Del. Aug. 22, 2001); 2001 Del. Ch. LEXIS 121 (Del. Ch. Sept. 18, 2001). Ms. Tikellis serves as Co-Lead Counsel representing Montgomery County Employee's Retirement Fund in a suit filed derivatively on behalf of Citigroup Inc. in the Court of Chancery in the State of Delaware, for wrongdoing stemming from Citigroup's financial and business exposure to subprime loans and subprime mortgage crisis. The litigation is in an early stage. *In re Citigroup Inc. Shareholder Derivative Litigation*, Civil Action No. 3338-CC. Currently, Ms. Tikellis also serves as Lead Counsel in the Court of Chancery derivative litigation arising out of the merger of Bank of America and Merrill Lynch. *In re Bank of America Corporation Stockholder Derivative Litigation*, Civil Action No. 4307-VCS

In the limited partnership arena, Ms. Tikellis along with partner Nicholas Chimicles has actively and successfully prosecuted several cases including *ML Lee Acquisition Fund L.P.* and *ML-Lee Acquisition Fund II L.P.* and *ML-Lee Acquisition Fund* (Retirement Accounts), (C.A. Nos. 92-60, 93-494, 94-422, and 95-724). The litigation resulted in a negotiated settlement exceeding $30 million in cash and other benefits made available to investors in these funds. In another limited partnership matter, Ms. Tikellis along with partner Nicholas Chimicles was successful in representing limited partners of Aetna Real Estate Associates L.P. This settlement provided for the orderly liquidation of more than $200 million in the partnership's real estate holdings and reduction of general partners' fees and the payment of a special cash distribution to the limited partners (*Aetna Real Estate Associates, L.P.*, Delaware Court of Chancery, C. A. Nos. 15386-NC and 15393-NC).

On the Appellate level, Ms. Tikellis has successfully handled cases before the Delaware Supreme Court resulting in victories for the shareholders and investors. Within the years of 2002 and 2003, Ms. Tikellis argued successfully three appeals in

## Our Attorneys-Partners

*Pamela S. Tikellis cont.*

the Delaware Supreme Court. She argued en banc to the Delaware Supreme Court in *Saito v. McKesson Corporation*, Civil Action No. 18553. This books and records case was tried by Ms. Tikellis. While the Court of Chancery permitted production of certain documents, the Court imposed severe restrictions. The limitations imposed by the Court of Chancery were appealed successfully by the Plaintiff. Importantly, the documents ultimately received in the books and records Saito case resulted in the filing of an amended derivative complaint in the underlying case against McKesson and its directors. The derivative suit was recently settled and the settlement won approval by the Court of Chancery. The settlement provides for a $30 million payment to the Company by the insurance carriers for the directors and the implementation of important corporate governance reforms.

In a case argued by Ms. Tikellis, the Delaware Supreme Court overruled the Court of Chancery's determination that accorded the presumption of the business judgment rule to a board's merger recommendation even though 5 of the 7 directors were interested in the transaction. The Supreme Court held that the mere existence of a purportedly disinterested special committee (consisting of the other two board members) did not shield the remaining 5 members from liability. *Krasner v. Moffett*, 826 A.2d 277 (Del. June 18, 2003). Importantly, the Court held that a full record needed to be developed to determine whether the entire fairness standard of review or the business judgment standard of review would apply in the case. The decision has broken new ground in the field of corporate litigation in Delaware. A settlement providing for a $17.5 million fund for the Class was approved by the Court of Chancery on April 20, 2006.

Ms. Tikellis is admitted to practice before all Courts in the State of Delaware and the United States Court of Appeals for the Third Circuit. She is a member of the Delaware Bar Association and the American Bar Association (Litigation and Business Sections). Ms. Tikellis has served as a member of the Board of Bar Examiners of the Supreme Court of the State of Delaware since 1994 and is currently Chairman. She also served as the Chair of the Delaware Bar Association Ethics Committee from 1989 to 1992, and is a director of the Historical Society of the Court of Chancery for the State of Delaware.

Ms. Tikellis has addressed numerous conferences including ALI-ABA, The Practising Law Institute, the American Bar Association, the Delaware Bar Association, and the Pennsylvania Bar Institution lecturing on corporate governance, merger and acquisitions, hostile takeovers, defense mechanisms and professional ethics. She has participated as a commentator on corporate governance as part of the Institute for Law and Economic Policy's program on Corporate Accountability and recently addressed institutional investors at the OPAL Conference regarding the various tools available in Delaware to protect shareholder rights. Ms. Tikellis was a member of the faculty of the 7th Annual Colorado Business Law Institute that was held in Vail, Colorado on August 10-12, 2006. She participated on a panel featuring the Honorable Phillip S. Figa of the United States District Court for the District of Colorado and the Honorable Leland P. Anderson of the Colorado State District Court addressing the topic of

# Our Attorneys-Partners

*Pamela S. Tikellis cont.*

fiduciary duties. In October 2007 and 2008, Ms. Tikellis, at the request of Chancellor William B. Chandler III of the Court of Chancery of the State of Delaware, participated as guest lecturer in the Chancellor's course on derivative litigation at Vanderbilt University Law School. Ms. Tikellis recently participated in the May 2009 Practising Law Institute Program: What all Business Lawyers must know about Delaware Law Developments 2009 and the Practising Law Institute's 41st Annual Institute on Securities Regulation in November 2009 speaking on Developments in Delaware Corporate Law.

In 2007, 2008 and 2009 Law & Politics named Ms. Tikellis a Delaware Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Delaware, as chosen by their peers and through the independent research of Law & Politics.

## Our Attorneys-Partners



# Robert J. Kriner, Jr.

is a Partner in the Firm's Wilmington, Delaware office. He is admitted to practice before the Supreme Court of Delaware and the United States District Court for the District of Delaware. Mr. Kriner is a 1983 graduate of the University of Delaware with a degree in chemistry, and a 1988 graduate of the Delaware Law School of Widener University, where he was managing editor of *The Delaware Journal of Corporate Law.* From 1988 to 1989, Mr. Kriner served as law clerk to the Honorable James L. Latchum, Senior Judge of the United States District Court for the District of Delaware. Following his clerkship and until joining the Firm, Mr. Kriner was an associate with a major Wilmington, Delaware law firm, practicing in the areas of corporate and general litigation.

Mr. Kriner's practice focuses primarily on business litigation on behalf of investors. Mr. Kriner has prosecuted actions, including class and derivative actions, on behalf of stockholders, limited partners and other investors with claims relating to mergers and acquisitions, hostile acquisition proposals, the enforcement of fiduciary duties, the election of directors, and the enforcement of statutory rights of investors such as the right to inspect books and records. Mr. Kriner prosecuted the *Home Shopping Network, McKesson* and *Moffett* matters along with Partner Pamela Tikellis. In addition, Mr. Kriner represented holders of Series B stock of Litton Industries in *Myers and Koehler v. Litton Industries, Inc., et al.,* C.A. No. 18947-NC in connection with the short form merger cash out of the Series B stock in 2001. The short form merger price was $35 per share. Mr. Kriner negotiated a settlement of the claims which provided an additional $1.84 per share to the Series B holders.

Mr. Kriner also was on the trial team in *Gelfman, et al. v. Weeden Investors, L.P., et al.,* C.A. No. 18519-NC, which was tried in the Delaware Court of Chancery and resulted in a judgment in favor of the limited partners represented by Mr. Kriner. In *Weeden,* the limited partners represented by Mr. Kriner asserted that dilution and a cash out of their interests at a book value of $4.20 per Unit was unfair and in violation of the Partnership Agreement and the General Partner's fiduciary duties. After trial, the Court agreed, concluding the value of the interests was $20.92 per Unit, 4.98 times that paid on the cash out plan, and awarded damages to the limited partners.

Mr. Kriner represented the public limited partners in *I.G. Holdings, Inc., et al. v. Hallwood Realty LLC, et al.,* C.A. No. 20283-NC, in an action challenging the defensive response of the General Partner of Hallwood Partners LP to a premium tender offer by an affiliate of Carl Icahn in 2003. Mr. Kriner led the litigation on behalf of

## Our Attorneys-Partners

*Robert J. Kriner, Jr. cont.*

the public limited partners through expedited injunction proceedings and an expedited trial which led to the General Partner's agreement to auction and sell the Partnership. The sale of the Partnership resulted in a per unit price of $136.70 to the limited partners, as compared to the trading range for the Units of $60 - $80 prior to the litigation.

Recently, Mr. Kriner was one of the co-lead counsel in actions brought on behalf of the public stockholders of Chiron Corporation challenging the buyout of Chiron by its 42% parent, Novartis AG. Novartis initially proposed a buyout at $40 per share and thereafter entered into a merger agreement to acquire Chiron for $45 per share. Mr. Kriner and his co-counsel moved preliminarily to enjoin the merger pending a proper process to maximize value and full disclosure to the stockholders. After completion of briefing on the injunction motion, an agreement in principle was reached for a settlement of this litigation which includes, among other things, an increase in the merger price to $48 per share, or an aggregate increase of over $330 million for the public stockholders.

Mr. Kriner was plaintiff's counsel in an action on behalf of the public unit holders of Northern Border Partners, L.P and on behalf of that Partnership, alleging breaches of the partnership agreement and breaches of fiduciary duties against the general partners of the Partnership and certain affiliates.  The claims arose in connection with a transaction in which, among other things, the Partnership acquired assets of ONEOK, Inc., the indirect majority owner of the general partners.  The Partnership paid cash and newly created "Class B" Units for the assets.  The Class B Units included provisions that would provide premium distributions to ONEOK in the event the public unit holders did not vote to grant ONEOK certain rights.  Pursuant to an agreement to settle the claims, the economic terms of the Class B Units were substantially reduced to the Partnership's and Class' benefit.  The Settlement also secured provisions requiring approval of the nonaffiliated unit holders of any amendments to the independence provisions of the Audit and Conflict Committees.

Mr. Kriner represented a Delaware corporation and its public shareholders in a class and derivative action alleging, among other things, that members of the board of directors of Randall Bearings, Inc. breached their fiduciary duties to the company and its stockholders and committed corporate waste in connection with an executive stock incentive plan which transferred approximately 30% of the company's outstanding stock (200,000 shares) to 3 executive directors for a total cost of $200.  In an opinion dated January 23, 2007, the Delaware Court of Chancery upheld all claims against the directors. *Sample v. Morgan*, 914 A.2d 647 (Del. Ch. 2007).  In a subsequent opinion, the Court denied a motion to dismiss claims against company's outside lawyer and his law firm. *Sample v. Morgan*, 2007 Del. Ch. LEXIS 166 (Nov. 27, 2007).  On May 27, 2008, the parties agreed to the terms of a settlement of the claims which included rescission and cancellation of the executive stock incentive plan, return to the company of all 200,000 shares granted to the Defendant executives, $2.45 million in cash plus wide-ranging prospective governance provisions

## Our Attorneys-Partners

*Robert J. Kriner, Jr. cont.*

relating to future stockholder voting and any future executive incentive plans. The settlement was approved by the Court on August 5, 2008.

Mr. Kriner is an associate member of the Board of Bar Examiners of the Supreme Court of the State of Delaware.

In 2007 and 2008, Law & Politics named Mr. Kriner a Delaware Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Delaware, as chosen by their peers and through the independent research of Law & Politics.

## Our Attorneys-Partners



# Steven A. Schwartz

a Partner in the Haverford office, is admitted to practice before the United States Supreme Court, the Supreme Court of Pennsylvania, the United States District Courts for the Eastern and Western Districts of Pennsylvania, the Eastern District of Michigan, the United States District Court for the District of Colorado, and the United States Courts of Appeals for the Third, Sixth, Eighth and Ninth Circuits. He graduated from the Duke University School of Law (J.D. 1987), where he served as a senior editor of *Law & Contemporary Problems*. He is a 1984 *cum laude* graduate of the University of Pennsylvania, where he received a B.A. in political science. Mr. Schwartz previously practiced at Schnader Harrison Segal & Lewis LLP, concentrating in complex civil litigation.

Mr. Schwartz has actively prosecuted complex class actions in a wide variety of contexts. Notably, Mr. Schwartz has been successful in obtaining several settlements where class members received a full recovery on their alleged damages. For example, Mr. Schwartz was Co-Lead Counsel in *Wong v. T-Mobile*, a case alleging that T-Mobile overcharged its subscribers by billing them for data access services even though T-Mobile's subscribers had already paid a flat rate monthly fee of $5 or $10 to receive unlimited access to those various data services. Mr. Schwartz defeated a motion by T-Mobile to force resolution of these claims via arbitration and successfully convinced the Court to strike down as unconscionable a provision in T-Mobile's subscription contract prohibiting subscribers from bringing class actions. After that victory, the parties reached a settlement requiring T-Mobile to provide class members with a net recovery of the full amount of the un-refunded overcharges with all costs for notice, claims administration, and counsel fees paid in addition to class members' 100 % net recovery. The gross amount of the overcharges, which occurred from April 2003 through June 2006, was approximately $6.7 million. As a result of the lawsuit, T-Mobile also implemented changes to its billing system to prevent such overcharging in the future.

Mr. Schwartz also served as Co-Lead Counsel for a certified national class of employees of Siemens Medical Solutions whose 1998 Incentive Compensation was retroactively reduced by 30% by Siemens. The Philadelphia Court of Common Pleas granted Plaintiffs' motion for summary judgment as to liability, and a few days before trial was scheduled to begin, Siemens agreed to pay class members a net recovery of the full amount that their incentive compensation was reduced (approximately $10.1 million), and pay all counsel fees and expenses in addition to the class members' recovery.

## Our Attorneys-Partners

*Steven A. Schwartz cont.*

Similarly, in connection with the withdrawal by Bayer of its anti-cholesterol drug Baycol, Mr. Schwartz represented various Health and Welfare Funds (including the Pennsylvania Employees Benefit Trust Fund, the Philadelphia Firefighters Union, and the American Federation of State, County and Municipal Workers District Council 47) and a certified national class of "third party payors" seeking damages for the sums paid to purchase Baycol for their members/insureds and to pay for the costs of switching their members/insureds from Baycol to an another cholesterol-lowering drug. The Philadelphia Court of Common Pleas granted plaintiffs' motion for summary judgment as to liability; this was the first and only judgment that has been entered against Bayer anywhere in the United States in connection with the withdrawal of Baycol. The Court subsequently certified a national class, and the parties recently reached a settlement in which Bayer agreed to pay class members a net recovery that approximates the maximum damages (including pre-judgment interest) suffered by class members.

In the securities litigation field, as lead or co-lead counsel, Mr. Schwartz has obtained significant recoveries for defrauded investors. In *In Re Coin Fund Litigation,* (Superior Court of the State of California for the County of Los Angeles), Mr. Schwartz served as plaintiffs' co-lead counsel and successfully obtained a settlement in excess of $35 million on behalf of limited partners, which represented a 100% net recovery of their initial investments. Mr. Schwartz also served as Plaintiffs Co-Lead Counsel in *In re Veritas Software Corp. Derivative Litigation* (Superior Court of the State of California for the County of Santa Clara). In early 2005, the Court approved a settlement in which Veritas agreed to extensive corporate governance changes, including requiring that 75% of the members of Veritas' Board of Directors would be independent directors, and that all reporting 16b officers and directors of the Company would be prohibited from engaging in any sales of Veritas' stock except pursuant to a newly-enacted 10b5-1 Trading Plan. Mr. Schwartz currently serves as Plaintiffs' Liaison Counsel in *In Re DVI Securities Litigation,* (E.D. Pa.). To date, Mr. Schwartz has recovered over $ 17 million in settlements in that litigation, including a $ 3.25 million settlement paid from the individual assets (and not from an insurance policy) of members of DVI's audit committee.

In the consumer protection field, Mr. Schwartz served as plaintiffs' co-lead counsel in *Wolens, et al. v. American Airlines, Inc.* In that class action, plaintiffs alleged that American Airlines breached its contracts with members of its AAdvantage frequent flyer program when it retroactively increased the number of frequent flyer miles needed to claim certain frequent flyer miles travel awards. In a landmark decision, the United States Supreme Court held that plaintiffs' claims were not preempted by the Federal Aviation Act. 513 U.S. 219 (1995). The parties ultimately reached a settlement in which American agreed to provide class members with mileage certificates that represent, for practical purposes, the full extent of class members' alleged damages, which the Court valued at between $ 95.6 million to $ 141.6 million. Mr. Schwartz also represented a national class of owners of wood clad doors and windows manufactured by Marvin Windows that prematurely rotted due to a defective

## Our Attorneys-Partners

*Steven A. Schwartz cont.*

wood preservative. (Minn. 4th Judicial Dist.). Even though the windows were between 12 and 16 years old, the parties reached a national settlement providing class members with the opportunity to obtain replacement windows with minimum net discounts of between 45_% and 58 %. Mr. Schwartz currently serves in leadership positions in *In re LG Front Load Washing Machine Class Action Litigation* and *In re Whirlpool Corp. Front Loading Washing Machine Class Litigation.*

Mr. Schwartz has also developed an expertise in representing the interests of providers of medical services whose bills have been denied for payment by insurers. Mr. Schwartz represented a certified class of Pennsylvania physicians and chiropractors who were not paid by Nationwide Mutual Insurance Company for physical therapy/ physical medicine services provided to its insureds. Nationwide agreed to pay class members approximately 130% of their bills. Mr. Schwartz is currently representing certified classes of medical providers seeking interest for overdue bills for treatment provided to insureds of Progressive Insurance Company.

In the product liability field, Mr. Schwartz served as a member of the Plaintiffs' Steering Committee for medical monitoring claims in *In re Pennsylvania Diet Drugs Litigation,* (Phila. C.C.P.). To settle that case, American Home Products agreed to pay for an extensive medical monitoring program for all Pennsylvania residents who ingested fenfluramine and dexfenfloramine, the "fen" of the "fen phen" diet drug combination.

For the past several years, Law & Politics and the publishers of Philadelphia Magazine have named Mr. Schwartz a Pennsylvania Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Pennsylvania, as chosen by their peers and through the independent research of Law & Politics.

## Our Attorneys-Partners



# Kimberly M. Donaldson

is a Partner in the Firm's Haverford office. Ms. Donaldson concentrates her practice on the prosecution of securities fraud class action litigation, shareholder derivative actions and breach of fiduciary duty class action lawsuits. She is also a member of the Firm's Client Development Group and works closely with the Firm's institutional clients.

Ms. Donaldson is a 1999 *cum laude* graduate of Villanova University School of Law and is a 1996 graduate of Boston University, where she received a B.A. in Political Science, and interned with the Massachusetts Office of the Attorney General, Public Protection Bureau. Ms. Donaldson is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, and various Federal Appellate and District Courts. Ms. Donaldson's pro bono activities include serving as a volunteer attorney with the Support Center for Child Advocates, a Philadelphia-based, nonprofit organization that provides legal and social services to abused and neglected children.

In 2006, 2007 and 2008, Law & Politics and the publishers of Philadelphia Magazine included Ms. Donaldson as a Pennsylvania Rising Star, as listed in the "Pennsylvania Rising Stars Super Lawyers" publication. Only 2.5 percent of the total lawyers in Pennsylvania are listed in *Rising Stars*.

Ms. Donaldson has been involved in prosecuting several federal securities fraud cases, breach of fiduciary duty suits and corporate derivative actions, including the following:

*City of St. Clair Shores General Employees Retirement System v. Inland Western Retail Real Estate Trust, Inc., et al.,* Case 07 C 6174 (U.S.D.C. N.D. Ill). On behalf of City of St. Clair Shores General ERS and a proposed class of Inland Western shareholders, on November 1, 2007, C&T filed a federal securities class action complaint alleging violations of the federal securities laws and breaches of fiduciary duty by defendant Inland Western and certain of its current and former directors, officers and affiliates, and its financial advisor, by virtue of their devising and soliciting the shareholders' approval of a merger of defendants' affiliate with Inland Western for $375 million worth of the Company's stock. C&T was appointed as Co-Lead Counsel in this action. Plaintiffs vigorously opposed defendants' motions to dismiss the action, and the court denied in part defendants' motions. The parties are conducting discovery.

## Our Attorneys-Partners

*Kimberly M. Donaldson cont.*

*Washtenaw County Employees' Retirement System v. Piedmont Office Realty Trust, Inc., et al.* Case 1:07-cv-02660 (U.S.D.C. N.D. GA). On behalf of Washtenaw County ERS and a proposed class of Piedmont shareholders, C&T filed in late-2007 a federal securities class action lawsuit against certain directors of Piedmont charging them with violations of the federal securities laws and breaches of fiduciary duties owed to the shareholders by virtue of defendants' recommendation that shareholders reject a mid-2007 tender offer made for the shareholders' stock and defendants' recommendation to shareholders to vote in favor of making a material change to the Company's charter that would result in a loss of an important benefit to the shareholders (a timely liquidity event). C&T was appointed Co-Lead Counsel. Plaintiffs vigorously opposed defendants' motions to dismiss the action, and the court denied in part defendants' motions. The parties are conducting discovery.

*Washtenaw County Employees' Retirement System v. Wells Real Estate Investment Trust, Inc., et. al.*, Case 1:07-cv-00862 (U.S.D.C. N.D. GA). On behalf of Washtenaw County ERS and a proposed class of Wells REIT shareholders, C&T filed in 2007 a federal securities class action lawsuit against certain current and former officers, directors and affiliates of Wells charging them with violations of the federal securities laws and breaches of fiduciary duties owed to the shareholders by virtue of their of their devising and soliciting the shareholders' approval of a merger of an affiliate of the company's insiders with Wells for $175 million worth of the Company's stock. C&T serves as Co-Lead Counsel. C&T vigorously opposed defendants' motions to dismiss the action, and the court denied, in part, defendants' motions. The parties have concluded expert and fact discovery, the court certified the action as a Class Action and appointed C&T as co-class counsel, and the parties have filed competing motions for summary judgment.

*CNL Hotels & Resorts Inc. Federal Securities Litigation*, Case No. 04-cv-1231 (M.D. Fla.). The Firm is lead trial counsel in this settled action filed in 2004 asserting federal securities law claims under the 1933 Securities Act involving a $3.0 Billion real estate investment trust whose stock is not listed on a national stock exchange. The Litigation was settled by: (1) the establishment of a $35,000,000 Cash Settlement Fund for the benefit of the Purchaser Class; and, (2) by CNL entering into revised agreements in connection with a proposed Merger between CNL and its affiliate which Plaintiffs estimate reduced the amount to have been paid by CNL and its stockholders in connection with the merger by over $225 Million. On August 1, 2006, the Federal District Court in Orlando, Florida granted final approval of the Settlement of the CNL Litigation, noting that "Plaintiffs' counsel pursued this complex case diligently, competently and professionally" and "achieved a successful result." The Court also concluded that, "a substantial benefit [was] achieved (estimated at approximately $225,000,000)" and "this lawsuit was clearly instrumental in achieving that result."

## Our Attorneys-Partners

*Kimberly M. Donaldson  cont.*

*In re Real Estate Associates Limited Partnerships Litigation*, No. CV 98-7035 DDP (CD. Cal.). The Firm was Lead Trial Counsel in this class action asserting federal securities law claims and claims for state law breaches of fiduciary duty. As the principal trial assistant to Mr. Chimicles, Ms. Donaldson was an integral member of the trial team that obtained the *first* plaintiffs' jury verdict in a federal securities fraud/breach of fiduciary duty lawsuit tried to a jury in the past ten years. The total verdict of $185 million (including $92.5 million in punitive damages) was among the "Top 10" Verdicts of 2002 and stands as the *first* and *largest jury verdict* in favor of plaintiffs in a case brought under the federal securities laws since their amendment in 1995. The *Real Estate Associates* judgment was settled by an agreement approved by the Court in November 2003 for $83 million, which represented *full recovery* for the Class (and an amount in excess of the damages calculated by Plaintiffs' expert). Please refer to Mr. Chimicles' bio for additional information.

Ms. Donaldson has also assisted in the prosecution of actions involving health and welfare issues, including actions to recover excessive charges due to fraud and other misconduct by health service providers, and antitrust claims to recover excessive prescription drug charges and other costs due to corporate collusion and misconduct.

# Our Attorneys-Partners



# Joseph G. Sauder

is a Partner in the Firm's Haverford office. Mr. Sauder concentrates his practice on prosecuting class action litigation, including securities fraud, shareholder derivative actions, consumer protection, ERISA and antitrust cases on behalf of shareholders, consumers and institutional clients. Prior to joining the firm, Mr. Sauder was an associate with a major Philadelphia firm where he concentrated on complex civil litigation. From 1998 to 2003, Mr. Sauder was a prosecutor in the Philadelphia District Attorney's Office where he served as lead counsel in hundreds of criminal trials including over twenty jury trials involving major felonies.

In 2006, 2007 and 2008 Law & Politics and the publishers of Philadelphia Magazine included Mr. Sauder as a Pennsylvania Rising Star, as listed in the "Pennsylvania Rising Stars Super Lawyers" publication. Only 2.5 percent of the total lawyers in Pennsylvania are listed in Rising Stars.

In August 2007, American Lawyer Media, publisher of *The Legal Intelligencer* and the *Pennsylvania Law Weekly*, named Mr. Sauder as one of the "Lawyers on the Fast Track" a distinction that recognized thirty-five Pennsylvania attorneys under the age of 40 who show outstanding promise in the legal profession and make a significant commitment to their community.

Mr. Sauder has handled or is currently prosecuting the following actions:

*In re Heartland Payment Systems Inc. Customer Data Security Breach Litig.,* No. H-09-MD-02046 (S.D.Tx.). Mr. Sauder is co-lead counsel on this case, which is the largest data breach in history. The lawsuit seeks to represent a putative class of banks, credit unions, and financial institutions that have re-issued debit and credit cards, incurred unreimbursed fraudulent charges, or were otherwise injured as a result of the data breach.

*Kurian v. County of Lancaster,* No. 2:07-cv-03482-PD (E.D.Pa.) and *Allison, et al. v. The GEO Group,* No. 2:08-cv-467-JD (E.D.Pa.). Mr. Sauder is co-lead counsel on these civil rights lawsuits, filed on behalf of pre-trial detainees. The parties recently reached an agreement in principle to settle these cases.

*Cook v. Rockwell International and the Dow Chemical Company*, No. 90-cv-00181 (D. Co.) Mr. Sauder assisted with the trial of this environmental case involving the Rocky Flats Nuclear Weapons Plant. The case sought property damages (compensatory and punitive) for a class of approximately 15,000 persons owning

# Our Attorneys-Partners

*Joseph G. Sauder cont.*

parcels downwind of Rocky Flats, which is located about 16 miles northwest of downtown Denver, Colorado. In February 2006 a jury returned a verdict of $554 million on behalf the class. It includes an award of $200 million in punitive damages.

*In re Insurance Brokerage Antitrust Litigation*, No. 2:04-cv-05184-GEB-PS (D.N.J.), Mr. Sauder provided substantial assistance with this case involving allegations of bid rigging and steering against numerous insurance brokers and insurers. The district court has granted final approval to settlements valued at approximately $218 million.

*In re Textainer Financial Services Corporation, et al.*, No. CGC 05-440303 (Superior Court of California, County of San Francisco), Mr. Sauder was actively involved this case in which C&T was co-lead counsel. This class action alleged breach of fiduciary duty on behalf of limited partnership unit holders related to a sale of assets that allegedly provided the limited partnership holders with inadequate consideration, and where they received an allegedly misleading Proxy related to the sale. In early 2009, the court approved a $10 million settlement.

*International Brotherhood of Electrical Workers Local 98 v. Janssen, L.P. et al*, 3:07-cv-02608-JAP-JJH (D.N.J.) and *In Re: Seroquel Products Liability Litigation*, 6:06-md-01769-ACC-DAB (M.D. Fla.). Mr. Sauder is a member of the court-appointed Executive Committee of third-party payor ("TPP") plaintiffs in these pending cases allege that the defendants engaged in a scheme to market and promote the drugs for "off-label uses," (*i.e.*, uses not approved by the FDA), thus denying the TPP plaintiffs the opportunity to pay for equally safe and effective, and much less expensive, alternatives.

Mr. Sauder received his Bachelor of Science, *magna cum laude* in Finance from Temple University in 1995. He graduated from Temple University School of Law in 1998, where he was a member of *Temple Law Review*.

Mr. Sauder's public service activities include teaching trial advocacy to a local Philadelphia high school team which competed in the State Mock Trial Competition. He is vice president of the Philadelphia District Attorneys' Alumni Association and on the Executive Committee of Temple Law Alumni Association. His *pro bono* activities include serving as a volunteer attorney with the Support Center for Child Advocates, a nonprofit organization that provides legal and social services to abused and neglected children.

Mr. Sauder is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third Circuit, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the District of New Jersey and the District of Colorado.

## Our Attorneys-Of Counsel

# Morris M. Shuster

Of Counsel, is admitted to practice before the United States Supreme Court, United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania, the Supreme Court of Pennsylvania, and all other Pennsylvania Appellate and trial courts.

Mr. Shuster is a graduate of the Wharton School, University of Pennsylvania (B.S. in Economics, 1951), and of the University of Pennsylvania Law School (J.D., 1954).

Prior to joining the Firm, Mr. Shuster was an active civil litigator as an associate and partner in a major Philadelphia litigation firm, as a named-partner in his own firm, and as special litigation counsel to a large Philadelphia, full-service firm. Over the last 20 years, he has concentrated his practice in consumer class actions against banks and insurance companies. He has been successful in obtaining multi-million dollar recoveries in these cases.

Mr. Shuster is currently a faculty member at the University of Pennsylvania Law School where he teaches Trial Advocacy. In 1981, he was a full-time faculty member at the University of Pennsylvania Law School and taught a course in The Lawyering Process. He also has been a guest lecturer on various legal subjects at the University of Pennsylvania Law School, Medical School, and Dental School, and at Drexel University. He is a member of the Advisory Committee for the Public Service Program at the University of Pennsylvania Law School where he developed the mentor/student pro bono project.

Mr. Shuster is a past president of The Philadelphia Trial Lawyers' Association. He was appointed by the Third Circuit Court of Appeals as Chairperson of the Bankruptcy Judge Search Committee. He was appointed by the District Court for the Eastern District of Pennsylvania as Chairperson of a Panel to consider reappointment of a U.S. Magistrate. He was appointed by the Pennsylvania Supreme Court to Board of Pennsylvania Lawyers Fund for Client Security between the years of 2004-2007.

In the Philadelphia Bar Association, Mr. Shuster has served as a member of the Board of Governors, Chairperson of the Judicial Commission, Committee on Judicial Selection and Reform, Committee on Civil Legislation/Legislative Liaison, and Committee on Civil Judicial Procedure (state courts). He is listed in *Who's Who in American Law*.

In June 2006, 2007, 2008 and 2009 Law & Politics and the publishers of Philadelphia Magazine named Mr. Shuster a Pennsylvania Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Pennsylvania, as chosen by their peers and through the independent research of Law & Politics.

# Our Attorneys-Of Counsel

# Denise Davis Schwartzman



Of Counsel, is admitted to practice in Pennsylvania, Florida, Texas and the District of Columbia. She is admitted to practice before all the State Courts in these jurisdictions and is admitted to the United States Courts of Appeals for the Third, Fifth, Eleventh and District of Columbia Circuits as well as United States District Courts within each Circuit. Ms. Schwartzman is a graduate of the Law School of the University of Pennsylvania (L.L.B. 1969) and Temple University (A.B. 1966). She holds a Master of Laws in Taxation from the Villanova University Law School. Ms. Schwartzman has practiced extensively at the trial and appellate levels before Federal and State Courts and before various administrative agencies.

Ms. Schwartzman was appellate counsel on the brief in *In re Charter Company*, 876 F.2d 866 (11th Cir. 1989), a case which established that class proofs of claim are allowable in bankruptcy proceedings, served on the trial team in *Ashland Oil Spill Litigation*, Master file M-14670 (W.D. Pa) and represented our firm on the Litigation Committee in *Prudential Securities Incorporated Limited Partnership Litigation*, MDL 1005 (S.D.N.Y.).  She serves on the committee of Plaintiffs Derivative Counsel in *In re Mutual Funds Investment Litigation*, MDL 1586 (D.Md.), and on the plaintiffs' trial team in *In re Park West Galleries, Inc. Marketing and Sales Practices Litigation*, 2-09-md-02076 (W.D. Wash.)

Ms. Schwartzman is past President of the Temple University College of Liberal Arts Alumni Board (2007-2008) and a former member of the Temple University Alumni Association Board of Directors.
.

# Our Attorneys-Of Counsel



# Anthony Allen Geyelin

Of Counsel, is admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the Supreme Court of Pennsylvania.

Mr. Geyelin is a graduate of the University of Virginia (B.A. in English, 1968) and the Villanova University School of Law (J.D. 1974 *cum laude*), where he was a member of the Moot Court Board, an Associate Editor of the *Villanova Law Review*, and a recipient of the Obert Corporate Law Award. After graduation from law school Mr. Geyelin was an associate in the business department of a major Philadelphia law firm before accepting an appointment as Chief Counsel to the Pennsylvania Insurance Department in Harrisburg, an office he held from 1981 through 1983. Mr. Geyelin served as Pennsylvania's Acting Insurance Commissioner in 1983 and 1984. In 1985 Mr. Geyelin accepted the position as chief inside counsel for Academy Insurance Group, Inc. in Valley Forge, Pennsylvania and Atlanta, Georgia, serving as General Counsel and Secretary of the publicly traded holding company and its operating subsidiaries. In 1994 Mr. Geyelin was appointed Secretary and General Counsel of Penn-America Insurance Company in Hatboro, Pennsylvania, and in 1995 assumed the same offices with Penn-America Group, Inc., the publicly traded parent company. From 1997 until joining the Firm Mr. Geyelin was in private practice, concentrating on general business, insurance regulatory and litigation support matters.

# Our Attorneys-Of Counsel

# David M. Maser

is Of Counsel in the Firm's Haverford office and is admitted to practice before the Supreme Court of Pennsylvania. Mr. Maser is a member of the Firm's Client Development Group and works closely with the Firm's institutional clients.

Mr. Maser is a 1995 graduate of the Temple University School of Law and a 1992 graduate of the Pennsylvania State University where he received a B.S. in Marketing. He worked in both law and government for the past 12 years. Prior to joining the Firm, he worked with the Major League Baseball Players Association and as a government affairs specialist, representing numerous clients, including Fortune 500 companies, counseling them in legislative issues, appropriation requests, and business development opportunities at the federal, state and local levels of government. Prior to his government affairs tenure, Mr. Maser was an attorney in the City of Philadelphia Law Department during the Edward G. Rendell and John F. Street administrations.

Mr. Maser is also active in the political arena. He has worked on multiple Presidential campaigns and numerous other federal, state and local campaigns.

## Our Attorneys-Associates



## Meghan A. Adams

an associate in the Delaware office, is admitted to practice before the Supreme Court of Delaware and the U.S. District Court for the District of Delaware. Ms. Adams is a graduate of Widener University School of Law (2007, cum laude), where she was an Articles Editor for the *Delaware Journal of Corporate Law* and served as a law clerk to the Honorable Myron T. Steele, Chief Justice of the Supreme Court of Delaware. Prior to law school, she graduated from the University of North Carolina at Chapel Hill (B.S.B.A. 2003), where she was the captain of the school's varsity golf team. Ms. Adams is also the three-time Delaware State Amateur Golf Champion.



## Tiffany J. Cramer

an associate in the Wilmington office, is admitted to practice before the Supreme Court of Delaware and the U.S. District Court for the District of Delaware. She is a graduate of Villanova University School of Law (J.D. 2007) and received her undergraduate degree in Political Science from Tufts University (B.A. 2002, *cum laude*). While in law school, she served as law clerk to the Honorable Jane R. Roth of the United States Court of Appeals for the Third Circuit.

## Our Attorneys-Associates



# Alison R. Gabe

an associate in the Haverford Office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Court for the Eastern District of Pennsylvania, and the United States District Court for the District of New Jersey. Ms. Gabe is a graduate of Villanova University School of Law (J.D. 2006) and the University of California, Los Angeles (B.A. 2003, *cum laude*). While in law school, Ms. Gabe served as Managing Editor of Student Works for the *Villanova Environmental Law Journal*. Prior to joining Chimicles & Tikellis, Ms. Gabe was counsel to the Pennsylvania Securities Commission in the Division of Corporation Finance.

# Benjamin F. Johns

an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. His entire practice is devoted to litigation, with an emphasis on antitrust, securities, and consumer fraud class actions. Mr. Johns is a member of the Firm's Case Development Group, and is responsible for identifying and assessing potential new cases.

Mr. Johns has presented oral argument before the Judicial Panel on Multidistrict Litigation several times. In addition, Mr. Johns has assisted or is assisting in the prosecution of the following actions:

*Kurian v. County of Lancaster*, No. 2:07-cv-03482-PD (E.D.Pa.). Mr. Johns was the primary associate working on this civil rights lawsuit, which was filed on behalf of pre-trial detainees who were admitted to the Lancaster County Prison ("LCP"). The plaintiffs alleged that LCP had an unconstitutional practice or policy of strip searching all new commitments coming into the prison, without regard to whether reasonable suspicion for such a search existed. The district court has granted preliminary approval to a settlement valued up to $2.5 million.

*Allison, et al. v. The GEO Group,* No. 2:08-cv-467-JD (E.D.Pa.). Mr. Johns was the primary associate working on this civil rights lawsuit against The GEO Group, Inc. ("GEO"), a private entity that contracts with state and local governments to administer correctional facilities. According to the complaint filed by C&T, GEO instituted an unconstitutional practice or policy of strip searching all new commitments to its

## Our Attorneys-Associates

*Benjamin F. Johns, cont.*

correctional facilities, without regard to whether reasonable suspicion existed to justify such a search. On March 24, 2009, Judge DuBois issued an opinion and order denying a motion filed by GEO that sought to have the case dismissed. The district court has granted preliminary approval to a settlement valued up to $2.9 million.

*Hammond v. Bank of New York Mellon Corp.,* No. 1:08-cv-6060 (RMB) (S.D.N .Y.). Mr. Johns has done substantial work on this case, which involves two massive security breaches at The Bank of New York Mellon Corporation ("BNY"). The lawsuit, which is currently pending in the Southern District of New York, seeks class action status on behalf consumers whose Sensitive Personal Information was compromised while entrusted to BNY. Among other things, the plaintiffs in the lawsuit are seeking enhanced credit monitoring protection, and for BNY to make curative disclosures related to its allegedly misleading account of what happened in the data breach.

*In re In re Insurance Brokerage Antitrust Litigation,* No. 2:04-cv-05184-GEB-PS (D.N.J.). Mr. Johns provided substantial assistance in this antitrust case, which involves allegations of bid rigging and steering against numerous insurance brokers and insurers. The district court has granted final approval to settlements with an insurance broker and with insurers valued at approximately $218 million.

*In re Heartland Payment Systems Inc. Customer Data Security Breach Litig.,* No. H-09-MD-02046 (S.D.Tx.). Mr. Johns is currently working on this case, which is related to a data breach at Heartland Payment Systems, Inc. The lawsuit seeks to represent a putative class of banks, credit unions, and financial institutions that have re-issued debit and credit cards, incurred unreimbursed fraudulent charges, or were otherwise injured as a result of the data breach. The firm has been appointed interim co-lead counsel.

*In re Recoton Sec. Litig.,* 6:03-cv-00734-JA-KRS (M.D.Fla.). Mr. Johns actively participated in this class action alleging violations of the Securities Exchange Act of 1934 against former officers and directors of a now-bankrupt company for allegedly making materially false and misleading statements regarding the accounting and management of its inventories. The court in this case approved an all-cash settlement of $3 million.

Mr. Johns is a graduate of the Penn State Dickinson School of Law (J.D. 2005, *Woolsack Honor Society*), and the Penn State Harrisburg School of Business Administration (M.B.A. 2004, *Beta Gamma Sigma*). While attending law school, he was a member of the Irving R. Kaufman Securities Moot Court Team. Prior to law school, Mr. Johns attended Washington and Lee University (B.S. 2002, *cum laude*), where he played college basketball and spent a semester studying abroad in Osaka, Japan. Outside of the office, Mr. Johns has coached in the Narberth Basketball League for the past few summers. He is a member of the Philadelphia Bar Association, and the Antitrust Division of the American Bar Association.

**Our Attorneys-Associates**



## Kimberly Litman Kimmel

an associate in the Haverford office, concentrates her practice on the prosecution of securities fraud class action litigation, shareholder derivative actions and breach of fiduciary duty class action lawsuits. Ms. Kimmel is a graduate of the Temple University Beasley School of Law (J.D. 2003) and the University of Maryland, College Park (B.A. 2000). While in law school, she served as Executive Editor of the *Temple Political & Civil Rights Law Review* and as a law clerk to Senior District Judge Kenneth L. Ryskamp of the United States District Court for the Southern District of Florida. Ms. Kimmel is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey, the United States Court of Appeals for the Third Circuit, and the Eastern District of Pennsylvania.

Ms. Kimmel's pro bono activities include serving as a volunteer attorney with the Philadelphia Volunteers for the Indigent Program (Philly VIP), a non-profit organization that provides legal services to low-income clients who reside in Philadelphia or have legal issues in Philadelphia.

Together with the Firm's Partners, Ms. Kimmel is currently assisting in the prosecution of several federal securities fraud cases, including the following:

*In re Wells Real Estate Investment Trust Inc. Securities Litigation (Wells REIT),* Case No. 07-cv-00862-CAP (N.D. Ga.), The Firm is Class Counsel in this certified class action filed in 2007. The Second Amended Complaint, filed on April 21, 2008, alleges that Wells REIT and certain of its affiliates, officers and directors violated Sections 14(a) and 20 of the Securities Exchange Act of 1934 and Rule 14a-9 promulgated thereunder by failing to disclose material information in connection with Proxy materials disseminated to shareholders in February 2007 seeking their approval to merge Wells REIT's affiliated Advisor into Wells REIT for $175 million worth of the Company's stock. On September 16, 2009, the Court certified a class consisting of all shareholders of Wells REIT who were entitled to vote on the February proxy statement and appointed the Firm co-Class Counsel.

*In re Piedmont Office Trust, Inc. Securities Litigation, (Piedmont)* Case No. 07-cv-02660-CAP (N.D. Ga.). The Firm is Co-Lead Counsel in this certified class action filed in 2007 charging Piedmont (formerly known as Wells REIT) and its officers and directors with violations of the federal securities laws, including Sections 14(a) and 14(e) of the Securities Exchange Act of 1934 and Rules 14a-9 and 14e-2(b) promulgated thereunder. The Second Amended Complaint, filed on April 20, 2009,



*Kimberly Litman Kimmel, cont.*

seeks to remedy the wrongdoing that was inflicted against the shareholders of Piedmont who were entitled to tender their shares pursuant to a Tender Offer filed on May 25, 2007, and seeks damages and injunctive relief on behalf of a Class of all persons who are entitled to vote on a false and misleading Final Proxy that was disseminated to investors on October 16, 2007.

*In re Inland Western Retail Real Estate Trust, Inc. Securities Litigation*, Case No. 07-C-6174 (N.D. Ill.). The Firm is Co-Lead Counsel in this pending class action filed in 2007 asserting federal securities law claims under the 1934 Securities Exchange Act involving a real estate investment trust (REIT) whose stock is not listed on a national stock exchange. The Second Amended Complaint, filed on May 1, 2009, charges the Company and its officers, directors, and affiliates, as well as its financial advisor and auditor, with violations of Sections 14(a) and 20 of the Securities Exchange Act of 1934 and Rule 14a-9 promulgated thereunder by failing to disclose material information in connection with Proxy materials disseminated to shareholders in September 2007 seeking their approval to merge Inland REIT's affiliated Advisor and Property Managers into Wells REIT for $375 million worth of the Company's stock.

## Our Attorneys-Associates



# Timothy N. Mathews

an associate in the Haverford office, is a graduate of Rutgers School of Law-Camden (J.D. high honors 2003) and Rutgers University-Camden (B.A. highest honors 2000).

Mr. Mathews' practice includes the representation of investors in complex antitrust, securities, consumer fraud, ERISA, tax, and shareholder derivative litigation. In addition to broad experience prosecuting class and derivative actions in federal district courts around the country, Mr. Mathews has significant appellate experience in the United States Courts of Appeals for the Third and Ninth Circuits.

Mr. Mathews is an active member of the Firm's litigation team in *In re Mutual Funds Investment Litigation* (MDL 04-1586), a multidistrict litigation alleging claims related to late trading and market timing of mutual funds in eighteen mutual fund families and involving hundreds of parties, which has resulted in numerous settlements totaling over $250 million.

In addition, Mr. Mathews has also had an active role in the following actions:

*Alberton v. Commonwealth Land Title Ins. Co.* - Mr. Mathews played a prominent role in successfully defeating motions to dismiss in this recently certified class action where Plaintiffs allege that Commonwealth Land Title Insurance Company and its agents overcharged homeowners for title insurance policies by failing to give refinance and reissue rate discounts as required by law.

*McWilliams v. Long Beach, Granados v. County of Los Angeles, Granados v. City of Los Angeles* - Mr. Mathews is one of the primary attorneys responsible for developing and prosecuting these consolidated cases challenging the imposition of a utility users tax on certain telephone service by the City and County of Los Angeles and the City of Long Beach, which are currently pending in the Superior Court of California.

*International Fibercom Insurance Actions* - Mr. Mathews has held a central role in prosecuting several related actions seeking to recover a securities fraud judgment from Fibercom's Director's and Officer's Liability insurers, including prosecuting an appeal in the Ninth Circuit and several actions and garnishment proceedings in the District of Arizona. The first layer carrier recently settled for the full balance of its policy limit.

*In re Live Concert Antitrust, MDL 1745* - Mr. Mathews has provided significant assistance to lead counsel in this recently certified class action alleging that Clear

## Our Attorneys-Associates

*Timothy N. Matthews, cont.*

Channel and its affiliates monopolized and attempted to monopolize the markets for live concerts and concert tickets by, inter alia, leveraging their position in radio markets to coerce performers to use their concert promotion services.

*In re natural Gas Commodity Litigation* - Mr. Mathews provided assistance to lead counsel in prosecuting this multidistrict litigation alleging manipulation of the price of natural gas futures contracts by dozens of large energy companies which has resulted in over $100 million in settlements.

*CNL Hotels & Resorts Inc. Federal Securities Litigation* - Mr. Mathews assisted the partners in the prosecution of this class action asserting federal securities law claims on behalf of investors in a involving a $3.0 Billion real estate investment trust which settled for $35 million.

Mr. Mathews also directs the Summer Associate program for the Haverford office and coordinates the fall hiring process for the firm, as well as the firm's Drexel University Co-op program.

While attending law school, Mr. Mathews was a Teaching Assistant for the Legal Research and Writing Program and received the 1L Legal Writing Award. He was also Lead Marketing Editor of the *Rutgers Journal of Law & Religion* and one of the top 10 oralists in the 2003 Judge John R. Brown Admiralty Moot Court competition. During law school, Mr. Mathews also served as a research assistant to Professor Darren R. Latham and contributed research to *The Historical Amendability of the American Constitution: Speculations on an Empirical Problematic*, 55 Am. U.L. Rev. 145 (2005).

In 2008 Law & Politics and the publishers of Philadelphia Magazine selected Mr. Mathews as a Pennsylvania Rising Star, as listed in the "Pennsylvania Rising Stars Super Lawyers" publication. Only 2.5 percent of the total lawyers in Pennsylvania are listed in Rising Stars.

Mr. Mathews is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey, and the United States Courts of Appeals for the Third and Ninth Circuits.

Mr. Mathews' pro bono work has included representation of the Holmesburg Fish and Game Protective Association in Philadelphia. He is also a member of the Delaware County Field and Stream Association.

## Our Attorneys-Associates

# A. Zachary Naylor



An associate in the Wilmington office, Mr. Naylor is a graduate of the Widener University School of Law (J.D., 2003 *magna cum laude*), the University of Delaware (B.A. in Economics and Political Science, 2000) and Salesianum School. While at Widener, he served as Wolcott Law Clerk to the Honorable Joseph T. Walsh of the Supreme Court of Delaware. He was also a Managing Editor of the *Delaware Journal of Corporate Law*, meriting the Russell R. Levin Memorial Award for outstanding service and dedication to that publication. Mr. Naylor is admitted to practice before the Supreme Court of Delaware, the United States District Court for the District of Delaware and the United States Court of Appeals for the Third Circuit.

Together with the Firm's Partners, Mr. Naylor has assisted in the prosecution of numerous shareholder and unitholder class and derivative actions including:
*In re Freeport McMoRan Sulphur Inc. Shareholder Litigation*, C.A. No. 16729-NC (Del. Ch.)  This Action challenged the fairness of the terms and process of a 1998 merger between Freeport-McMoRan Sulphur Inc. and McMoRan Oil & Gas, Co. *See e.g.* 2005 Del. Ch. LEXIS 96 (Del. Ch. June 30, 2005) and 2005 Del. Ch. LEXIS 7 (Del. Ch. Jan. 26, 2005). A settlement providing for a $17.5 million fund for the Class was approved by the Court of Chancery on April 20, 2006.

*IG Holdings, Inc. et.al. v. Hallwood Realty, LLC*, C.A. No. 20283-NC (Del. Ch.) This Action challenged the response of a Partnership's general partner to a tender offer and the eventual allocation of merger consideration between the general partner and limited partners. Ultimately, as a result of the litigation, the limited partners received a premium price for their units, protected by a minimum "floor" price.

*Saito, et.al. v. McCall, et.al.*, C.A. No. 17132-NC (Del. Ch.)  This Action involved derivative litigation on behalf of McKesson HBOC arising from alleged oversight violations by certain board members. The Court approved a settlement including a $30 million fund for the Company's behalf, mechanisms to protect the independent prosecution of certain realigned claims, and other corporate governance benefits. The settlement represents a historically large achievement for cases of this type and was characterized by the Court of Chancery as "strikingly good" particularly in light of the "onerous path" presented by Delaware law for derivative Plaintiffs.

*In re Chiron Shareholder Deal Litigation*, Consol. Case No. RG05-230567 (Cal.) & *In re Chiron Corporation Shareholder Litigation*, C.A. No. 1602-N (Del. Ch.) These Actions sought to enjoin the proposed acquisition of shares of Chiron Corporation not

## Our Attorneys-Associates

*A. Zachary Naylor cont.*

already held by its 42% stockholder, Novartis AG. The Actions also sought to invalidate certain contractual provisions that effectively prevented Chiron's board members from effectively discharging their unremitting fiduciary duties in accordance with Delaware law.  Following briefing on a motion for preliminary injunction, a settlement was reached pursuant to which Novartis increased the offered merger consideration by $330 million.

*Sample v. Morgan, et. al., C.A. No. 1214-VCS (Del. Ch.)*  Mr. Naylor represents a Delaware corporation and its shareholders in this class and derivative action, which alleges, among other things, that members of the board of directors of Randall Bearings, Inc. breached their fiduciary duties to the company and its stockholders and committed corporate waste.  In an opinion dated January 23, 2007, the Delaware Court of Chancery upheld all claims against the directors. *Sample v. Morgan*, 914 A.2d 647 (Del. Ch. 2007).  In a subsequent opinion, the Court denied a motion to dismiss for lack of jurisdiction aiding and abetting claims against the directors' and company's lawyer and his law firm.  *Sample v. Morgan*, 2007 Del. Ch. LEXIS 166 (Nov. 27, 2007).

*In re Genetech, Inc. Shareholder Litigation*, C.A. No. 3911-VCS (Del. Ch.)  In this action, Plaintiffs, represented by Chimicles & Tikellis LLP, sought to enjoin an attempt by Roche, Genentech's 56% stockholder, from acquiring the remaining shares by hostile tender offer for $86.50 per share.  During the course of Plaintiffs' challenge to the tender offer, Roche increased its offer to $95 per share, leading to a settlement of the action.  The Court of Chancery approved the settlement on July 9, 2009.

*In re Tricor Indirect Purchaser Antitrust Litigation*, C.A. NO. 05-360-SLR (D. Del.).  Mr. Naylor was liaison counsel in Delaware for a class of third party payers for and consumers of Tricor.  The litigation resulted in the creation of a fund of $65.7 million for indirect purchasers of phenofibrate products during the class period.



# Kimberly A. Evans

an associate in the Haverford Office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey and the United States District Court for the Eastern District of Pennsylvania and the District of New Jersey. Her entire practice is devoted to litigation, with an emphasis on securities and consumer fraud class actions.

In the securities field, Ms. Evans, together with the Firm's Partners, is currently assisting in the prosecution of the following cases:

*In re DVI Inc. Securities Litigation*, Case No. 2:03-cv-05336-LDD (E.D. Pa.). The Firm is Liaison Counsel in this pending class action alleging federal securities law claims under the 1934 Securities Exchange Act. The pending action alleges that the company's officers and directors, in conjunction with its external auditors and outside counsel, violated the federal securities laws by engaging in a series of deceptive schemes which ultimately deceived shareholders out of millions of dollars. To date, over $17 million in settlements have been recovered for the shareholder class.

*In re Inland Western Retail Real Estate Trust, Inc. Securities Litigation*, Case No. 07-C-6174 (N.D. Ill.). The Firm is Co-Lead Counsel in this pending class and derivative action filed in 2007 asserting federal securities law claims under the 1934 Securities Exchange Act involving a real estate investment trust (REIT) whose stock is not listed on a national stock exchange. This pending action alleges that the Company and its officers, directors, and affiliates, as well as its financial advisor, violated the federal securities laws and breached their fiduciary duties by entering into a Merger Agreement and seeking shareholder approval to merge Inland Western REIT's affiliated Advisor and Property Managers into Inland REIT for $375 Million worth of the Company's stock.

In the consumer protection area, Ms. Evans, together with the Firm's Partners, is currently assisting in the prosecution of the following cases:

*In re: Park West Galleries, Inc., Marketing and Sales Practices Litigation*, Case No. 2:09-MD-02076 (W.D. Wash.). The Firm is Co-Lead Counsel in this pending class action which was consolidated in the Western District of Washington by the Judicial Panel on Multidistrict Litigation on August 11, 2009. This pending action alleges that Park West Galleries and its subsidiaries and affiliates conspired with Royal Caribbean, Celebrity, Holland America and Carnival cruise lines to defraud customers by representing that the artwork Park West sells is a good investment

## Our Attorneys-Associates

*Kimberly A. Evans, cont.*

and will appraise for many times more what the customer paid for it immediately upon disembarking from the ship. The action also alleges that the artwork Park West sells, in fact, is not a good investment and only appraises for more than the purchase price because Park West itself does the appraisal. The complaint asserts violations of RICO, admiralty/federal common law fraud and aiding and abetting, and various state consumer protection statutes.

Ms. Evans' pro bono activities include serving as a volunteer attorney with the Wills for Heroes Program, a non-profit organization founded after the events of 9/11 that provides essential legal documents, such as wills, living wills, and powers of attorney, to local firefighter, EMS, and police personnel at no cost. She is also an active volunteer and board member and recording secretary of Animal Friends of Lansdowne, a local non-profit animal welfare group that supports animal rescue efforts.

Ms. Evans graduated from Temple University Beasley School of Law (J.D. 2007) and received her undergraduate degrees in Chemistry and Criminal Justice from LaSalle University (B.A. 2003). While in law school, Ms. Evans was a member of the Temple Brehon Society and the Intellectual Property Law Society. She also received the honor of "Outstanding Oral Advocacy" for her performance in Temple's Integrated Trial Advocacy Program. She is currently a member of the American, Pennsylvania, Philadelphia and Montgomery County Bar Associations.



## Matthew D. Schelkopf

an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. He is a graduate of the Pennsylvania State University (B.A. Political Science, 1999), Widener University School of Law (J.D., 2002) and Villanova University School of Law (LL.M. in Taxation and Estate Planning, 2008). While working towards his juris doctorate, he was an active member of the Trial Advocacy Society and an Executive Board Member of the Moot Court Honor Society. In 2000, he attended the University of Geneva Graduate Institute in Geneva, Switzerland where he studied Health law and International Criminal law. During law school, Mr. Schelkopf served as summer law clerk to the Honorable Allan L. Tereshko of the Philadelphia Court of Common Pleas. He was one of five Widener students inducted into the National Order of Barristers in 2002.

After graduation, Mr. Schelkopf became a criminal prosecutor with the District Attorney's Office of York County. He litigated 27 jury trials and over 50 bench trials. He quickly progressed to Senior Deputy Prosecutor where he headed a trial team

## Our Attorneys-Associates

*Matthew D. Schelkopf, cont.*

responsible for approximately 300 felony and misdemeanor cases each trial term. During this time, he wrote and implemented a county extradition policy and procedure manual used to assist in returning fugitives to Pennsylvania for prosecution.

In 2004, he became a full-time associate with a suburban law firm and focused on civil trial litigation throughout the Pennsylvania and New Jersey courts. In 2006, he was assistant counsel in a Philadelphia County complex litigation trial resulting in a $30,000,000.00 verdict in favor of his clients - the largest state verdict recorded for that year. He has also been responsible for numerous appeals which have helped to create new law in both New Jersey and Pennsylvania. For further information see: C.W. v. Cooper Health Systems, 388 NJ 42 (NJ App 2006); Miller v. Ginsberg, 2005 Pa. Super 136 (Pa. Super. 2005).

He has presented oral argument before the Pennsylvania Supreme and Superior Courts and has volunteered in judging the annual University of Pennsylvania mock trial competitions. He is also a Pennsylvania licensed Realtor® and has organized group participation in the Habitat for Humanity foundation.



## Scott M. Tucker

an associate in the Wilmington Office, is admitted to practice before the Supreme Courts of Delaware and Connecticut, the United States District Court for the District of Delaware and the United States Court of Appeals for the Third Circuit. He is a graduate of the Syracuse University College of Law (J.D. 2006, *cum laude*), the Whitman School of Management at Syracuse University (M.B.A. 2006), and SUNY Cortland (B.S. 2002, *cum laude*). While attending law school, Mr. Tucker was a member of the Securities Arbitration Clinic and received a Corporate Counsel Certificate from the Center for Law and Business Enterprise.

Together with the Firm's Partners, Mr. Tucker is assisting in the prosecution of numerous shareholder and unitholder class and derivative actions arising pursuant to Delaware law, including:

*In re Kinder Morgan, Inc. Shareholders Litigation,* Consol. C.A. No. 06-C-801 (Kan.) This pending action alleges the value of KMI's shares is materially in excess of the $107.50 agreed to in connection with the Buyout, that the consideration is inadequate and represents an attempt by the Buyout Group to wield its control to force out the public shareholders in order to reward itself with the profits rightfully be-



*Scott M. Tucker, cont.*

longing to the Plaintiffs and KMI's public shareholders, and that the proposed offer was timed to take advantage of a slump in the share price of KMI that immediately preceded the initial Buyout offer.

*In Re Yahoo! Shareholders Litigation,* Civil Action No. 3561-CC (Del. Ch.)  This action alleged that Yahoo and its board of directors (the "Board") acted to thwart a non-coercive takeover bid by Microsoft, which would provide a 62% premium over Yahoo's pre-offer share price, and instead approved improper defensive measures and pursued third party deals that would be destructive to shareholder value.  A settlement providing comprehensive changes to Yahoo's change in control severance plans was approved by the Court of Chancery on March 6, 2009.  The settlement was characterized by one analyst as making "Yahoo much more attractive to suitors because it removes a potentially open ended liability from the acquisition equation.  We see a definite positive."

Mr. Tucker is an associate member of the Board of Bar Examiners of the Supreme Court of the State of Delaware.

# Practice Areas

### Health & Welfare Fund Assets
*C&T Protects Clients' Health & Welfare Fund Assets Through Monitoring Services & Vigorously Pursuing Health & Welfare Litigation.*

At no cost to the client, C&T seeks to protect its clients' health & welfare fund assets against fraud and other wrongdoing by monitoring the health & welfare fund's drug purchases, Pharmacy benefit Managers and other health service providers.  In addition, C&T investigates potential claims and, on a fully-contingent basis, pursues legal action for the client on meritorious claims involving the clients' heath & welfare funds.  These claims could include: the recovery of excessive charges due to misconduct by health service providers; antitrust claims to recover excessive prescription drug charges and other costs due to corporate collusion and misconduct; and, cost-recovery claims where welfare funds have paid for health care treatment resulting from defective or dangerous drugs or medical devices.

### Monitoring Financial Investments
*C&T Protects Clients' Financial Investments Through Securities Fraud Monitoring Services.*

Backed by extensive experience, knowledge of the law and successes in this field, C&T utilizes various information systems and resources (including forensic accountants, financial analysts, seasoned investigators, as well as technology and data collection specialists, who can cut to the core of complex financial and commercial documents and transactions) to provide our institutional clients with a means to actively protect the assets in their equity portfolios.  As part of this no-cost service, for each equity portfolio, C&T monitors relevant financial and market data, pricing, trading, news and the portfolio's losses.  C&T investigates and evaluates potential securities fraud claims and, after full consultation with the client and at the client's direction, C&T will, on a fully-contingent basis, pursue legal action for the client on meritorious securities fraud claims.

### Corporate Transactional
*C&T Protects Shareholders' Interest by Holding Directors Accountable for Breaches of Fiduciary Duties*

Directors and officers of corporations are obligated by law to exercise good faith, loyalty, due care and complete candor in managing the business of the corporation.  Their duty of loyalty to the corporation and its shareholders requires that they act in the best interests of the corporation at all times.  Directors who breach any of these "fiduciary" duties are accountable to the stockholders and to the corporation itself for the harm caused by the breach.  A substantial part of the practice of Chimicles & Tikellis LLP involves representing shareholders in bringing suits for breach of fiduciary duty by corporate directors.

# Practice Areas

### Securities Fraud
*C&T Protects and Recovers Clients' Assets Through the Vigorous Pursuit of Securities Fraud Litigation.*

C&T has been responsible for recovering over $1 billion for institutional and individual investors who have been victims of securities fraud. The prosecution of securities fraud often involves allegations that a publicly traded corporation and its affiliates and/or agents disseminated materially false and misleading statements to investors about the company's financial condition, thereby artificially inflating the price of that stock. Often, once the truth is revealed, those who invested at a time when the company's stock was artificially inflated incur a significant drop in the value of their stock. C&T's securities practice group comprises seasoned attorneys with extensive trial experience who have successfully litigated cases against some of the nation's largest corporations. This group is strengthened by its use of forensic accountants, financial analysts, and seasoned investigators.

### Antitrust
*C&T Enforces Clients' Rights Against Those Who Violated Antitrust Laws.*

C&T successfully prosecutes an array of anticompetitive conduct, including price fixing, tying agreements, illegal boycotts and monopolization. As counsel in major litigation over anticompetitive conduct by the makers of brand-name prescription drugs, C&T has helped clients recover significant amounts of price overcharges for blockbuster drugs such as BuSpar, Coumadin, Cardizem, Relafen, and Paxil.

### Real Estate Investment Trusts
*C&T is a Trail Blazer in Protecting Clients' Investments in Non-Listed Equities.*

C&T represents limited partners and purchaser of stock in limited partnerships and real estate investment trusts (non-listed REITs) which are publicly-registered but not traded on a national stock exchange. These entities operate outside the realm of a public market that responds to market conditions and analysts' scrutiny, so the investors must rely entirely on the accuracy and completeness of the financial and other disclosures provided by the company about its business, its finances, and the value of its securities. C&T prosecutes: (a) securities law violations in the sale of the units or stock; (b) abusive management practices including self-dealing transactions and the payment of excessive fees; (c) unfair transactions involving sales of the entities' assets; and (d) buy-outs of the investors' interests.

# Practice Areas

### Shareholder Derivative Lawsuits
*C&T is a Leading Advocate for Prosecuting and Protecting Shareholder Rights through Derivative Lawsuits and Class Actions.*

C&T is at the forefront of persuading courts to recognize that actions taken by directors (or other fiduciaries) of corporations or associations must be in the best interests of the shareholders. Such persons have duties to the investors (and the corporation) to act in good faith and with loyalty, due care and complete candor. Where there is an indication that a director's actions are influenced by self-interest or considerations other than what is best for the shareholders, the director lacks the independence required of a fiduciary and, as a consequence, that director's decisions cannot be honored. A landmark decision by the Supreme Court of Delaware underscored the sanctity of this principal and represented a major victory for C&T's clients.

### Corporate Governance and Accountability
*C&T is a Principal Advocate for Sound Corporate Governance and Accountability.*

C&T supports the critical role its investor clients serve as shareholders of publicly held companies. Settlements do not provide exclusively monetary benefits to our clients. In certain instances, they may include long term reforms by a corporate entity for the purpose of advancing the interests of the shareholders and protecting them from future wrongdoing by corporate officers and directors. On behalf of our clients, we take corporate directors' obligations seriously. It's a matter of justice. That's why C&T strives not to only obtain maximum financial recoveries, but also to effect fundamental changes in the way companies operate so that wrongdoing will not reoccur.

## Representative Cases

***CNL Hotels & Resorts Inc. Securities Litigation*, Case No. 6:04-CV-1231(M.D. FL).**

C&T is Lead Litigation Counsel in CNL Hotels & Resorts Inc. Securities Litigation**,** representing a Michigan Retirement System, other named plaintiffs and over 100,000 investors in this federal securities law class action that was filed in August 2004 against the nation's second largest hotel real estate investment trust, CNL Hotels, and certain of its affiliates, officers and directors. CNL raised over $3 billion from investors pursuant to what Plaintiffs alleged to be false and misleading offering materials. In addition, in June 2004 CNL proposed an affiliated-transaction that was set to cost the investors and the Company over $300 million ("Merger").

On August 1, 2006, the Federal District Court located in Orlando, Florida granted final approval of the Settlement as fair, reasonable, and adequate, and in rendering its approval of an award of attorneys' fees and costs to Plaintiffs' Counsel, the Court noted that "Plaintiffs' counsel pursued this complex case diligently, competently and professionally" and "achieved a successful result." More than 100,000 class members received notice of the proposed settlement and no substantive objection to the settlement, plan of allocation or fee petition was voiced by any class member.

The Settlement resolves federal securities law and state law claims that were filed against CNL Hotels & Resorts, Inc. (f/k/a CNL Hospitality Properties, Inc.)("CNL Hotels") and other individual and entity defendants ("Settling Defendants") in August, 2004. The Action was filed on behalf of: (a) CNL Hotels shareholders entitled to vote on the proposals presented in CNL Hotels' proxy statement dated June 21, 2004 ("Proxy Class"); and (b) CNL Hotels' shareholders who acquired CNL Hotels shares pursuant to or by means of CNL Hotels' public offerings, registration statements and/or prospectuses between August 16, 2001 and August 16, 2004 ("Purchaser Class").

The Proxy Class claims were settled by (a) CNL Hotels having entered into an Amended Merger Agreement which significantly reduced the amount that CNL Hotels paid to acquire its Advisor, CNL Hospitality Corp., compared to the Original Merger Agreement approved by CNL Hotels' stockholders pursuant to the June 2004 Proxy; (b) CNL Hotels having entered into certain Advisor Fee Reduction Agreements, which significantly reduced certain historic, current, and future advisory fees that CNL Hotels paid its Advisor before the Merger; and (c) the adoption of certain corporate governance provisions by CNL Hotels' Board of Directors. **In approving the Settlement, the Court concluded that in settling the Proxy claims, "a substantial benefit [was] achieved (estimated at approximately $225,000,000)" and "this lawsuit was clearly instrumental in achieving that result."** The Purchaser Class claims were settled by Settling Defendants'

# Representative Cases

payment of **$35,000,000**, payable in three annual installments (January 2007 to January 2009).

This is an excellent result in a litigation that presented extremely difficult and complex issues. The Settlement achieves outstanding benefits for CNL Hotels' investors and, importantly, the Company is now well-positioned to pursue its business plan

### *In re Chiron Shareholder Deal Litigation*, Case No. RG05-230567 (Cal. Super.) & *In re Chiron Corporation Shareholder Litigation*, C.A. No. 1602-N (Del. Ch.).

C&T represents stockholders of Chiron Corporation in an action which challenged the proposed acquisition of Chiron Corporation by its 42% stockholder, Novartis AG. Novartis announced a $40 per share merger proposal on September 1, 2005, which was rejected by Chiron on September 5, 2005. On October 31, Chiron announced an agreement to merge with Novartis at a price of $45 per share. C&T was co-lead counsel in the consolidated action brought in the Delaware Court of Chancery. Other similar actions were brought by other Chiron shareholders in the Superior Court of California, Alameda City. The claims in the Delaware and California actions were prosecuted jointly in the Superior Court of California. C&T, together with the other counsel for the stockholders, obtained an order from the California Court granting expedited proceedings in connection with a motion preliminary to enjoin the proposed merger. Following extensive expedited discovery in March and April, 2006, and briefing on the stockholders' motion for injunctive relief, and just days prior to the scheduled hearing on the motion for injunctive relief, C&T, together with Co-lead counsel in the California actions, negotiated an agreement to settle the claims which included, among other things, a further increase in the merger price to $48 per share, or an additional $330 million for the public stockholders of Chiron. On July 25, 2006, the Superior Court of California, Alameda County, granted final approval to the settlement of the litigation.

### *Rojas-Contreras v. Att'y Gen'l*, No. 04-4762, 2006 WL 2052233 (3d Cir. July 24, 2006).

In this pro bono matter, one of C&T's Associates represented a Colombian bacteriologist who was kidnapped, assaulted and threatened with death by the FARC rebels of Colombia, who thereafter sought asylum in the United States. The Department of Homeland Security denied asylum to the bacteriologist, and C&T represented her in the appeal of that denial. Subsequent to an oral argument before the Court of Appeals for the Third Circuit, C&T won remand on the denial of asylum.

# Representative Cases

***In re Pennsylvania Baycol: Third-Party Payor Litigation***, **Case No. 001874, Court of Common Pleas, Philadelphia County**.
In connection with the withdrawal by Bayer of its anti-cholesterol drug Baycol, C&T represents various Health and Welfare Funds, including the Pennsylvania Employees Benefit Trust Fund, and a certified national class of "third party payors" seeking damages for the sums paid to purchase Baycol for their members/ insureds and to pay for the costs of switching their members/insureds from Baycol to an another cholesterol-lowering drug. The Philadelphia Court of Common Pleas granted plaintiffs' motion for summary judgment as to liability; this is the first and only judgment that has been entered against Bayer anywhere in the United States in connection with the withdrawal of Baycol. The Court subsequently certified a national class, and the parties reached a settlement (recently approved by the court) in which Bayer agreed to pay class members a net recovery that approximates the maximum damages (including pre-judgment interest) suffered by class members. The class settlement negotiated by C&T represents a net recovery for third party payors that is between double and triple the net recovery pursuant to a non-litigated settlement negotiated by lawyers representing third party payors such as AETNA and CIGNA that was made available to and accepted by numerous other third party payors (including the TRS). C&T had advised its clients to reject that offer and remain in the now settled class action. On June 15, 2006 the court granted final approval of the settlement.

***In re Freeport-McMoran Sulphur, Inc. Shareholder Litigation***, **C.A. No. 16729 (Del. Ch.).**
In this shareholder class action, C&T serves as Lead Plaintiffs' Counsel representing investors in a stock-for-stock merger of two widely held public companies, seeking to remedy the inadequate consideration the stockholders of Sulphur received as part of the merger. In June 2005, the Court of Chancery denied defendants' motions for summary judgment, allowing Plaintiffs to try each and every breach of fiduciary duty claim asserted in the Action. In denying defendants' motions for summary judgment the Court held there were material issues of fact regarding certain board member's control over the Board including the Special Committee members and the fairness of the process employed by the Special Committee implicating the duty of entire fairness and raising issues regarding the validity of the Board action authorizing the merger. The decision has broken new ground in the field of corporate litigation in Delaware. Before the trial commenced, Plaintiffs and Defendants agreed in principle to settle the case. The settlement, which was approved in April 2006, provides for a cash fund of $17,500,000.

# Representative Cases

### *In re McKesson Derivative Litigation, Saito*, et. al.  v. McCall, et. al., C.A. No. 17132 (Del. Ch.).

As Lead Counsel in this stockholder derivative action, C&T challenged the actions of the officers, directors and advisors of McKesson and HBOC in proceeding with the merger of the two companies when their managements were allegedly aware of material accounting improprieties at HBOC.  In addition, C&T also brought (under Section 220 of the Delaware Code) a books and records case to discover information about the underlying events. C&T successfully argued in the Delaware Courts for the production of the company's books and records which were used in the preparation of an amended derivative complaint in the derivative case against McKesson and its directors. Seminal opinions have issued from both the Delaware Supreme Court and Chancery Court about Section 220 actions and derivative suits as a result of this lawsuit. Plaintiffs agreed to a settlement of the derivative litigation subject to approval by the Delaware Court of Chancery, pursuant to which the Individual Defendants' insurers will pay $30,000,000 to the Company. In addition, a claims committee comprised of independent directors has been established to prosecute certain of Plaintiffs' claims that will not be released in connection with the proposed settlement. Further, the Company will maintain important governance provisions among other things ensuring the independence of the Board of Directors from management. On February 21, 2006, the Court of Chancery approved the Settlement and signed the Final Judgment and Order and Realignment Order.

### *Shared Medical Systems 1998 Incentive Compensation Plan Litigation*, Philadelphia County Court of Common Pleas, Commerce Program, No. 0885.

Chimicles & Tikellis LLP is lead counsel in this action brought in 2003 in the Philadelphia County Court of Common Pleas. The case was brought on behalf of approximately 1,300 persons who were employees of Defendant Siemens Medical Solutions Health Services Corporation (formerly Shared Medical Systems, Inc.) who had their 1998 incentive compensation plan ("ICP") compensation reduced 30% even though the employees had completed their performance under the 1998 ICP contracts and had earned their incentive compensation based on the targets, goals and quotas in the ICPs.   The Court had scheduled trial to begin on February 4, 2005. On the eve of trial, the Court granted Plaintiffs' motion for summary judgment as to liability on their breach of contract claim.  With the rendering of that summary judgment opinion on liability in favor of Plaintiffs, the parties reached a settlement in which class members will receive a **net recovery of the full amount of the amount that their 1998 ICP compensation was reduced**. On May 5, 2005, the Court approved the settlement, stating that the case "should restore anyone's faith in class actions as a reasonable way of proceeding on reasonable cases."

## Representative Cases

***Gelfman v. Weeden Investors, L.P.,*** **Civ. Action No. 18519-NC (Del. Ch.).**
Chimicles & Tikellis LLP served as class counsel, along with other plaintiffs' firms, in this action against the Weeden Partnership, its General Partner and various individual defendants filed in the Court of Chancery in the State of Delaware. In this Class Action, Plaintiffs alleged that Defendants breached their fiduciary duties to the investors and breached the Partnership Agreement. The Delaware Chancery Court conducted a trial in this action which was concluded in December 2003. Following the trial, the Chancery Court received extensive briefing from the parties and heard oral argument. On June 14, 2004, the Chancery Court issued a memorandum opinion, which was subsequently modified, finding that the Defendants breached their fiduciary duties and the terms of the Partnership Agreement, with respect to the investors, and that Defendants acted in bad faith ("Opinion"). This Opinion from the Chancery Court directed an award of damages to the classes of investors, in addition to other relief. In July 2004, Class Counsel determined that it was in the best interests of the investors to settle the Action for over 90% of the value of the monetary award under the Opinion (over $8 million).

***I.G. Holdings Inc., et. al.  v. Hallwood Realty, LLC****, et. al., C.A. No. 20283 (Del. Ch.).*
In the Delaware Court of Chancery, C& T represented the public unitholders of Hallwood Realty L.P.  The action challenged the general partner's refusal to redeem the Partnership's rights plan or to sell the Partnership to maximize value for the public unitholders. Prior to the filing of the action, the Partnership paid no distributions and  Units of the Partnership normally traded in the range of $65 to $85 per unit. The prosecution of the action by C&T caused the sale of the Partnership, ultimately yielding approximately $137 per Unit for the unitholders plus payment of the attorneys' fees of the Class.

***ML-Lee Litigation, ML Lee Acquisition Fund L.P.* and *ML-Lee Acquisition Fund II L.P.* and *ML-Lee Acquisition Fund (Retirement Accounts),* (C.A. Nos. 92-60, 93-494, 94-422, and 95-724), Delaware Federal District Court.**
C&T represented three classes of investors who purchased units in two investment companies, ML-Lee Funds (that were  jointly created by Merrill Lynch and Thomas H. Lee). The suits alleged breaches of the federal securities laws, based on the omission of material information and the inclusion of material misrepresentations in the written materials provided to the investors, as well as breaches of fiduciary duty and common law by the general partners in regard to conduct that benefited them at the expense of the limited partners. The complaint included claims under the often-ignored Investment Company Act of 1940, and the case witnessed numerous opinions that are considered seminal under the ICA.  The six-year litigation resulted in **$32 million** in cash and other benefits to the investors.

# Representative Cases

***In re Real Estate Associates Limited Partnership Litigation*, Case No. CV 98-7035, United States District Court, Central District of California.**

Chimicles & Tikellis LLP achieved national recognition for obtaining, in a federal securities fraud action, the first successful plaintiffs' verdict under the PSLRA. Senior partner Nicholas E. Chimicles was Lead Trial Counsel in the six-week jury trial in federal court in Los Angeles, in October 2002. The jury verdict, in the amount of $185 million (half in compensatory damages; half in punitive damages), was ranked among the top 10 verdicts in the nation for 2002.  After the court reduced the punitive damage award because it exceeded California statutory limits, the case settled for $83 million, representing full recovery for the losses of the class.   At the final hearing, held in November 2003, the Court praised Counsel for achieving both a verdict and a settlement that "qualif[ied] as an exceptional result" in what the Judge regarded as "a very difficult case…" In addition, the Judge noted the case's "novelty and complexity…and the positive reaction of the class. Certainly, there have been no objections, and I think Plaintiffs' counsel has served the class very well."

***Case Summary:***  In August of 1998, over 17,000 investors ("Investor Class") in 8 public Real Estate Associates Limited Partnerships ("REAL Partnerships") were solicited by their corporate managing general partner, defendant National Partnership Investments Corp. ("NAPICO"), and other Defendants via Consent Solicitations filed with the Securities and Exchange Commission ("SEC"), to vote in favor of the sale of the REAL Partnerships' interests in 98 limited partnerships ("Local Partnerships").  In a self-dealing and interested transaction, the Investor Class was asked to consent to the sale of these interests to NAPICO's affiliates ("REIT Transaction"). In short, Plaintiffs alleged that defendants structured and carried out this wrongful and self-dealing transaction based on false and misleading statements, and omissions in the Consent Solicitations, resulting in the Investor Class receiving grossly inadequate consideration for the sale of these interests.  Plaintiffs' expert valued these interests to be worth a minimum of $86,523,500 (which does not include additional consideration owed to the Investor Class), for which the Investor Class was paid only $20,023,859.

Plaintiffs and the Certified Class asserted claims under Section 14 of the Securities Exchange Act of 1934 ("the Exchange Act"), alleging that the defendants caused the Consent Solicitations to contain false or misleading statements of material fact and omissions of material fact that made the statements false or misleading.  In addition, Plaintiffs asserted that Defendants breached their fiduciary duties by using their positions of trust and authority for personal gain at the expense of the Limited Partners.  Moreover, Plaintiffs sought equitable relief for the Limited Partners including, among other things, an injunction under Section 14 of the Exchange Act for violation of the "anti-bundling rules" of the SEC, a declaratory judgment decreeing that defendants were not entitled to indemnification from the REAL Partnerships.

# Representative Cases

**Trial:**  This landmark case is the *first* Section 14 – proxy law- securities class action seeking damages, a significant monetary recovery, for investors that has been tried, and ultimately won, before a jury anywhere in the United States since the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Trial began on October 8, 2002 before a federal court jury in Los Angeles.  The jury heard testimony from over 25 witnesses, and trial counsel moved into evidence approximately 4,810 exhibits; out of those 4,810 exhibits, witnesses were questioned about, or referred to, approximately 180 exhibits.

On November 15, 2002, the ten  member jury, after more than four weeks of trial and six days of deliberation, unanimously found that Defendants knowingly violated the federal proxy laws and that NAPICO breached its fiduciary duties, and that such breach was committed with oppression, fraud and malice.  The jury's unanimous verdict held defendants liable for compensatory damages of $92.5 million in favor of the Investor Class.  On November 19, 2002, a second phase of the trial was held to determine the amount of punitive damages to be assessed against NAPICO.  The jury returned a verdict of $92.5 million in punitive damages.  In total, trial counsel secured a unanimous jury verdict of $185 million on behalf of the Investor Class.

With this victory, Mr. Chimicles and the trial team secured the 10th largest verdict of 2002.  (See, National Law Journal, "The Largest Verdicts of 2002", February 2, 3003; National Law Journal, "Jury Room Rage", Feb. 3. 2002).  Subsequent to post-trial briefing and rulings, in which the court reduced the punitive damage award because it exceeded California statutory
limits, the case settled for $83 million.   The settlement represented full recovery for the losses of the class.

**Prosecuting and trying this Case required dedication, tenacity, and skill:**
This case involved an extremely complex transaction.  As Lead Trial Counsel, C&T was faced with having to comprehensively and in an understandable way present complex law, facts, evidence and testimony to the jury, without having them become lost (and thus, indifferent and inattentive) in a myriad of complex terms, concepts, facts and law. The trial evidence in this case originated almost exclusively from the documents and testimony of Defendants and their agents.  As Lead Trial Counsel, C&T was able, through strategic cross-examination of expert witnesses, to effectively stonewall defendants' damage analysis.  In addition, C&T conducted thoughtful and strategic examination of defendants' witnesses, using defendants' own documents to belie their testimony.

**The significance of the case:**  The significance of this trial and the result are magnified by the public justice served via this trial and the novelty of issues tried. This case involved a paradigm of corporate greed, and C&T sent a message to not only the Defendants in this Action, but to all corporate fiduciaries, officers, directors and partners, that it does not pay to steal, lie and cheat. There needs to be effective deterrents, so that "corporate greed" does not pay.  The diligent and unrelenting prosecution and trial of this case by C&T sent that message.

# Representative Cases

Moreover, the issues involved were novel and invoked the application of developing case law that is not always uniformly applied by the federal circuit courts. In Count I, Plaintiffs alleged that defendants violated § 14 of the Exchange Act. Subsequent to the enactment of the PLSRA, the primary relief sought and accorded for violations of the proxy laws is a preliminary injunction. Here, the consummation of the REIT Transaction foreclosed that form of relief. Instead, Plaintiffs' Counsel sought significant monetary damages for the Investor Class on account of defendants' violations of the federal proxy laws. C&T prevailed in overcoming defendants' characterization of the measure of damages that the Investor Class was required to prove (defendants argued for a measure of damages equivalent to the difference in the value of the security prior to and subsequent to the dissemination of the Consent Solicitations), and instead, successfully recouped damages for the value of the interests and assets given up by the Investor Class. The case is important in the area of enforcement of fiduciary duties in public partnerships which are a fertile ground for unscrupulous general partners to cheat the public investors.

Because of C&T's leadership and extensive advocacy skills, a complex case, requiring thousands of hours of attorney, expert, paralegal and support staff labor, which faced fierce opposition at each turn, was fully litigated and tried to a jury. Because of C&T, 17,000 investors had their day in court and were heard. C&T brought this Action before the revelations about the extensiveness of "corporate wrongdoing," and at the time this Action was filed, C&T already recognized the need for a clear message to be sent to corporations, and to the decision makers running those corporations, that wrongdoing will not be tolerated and will not pay.

### Aetna Real Estate Associates LP

Nicholas Chimicles and Pamela Tikellis represented a Class of unitholders who sought dissolution of the partnership because the management fees paid to the general partners were excessive and depleted the value of the partnership. The Settlement, valued in excess of $20 million, included the sale of partnership property to compensate the class members, a reduction of the management fees, and a special cash distribution to the class.

### Continental Illinois Securities Litigation

Nicholas Chimicles served as lead counsel for the shareholder class in this action alleging federal securities fraud. Filed in the federal district court in Chicago, the case arose from the 1982 oil and gas loan debacle that ultimately resulted in the Bank being taken over by the FDIC. The case involved a twenty-week jury trial conducted by Mr. Chimicles in 1987. Ultimately, the Class recovered nearly $40 million.

## Representative Cases

***Wong v. T-Mobile USA, Inc.*, Case No. CV 05-cv-73922-NGE-VMM, United States District Court, Eastern District of Michigan.**

Chimicles & Tikellis LLP and the Miller Law Firm P.C. filed a complaint alleging that defendant T-Mobile overcharged its subscribers by billing them for data access services even though T-Mobile's subscribers had already paid a flat rate monthly fee of $5 or $10 to receive unlimited access to those various data services. The data services include Unlimited T-Zones, Any 400 Messages, T-Mobile Web, 1000 Text Messages, Unlimited Mobile to Mobile, Unlimited Messages, T-Mobile Internet, T-Mobile Internet with corporate My E-mail, and T-Mobile Unlimited Internet and Hotspot. Chimicles & Tikellis LLP and the Miller Law Firm defeated a motion by T-Mobile to force resolution of these claims via arbitration and successfully convinced the Court to strike down as unconscionable a provision in T-Mobile's subscription contract prohibiting subscribers from bringing class actions. After that victory, the parties reached a settlement requiring T-Mobile to provide class members with a net recovery of the full amount of the un-refunded overcharges with all costs for notice, claims administration, and counsel fees paid in addition to class members' 100% net recovery. The gross amount of the overcharges, which occurred from April 2003 through June 2006, is approximately $6.7 million. To date, T-Mobile has refunded approximately $4.5 million of those overcharges. A significant portion of those refunds were the result of new policies T-Mobile instituted after the filing of the Complaint. Pursuant to the Settlement, T-Mobile will refund the remaining $2.2 million of un-refunded overcharges.