UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:10-CIV-80644-RYSKAMP

ANDREA MIYAHIRA, Individually And On Behalf of All Others Similarly Situated,

   Plaintiff,

vs.

VITACOST.COM, INC., IRA P. KERKER, RICHARD P. SMITH, STEWART GITLER, ALLEN S. JOSEPHS, DAVID N. ILFELD, LAWRENCE A. PABST, ERAN EZRA, and ROBERT G. TRAPP,

   Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF MONTGOMERY COUNTY EMPLOYEES' RETIREMENT FUND TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

**PRELIMINARY STATEMENT**

Montgomery County Employees' Retirement Fund ("Montgomery County" or "Movant") hereby moves to be appointed lead plaintiff in this action pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), and Section 27(a)(3)(B) of the Securities Act of 1933 ("Securities Act"), and 15 U.S.C. § 77z-1(a)(3)(B), the Private Securities Litigation Reform Act of 1995 ("PLSRA"); and, for approval of its selection of the law firms of Kahn Swick & Foti, LLC ("KSF") and Chimicles & Tikellis LLP as co-lead counsel for the "Class." The Class includes investors who purchased or otherwise acquired the

1

securities of Vitacost.com, Inc. ("Vitacost") pursuant and/or traceable to the Company's September 2009 Initial Public Offering ("IPO") and/or in the open market between September 24, 2009 and April 20, 2010, inclusive (the "Class Period").

Montgomery County fully understands its duties and responsibilities to the Class, and is willing and able to oversee the vigorous prosecution of this action. As described in the Certification attached to the Declaration of Julie Prag Vianale in Support of the Motion of Montgomery County To Be Appointed Lead Plaintiff and To Approve Proposed Lead Plaintiff's Choice of Counsel ("Vianale Decl.") at Exhibit A, Montgomery County has suffered losses of $9,043.66 as a result of its purchases of Vitacost securities in and traceable to the IPO as well as in the open market during the Class Period. To the best of its knowledge, Montgomery County has sustained the largest loss of any investor seeking to be appointed as lead plaintiff.

In addition to evidencing the largest financial interest in the outcome of this litigation, Montgomery County's Certification demonstrates its intent to serve as lead plaintiff in this litigation, including its cognizance of the duties of serving in that role.[1] Moreover, Montgomery County satisfies both the applicable requirements of the PSLRA and Federal Rule of Civil Procedure ("Rule") 23 and is, therefore, presumptively the "most adequate plaintiff."

The relief sought by this Motion is precisely what the framers of the PSLRA hoped to accomplish, i.e., the appointment of an institutional investor, such as Movant, to serve as lead plaintiff in class actions arising under the federal securities laws. The PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will

---

[1] The relevant federal securities laws specifically authorize that any Class Member may seek to be appointed lead plaintiff by either filing a complaint or moving for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) and 15 U.S.C. § 77z-1(a)(3)(B)(iii). A copy of Montgomery County's Certification of its transactions in Vitacost securities during the Class Period is attached as Exhibit A to the Vianale Declaration.

represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H. R. Rep. No. 104-369, at 34 (1995).

Accordingly, Montgomery County respectfully submits this memorandum of law in support of its motion for an order: appointing Montgomery County as lead plaintiff in this action; and, approving Montgomery County's selection of the law firms KSF and Chimicles & Tikellis as co-lead counsel.

## PROCEDURAL BACKGROUND

The first and only lawsuit filed against defendants, *Miyahira v. Vitacost.Com, Inc., et al.*, Case No. 10-CIV-80644-RYSKAMP, was filed on behalf of plaintiff Andrea Miyahira in the United States District Court for the Southern District of Florida on May 24, 2010, pursuant to Sections 10(b) and 20(a) of the Exchange Act and Sections 11, 12(a)(2), and 15 of the Securities Act. Pursuant to the PSLRA, on May 28, 2010, the first notice that a class action had been initiated against Defendants was published on *Market Wire*, a widely-circulated national business-oriented wire service ("PSLRA Notice"). *See* Vianale Decl. at Exhibit B. The PSLRA Notice advised members of the proposed Class of their right to move the Court, by no later than July 23, 2010 (or 60 days following publication of the May 28, 2010 PSLRA Notice), for appointment as lead plaintiff. Montgomery County timely filed this motion.

## STATEMENT OF FACTS[2]

This is a federal securities class action against Vitacost and certain of its officers and/or directors for violations of Sections 10(b) and 20(a) of the Exchange Act and Sections 11, 12(a)(2), and 15 of the Securities Act. Vitacost began its operations in 1993 as Nature's Wealth Company and was founded by former CEO and Chairman of the Board defendant Wayne F.

---

[2] These facts are derived from the complaint filed in *Miyahira v. Vitacost.Com, Inc. et al.*, 10-cv-80644 (filed May 24, 2010) and from proposed co-lead counsel's investigation.

3

Gorsek. Vitacost sells health and wellness products, including dietary products, cosmetics, organic products, personal care products, sports nutrition, and health foods from a selection of third-party brands and the Company's own proprietary products. Vitacost uses a direct-to-customer business model and conducts its manufacturing operations through its wholly-owned subsidiary, Nutraceutical Life Sciences, Inc., which is Vitacost's largest proprietary brand.

On September 24, 2009, Vitacost conducted its IPO, selling approximately 11 million shares for proceeds to the Company and selling stockholders of over $120 million. The Company's IPO Registration Statement and Prospectus ("Prospectus") contained untrue statements and omissions of material facts. For example, Vitacost claimed that its manufacturing capabilities enabled higher gross margins on proprietary products as a result of the Company's ability to obtain quantity discounts on raw materials and bypass the traditional supply chain and associated product mark-ups. According to the Prospectus, this competitive edge led to an impressive three-fold increase in Vitacost's customer base. Defendants claimed that approximately $20 million in IPO proceeds would go toward capital expenditures that would enable Vitacost to keep up with its growing supply, manufacturing, and distribution capabilities. Moreover, the Prospectus portrayed Vitacost as a company that would continue to experience increased net sales and was in a position to "aggressively grow" the manufacturing of its high-margin proprietary products. As support for these strong claims, the Company underscored its North Carolina Facility's "efficient high speed production and aggregate capacities in excess of our present demand requirements" as well as its "two highly automated distribution centers" as proof of its ability to fulfill a growing number of orders.

The Prospectus presented a misleading image of Vitacost's business and future growth prospects. Despite Vitacost's purported capacity for growth, at the time of the IPO, the

4

Company's supply, manufacturing, and distribution capabilities were *already* inadequate. Defendants had failed to ramp up the Company's operating expenses while its customer base was rapidly increasing. The inadequacy of the Company's manufacturing and supply capabilities was further confirmed when samples of the Company's proprietary products demonstrated a high degree of variability in their potency. Additionally, the Prospectus contained purported "Risk Disclosures" that made no mention of its inability to sustain its product mix favoring high margin proprietary products within its existing capabilities.

Defendants continued to make materially false and misleading statements throughout the Class Period, which extends until the truth was revealed on April 20, 2010. For example, the Company issued press releases and filed quarterly reports with the SEC in November 2009 and February and March 2010 wherein the Company announced, *inter alia*, dramatic and record growth in and outlook for sales, profits, cash flow, and gross profit margins and touted operating and manufacturing improvements. In truth, however, and undisclosed to investors, the Company: was starting a product-mix shift away from its high-margin proprietary products; inflated demand for its proprietary products; was pushing out excess product to customers so that it could mask declining demand; was experiencing logistical issues at its own plants; and lacked significant oversight processes and procedures and utilized ineffective operations software, despite knowing that those issues existed. As a result of these undisclosed issues and practices, the Company lacked adequate internal and financial controls, the Company's financial results were materially inflated at all relevant times, and the Company's projections regarding future growth lacked any reasonable factual basis when made.

This scheme allowed Vitacost insiders, including certain defendants, to sell over three million of their personally held shares in the IPO for proceeds of over $36 million. Notably, less

5

than a month before the truth was revealed, the Company's founder and former CEO sold nearly five million of his personally held shares in a share purchase agreement.

Defendants' materially false and misleading statements had the intended effect of causing Vitacost's shares to price at $12.00 for the IPO and to subsequently trade at artificially inflated levels throughout the Class Period. On April 20, 2010, however, the truth began to be revealed when Vitacost issued a press release updating revenue guidance and earnings per share for the first quarter and full year 2010. The release announced that revenue and earnings per share would be downgraded – revealing a revenue miss of $10 million and an earnings per share fall of somewhere between 20% and 28.5%. Defendants attributed this dramatic decline in revenue and earnings to lower-than-expected revenue and a product mix shift from the Company's flagship products to third-party sales. In that disclosure, Defendants also announced that back orders had increased as a result of a manufacturing logistics issue at the Company's North Carolina plant, causing $1 million to be shifted into a later quarter.

As a direct result of investors learning the truth about the Company that day, Vitacost's stock price collapsed to $9.47 per share – a decline of 25% compared to the prior day's close of approximately $12.50 per share – on very heavy trading volume of almost 6 million shares. This dramatic share price decline eradicated much of the artificial inflation from Vitacost's share price, causing real economic loss to investors who purchased this stock during the Class Period. The economic loss, *i.e.* damages suffered by Movant and other members of the Class, was a direct result of Defendants' failure to alert investors of its inability to meet its manufacturing, supply and distribution demands at the time of the IPO.

## ARGUMENT

### I.     MONTGOMERY COUNTY SHOULD BE APPOINTED LEAD PLAINTIFF

#### A.     The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3) and 15 U.S.C. § 77z-1(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the Class informing Class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i) and 15 U.S.C. § 77z-1(a)(3)(A)(i). The plaintiff in the first-filed action published the PSLRA Notice on *Market Wire* on May 28, 2010. *See* Vianale Decl. Exhibit B.[3]  Within 60 days after publication of the PSLRA Notice, any member or members of the proposed Class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 78u-4(a)(3)(A) and (B) and 15 U.S.C. § 77z-1(a)(3)(A) and (B). The PSLRA Notice indicated that applications for appointment as lead plaintiff were to be made no later than July 23, 2010.

Second, within 90 days after publication of the PSLRA Notice, the Court shall appoint as lead plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B)(i) and 15 U.S.C. § 77z-1(a)(3)(B)(i).

Third, in determining who the "most adequate plaintiff" is, the acts provide that:

---

[3] *Market Wire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, No. 02-cv-8264, 2004 U.S. Dist. LEXIS 9571, at *20 (S.D.N.Y. May 27, 2004); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97-cv-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. August 6, 1997).

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> > (aa) has either filed the complaint or made a motion in response to a notice…
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii) and 15 U.S.C. § 77z-1(a)(3)(B)(iii); *See also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998); *Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004).

**B.     Montgomery County Is "The Most Adequate Plaintiff"**

**1.     Montgomery County Complied With the PLSRA and Should Be Appointed Lead Plaintiff**

Montgomery County moves this Court to be appointed lead plaintiff within the 60-days following the publication of the PSLRA Notice, which occurred on *Market Wire*, a national business-oriented wire service, on May 28, 2010. Accordingly, Montgomery County has met the requirement of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(aa) by filing its motion by July 23, 2010.

Moreover, Montgomery County has sustained a substantial loss from its investment in Vitacost securities and has shown its willingness to represent the Class by presenting a signed Certification detailing its Vitacost transactions that occurred during the Class Period. *See* Vianale Decl. Exhibit A. As demonstrated by its Certification, Montgomery County is prepared to consult with counsel on a regular basis, prior to every major litigation event, and direct the course of litigation, with the benefit of counsel's advice. In addition, Montgomery County has selected and retained highly competent counsel with significant experience in class action and

8

securities litigation to represent the Class. The firm biographies of proposed co-lead counsel are attached as Exhibit C to the Vianale Declaration.

### 2. Montgomery County Has the Largest Financial Interest

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii) and 15 U.S.C. § 77z-1(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants who have the largest financial interest in the relief sought by the action. *See Sofran*, 220 F.R.D. at 401; *see also, Lee v. Axonyx, Inc., et al.*, No. 7:05-cv-2307, slip. op., at pg. 8 (S.D.N.Y. Jan. 27, 2006) (Griesa, J.) (appointing movant with the largest financial interest). As demonstrated herein, Montgomery County (with losses of $9,043.66) has the largest known financial interest in the relief sought by the Class. *See* Vianale Decl. Exhibit A.

### 3. Montgomery County Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a Class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. *See Fischler v. Amsouth Bancorp.*, No. 96-1567-civ-T-17A, 1997 U.S. Dist. LEXIS 2875 at *7-8 (M.D. Fla. Feb. 6,

9

1997). Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *Schriver v. Impac. Mortg. Holdings, Inc.*, 2006 Dist. LEXIS 40607, *16 (C.D. Cal. May 1, 2006). As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, justifying its appointment as lead plaintiff. Montgomery County has claims that are typical of those of other Class members and can adequately serve as lead plaintiff.

          **i.**    **Montgomery County's Claims Are Typical of the Claims of all the Class Members**

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Because Montgomery County seeks to prove that defendants "committed the same unlawful acts in the same methods against an entire class . . . all members of this class have identical claims, and therefore, the typicality requirement of Rule 23(a)(3) is satisfied." *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1984); *accord Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722-25 (11th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988). The requirement that the proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988).

In this case, the typicality requirement is met because Montgomery County's claims are identical, non-competing, and non-conflicting with the claims of the other Class members.

Movant, like other Class members, purchased Vitacost securities directly in the IPO and at various other times between September 24, 2009, and April 20, 2010, when Vitacost's stock price was artificially inflated as a result of the defendants' misrepresentations and omissions, and thus, both Movant and the Class suffered damages as a result of these purchases. Simply put, Montgomery County, like other Class members: (1) purchased Vitacost securities in connection with, or traceable to, the IPO and during the Class Period; (2) purchased Vitacost securities at artificially-inflated prices as a result of defendants' misrepresentations and omissions; and (3) suffered damages thereby. Movant is not subject to any unique or special defenses. Thus, Montgomery County meets the typicality requirement of Rule 23 because its claims are the same as the claims of the other Class members.

### ii.   Montgomery County Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to: (1) whether there are any conflicts between the interests of the Movant and the members of the class; (2) whether the Movant is an adequate representative of the class; (3) whether the interests of the Movant are clearly aligned with the members of the putative class; and (4) whether there is evidence of any antagonism between their respective interests. 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B; *see also Fischler*, 1997 U.S. Dist. LEXIS 2875 at *7-8. Montgomery County's interests are clearly aligned with the members of the Class because its claims are identical to the claims of the Class. There is no evidence of antagonism between its interests and those of the proposed Class members. Furthermore, Montgomery County has a significant, compelling interest in prosecuting this action to a successful conclusion

11

based upon the large financial loss it incurred as a result of the wrongful conduct alleged herein.[4] This motivation, combined with Montgomery County's identical interest with the members of the Class, clearly shows that Montgomery County will adequately and vigorously pursue the interests of the Class. In addition, Montgomery County has selected proposed co-lead counsel that are highly experienced in successfully prosecuting securities class actions to represent its interests. *See* Vianale Decl. at Exhibit C.

In sum, because of Montgomery County's common interests with the Class members, its clear motivation and ability to vigorously pursue this action, and its competent counsel, the adequacy requirement of Rule 23(a) is met in this case. Therefore, Movant not only meets the typicality and adequacy requirements of Rule 23(a) and has sustained the largest losses, it is, in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), presumptively the most adequate plaintiff to lead this action.

## II.  THE COURT SHOULD APPROVE MONTGOMERY COUNTY'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. § 77z-1(a)(3)(B)(v). Thus, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Montgomery County has selected KSF and Chimicles & Tikellis to serve as lead counsel for the Class. These firms have successfully prosecuted complex securities actions as well as

---

[4] Importantly, the legislative history of the PSLRA demonstrates that its intent was to encourage institutional investors to serve as lead plaintiff. The Senate Report on the PSLRA indicates: "The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts... Institutions with large stakes in class actions have much the same interests as the plaintiff class generally." Senate Report No. 104-98, 104th Cong. 1st Sess. at 11 (1995).

12

many other types of complex class actions. *See* Vianale Decl. Exhibit C. These firms are leading class action law firms, with national practices, that specialize in complex litigation with an emphasis on securities, antitrust and consumer cases. These firms have successfully litigated cases involving such issues as stock price manipulation, false and misleading SEC filings, fraudulent stock offerings and proxy solicitations, among others. Since the passage of the PSLRA, the firms have placed special emphasis on the successful representation of public and private institutional investors as "Lead Plaintiffs" and have been appointed as lead counsel in numerous cases brought after the enactment of the PSLRA. *See id.* Furthermore, Montgomery County's counsel has invested time and resources in carefully investigating the facts and law underlying the claims asserted in this Action against defendants. This Court can be assured that in the event this motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all of the foregoing reasons, Montgomery County respectfully requests that this Court: (1) appoint Montgomery County to serve as lead plaintiff in this action; (2) approve Montgomery County's selection of co-lead counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: July 23, 2010    Respectfully submitted,

**VIANALE & VIANALE LLP**

s/ Julie Prag Vianale
Julie Prag Vianale (FBN 184977)
jvianale@vianalelaw.com
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Telephone: (561) 392-4750
Facsimile: (561) 392-4775

*Proposed Liaison Counsel for the Class*

**KAHN SWICK & FOTI, LLC**

Kim E. Miller
500 Fifth Ave., Suite 1810
New York, NY 10110
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

Lewis S. Kahn
206 Covington Street
Madisonville, Louisiana 70447
Telephone (504) 455-1400
Facsimile: (504) 455-1498

-and-

**CHIMICLES & TIKELLIS, LLP**

Kimberly M. Donaldson
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: 610-642-8500
Fax: 610-649-3633

*Counsel for Montgomery County and Proposed Co-Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

**I hereby certify** that on July 23, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                            *s/* Julie Prag Vianale
                                            Julie Prag Vianale (FBN 184977)
                                            jvianale@vianalelaw.com
                                            2499 Glades Road, Suite 112
                                            Boca Raton, FL  33431
                                            Telephone:  (561) 392-4750
                                            Facsimile:   (561) 392-4775

## SERVICE LIST (BY CM-ECF)
*Miyahira v. Vitacost.com, Inc., et al*
Case No.9:10-cv-80644-KLR
United States District Court, Southern District of Florida

Paul R. Bessette
bessette@gtlaw.com
Michael J. Biles
bilesm@gtlaw.com
Sandra D. Gonzalez
gonzalezsd@gtlaw.com
Royale Price
pricer@gtlaw.com
**Greenberg Traurig LLP**
300 W 6th Street, Suite 2050
Austin, TX 78701
Tel. (512) 320-7200
Fax. (512) 320-7210

Joseph Clay Coates, III.
coatesj@gtlaw.com
**Greenberg Traurig LLP**
Phillips Point - East Tower
777 S Flagler Drive, Suite 300E
West Palm Beach, FL 33401
Tel. (561) 650-7900
Fax. (561) 655-6222

Attorneys for Defendants Vitacost.com, Inc., Allen S. Josephs, David N. Illfeld, Eran Ezra, Ira P. Kerker, Lawrence A. Pabst, Richard P. Smith, Robert G. Trapp, and Stewart Gitler

Maya Susan Saxena
msaxena@saxenawhite.com
Joseph E. White, III
jwhite@saxenawhite.com
Lester Rene Hooker
lhooker@saxenawhite.com
Christopher Steven Jones
cjones@saxenawhite.com
**Saxena White PA**
2424 N Federal Highway, Suite 257
Boca Raton, FL 33431
Tel. (561) 394-3399
Fax. (561) 394-3382

Attorneys for Plaintiff Andrea Miyahira