# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ANDREA MIYAHIRA, Individually and On Behalf of All Others Similarly Situated, | ) CASE NO. 9:10-cv-80644 (KLR) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| VITACOST.COM, INC., IRA P. KERKER, RICHARD P. SMITH, STEWART GITLER, ALLEN S. JOSEPHS, DAVID N. ILFELD, LAWRENCE A. PABST, ERAN EZRA, and ROBERT G. TRAPP, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) JURY TRIAL DEMANDED |

## MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL, AND INCORPORATED MEMORANDUM OF LAW

### MOTION

Class member Craig Laub ("Movant"), by and through his counsel, hereby respectfully moves this Court pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for appointment as Lead Plaintiff in the above-captioned action, and for approval of his selection of Saxena White P.A. ("Saxena White") as Lead Counsel.

This Motion is made on the grounds that Movant is the most adequate lead plaintiff, having suffered total estimated losses of approximately $1,163.45. In addition, Movant meets the requirements of Federal Rule of Civil Procedure 23 because his claims are typical of Class members' claims and they will fairly and adequately represent the Class. Finally, Movant has

selected and retained Saxena White, a law firm with substantial experience in prosecuting securities fraud class actions, to serve Lead Counsel.

This Motion is based on the attached Memorandum of Law, the Declaration of Joseph E. White, III ("White Decl.") and the exhibits attached thereto, the pleadings in this action and such other written or oral argument as may be presented to the Court.

## MEMORANDUM OF LAW

### I.   INTRODUCTION

Movant respectfully submits this Memorandum of Law in support of his motion, pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, for an Order: (i) appointing Movant as Lead Plaintiff of a class of purchasers of the securities of Vitacost.com, Inc. ("Vitacost" or the "Company"); and (ii) approving Movant's selection of Saxena White as Lead Counsel for the Class.

### II.   PRELIMINARY STATEMENT

This case involves allegations against Vitacost and certain of its officers and directors (collectively, "Defendants") brought on behalf of all persons and entities who purchased or otherwise acquired the securities of Vitacost between September 24, 2009 and April 20, 2010, inclusive (the "Class Period"), seeking to pursue remedies under the Exchange Act. The Exchange Act claims allege that Defendants engaged in a fraudulent scheme to artificially inflate the Company's stock price. As a result of the fraud described below, the Company has lost a substantial portion of its value. During the Class Period, Defendants issued materially false and misleading statements and failed to disclose material adverse information regarding the Company's financial well-being and future prospects. Defendants' misstatements artificially

inflated the price of Vitacost securities and caused substantial damages to the Class upon disclosure of the truth in April 2010.

The action is also brought on behalf of all persons or entities who purchased shares of Vitacost common stock pursuant and/or traceable to the Company's Initial Public Offering for the sale of Vitacost common stock at a price of $12.00 per share, commencing on or about September 24, 2009 (the "IPO"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").  Under the Securities Act, Defendants are strictly liable for the material misstatements in the Offering Documents (as defined below) for this public stock offering, and these claims specifically exclude any allegations of knowledge or scienter.  The Securities Act claims also expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

On May 24, 2010, a complaint was filed in this Action in the U.S. District Court for the Southern District of Florida, asserting claims under the Exchange Act and the Securities Act. Pursuant to the PSLRA, this Court should appoint as Lead Plaintiff the movant or group of movants that has demonstrated the "largest financial interest in the litigation" and also meet the typicality and adequacy prongs of Fed. R. Civ. P. 23.  *See* 15 U.S.C. 78u-4(a)(3)(B)(iii).  Movant suffered estimated losses of $1,163.45.  To the best of his knowledge, Movant's losses represent the largest known financial interest of any Class member seeking to be appointed as lead plaintiff.

Movant is not aware of any other class member that has filed an action or filed an application for appointment as lead plaintiff that has sustained greater financial losses.  In addition, Movant satisfies each of the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and, therefore, is qualified for appointment as Lead

Plaintiff in the Action. Thus, as demonstrated herein, Movant is the presumptive "most adequate plaintiff" and should be appointed Lead Plaintiff.

## III.   STATEMENT OF FACTS[1]

Vitacost operates as an online retailer and direct marketer of health and wellness products, offering dietary supplements, such as vitamins, minerals, herbs or other botanicals, amino acids, and metabolites, as well as cosmetics, organic body and personal care products, sports nutrition, and health foods. ¶56. The Company sells its products directly to consumers through catalogs and its website, www.vitacost.com, and offers approximately 30,000 products from 1,600 third-party brands, as well as its own proprietary brands. ¶¶56-57.

On September 24, 2009, Vitacost filed a Form S-1/A Registration Statement (the "Registration Statement") with the SEC in connection with the IPO for the sale of the Company's shares at a price of $12.00 per share. ¶21. On or about September 24, 2009, the Prospectus (the "Prospectus" and, collectively with the Registration Statement, the "Offering Documents") with respect to the IPO, which forms part of the Registration Statement, became effective. *Id.* Both the Company and certain selling stockholders sold shares in the IPO, which provided net proceeds of $11.16 per share after underwriting expenses. ¶22. The Company sold 4,428,445 shares for net proceeds of $49,421,446, while the selling stockholders sold 6,571,555 shares for net proceeds of $73,338,553. *Id.*

The *Miyahira* complaint alleges that, both in the Offering Documents and throughout the Class Period, Defendants made statements and issued filings that were materially false and misleading because they failed to disclose: (1) that the Company was starting a product-mix shift away from the high-margin proprietary products; (2) that the Company inflated demand for its

---

[1] These facts were derived from the allegations contained in the class action styled as *Miyahira v.Vitacost.com, Inc., et al.*, No. 9:10-cv-80644 (KLR) (S.D.Fla. filed May 24, 2010).

proprietary products;  (3) that the Company was pushing out excess product to customers so that it could mask declining demand; (4) that the Company was experiencing logistical issues at its own plants; (5) that the Company lacked significant oversight processes and procedures and utilized ineffective operations software, despite knowing that those issues existed; (6) that as a result of this, the Company's financial results were materially inflated at all relevant times; (7) that the Company lacked adequate internal and financial controls; and (8) that the Company's projections regarding future growth lacked in any reasonable basis when made.  ¶¶23-25, 58-67, 72.

## IV.   ARGUMENT

As discussed below, Movant satisfies each of the three requirements set forth in the PSLRA and is qualified for appointment as Lead Plaintiff for the Class in the Action.  Movant also seeks approval by this Court of his selection of Lead Counsel for the Class.

### A.   Movant  Should Be Appointed Lead Plaintiff

#### i.   The Procedural Requirements Pursuant To The PSLRA

The PSLRA sets forth a detailed procedure that governs the appointment of a lead Plaintiff in each private action arising under the Exchange Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.  *See* 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).  Specifically, the PSLRA provides that, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs who filed the initial complaint shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class:

>  (I)      of the pendency of the action, the claims asserted therein, and the purported class period; and

(II)     that not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiffs of the purported class.

15 U.S.C. §78u-4(a)(3)(A)(i).  Here, a notice was published on May 24, 2010 on *Business Wire* advising class members of the pendency of the action and that any class member wishing to serve as lead plaintiff must move for appointment by July 23, 2010.[2]  *See* White Decl., Exhibit A.

Furthermore, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as Lead Plaintiffs in response to any such notice within 60 days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motions to consolidate any actions asserting substantially the same claim or claims. Under this section, the court "shall" appoint the "most adequate plaintiff," and is to presume that such plaintiff is the person, or group of persons, which:

(aa)     has either filed the complaint or made a motion in response to a notice…

(bb)     in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)     otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D (a)(3)(B)(iii)(I).

As discussed below, Movant  has  complied with the procedural prerequisites of the PSLRA.  Moreover, Movant  believes  that he has the largest financial interest in the litigation, and otherwise meets the relevant requirements of Rule 23.

---

[2] *Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated business-oriented publication or wire service." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996)*; see also Lax v. First Merchs. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866 at *2 (N.D. Ill. Aug. 6, 1997)*; Serafimov v. Netopia, Inc.*, No. C-04-03364, 2004 U.S. Dist. LEXIS 25184, at *9 (N.D. Cal. Dec. 3, 2004)*.

ii.     **Movant Is "The Most Adequate Plaintiff"**

(a)     **Movant's  Motion for Appointment As Lead Plaintiff is Timely**

Under the deadlines established by the PSLRA, any class members interested in moving

for the appointment as Lead Plaintiff in this matter must do so within 60 days of the date of

publication of the notice of the first filed action, or July 23, 2010.  15 U.S.C. §78u-4(a)(3)(A)

and (B).  Because this Motion is filed within the requisite time frame after publication of the

notice, Movant's Motion is timely.

(b)     **Movant  Has the Largest Financial Interest In The Litigation**

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall presume that the most

adequate plaintiff is the "person or group of persons" that represent(s) the largest financial

interest in the relief sought by the action and who also meets the requirements of Rule 23.

During the Class Period, as evidenced by, among other things, the accompanying signed

certification, *see* White Decl. Exhibit B, Movant incurred a total loss of $1,163.45 on his

transactions in Vitacost shares.  *See* White Decl. Exhibit C.  In sum, Movant believes that he has

the largest financial interest in the litigation and they satisfy all of the PSLRA's prerequisites for

appointment as Lead Plaintiff.  15 U.S.C. § 78u-4 (a)(3)(B);  *see also Lax*, 1997 U.S. Dist.

LEXIS 11866 at *3 (members of moving group with the largest collective financial interest are

presumptive lead plaintiffs).

(c)     **Movant Otherwise Satisfies the Requirements of Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, the

Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of

Civil Procedure" in order to be the presumptively most adequate plaintiff.  15 U.S.C. §78u-

4(a)(3)(B).  To that end, Rule 23(a) provides that a party may serve as a class representative only

7

if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two—typicality and adequacy—are relevant in the lead plaintiff analysis.  Consequently, in deciding the motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification.  *Lax*, 1997 U.S. Dist. LEXIS 11866 at \*20; *Fischler v. Amsouth Bancorp.*, No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875 at \*7-8 (M.D. Fla. Feb. 6, 1997).

This interpretation is supported by the PSLRA, which provides that the most adequate plaintiff presumption may be rebutted only by proof that a plaintiff "will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see Mullen v. Treasure Chest Casino, LLC*, 186 F. 3d 620, 625 (5th Cir. 1999) (typicality requirement "is not demanding" and "[i]t focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent"), *cert. denied*, 528 U.S. 1159 (2000).  Here, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff.

### 1.    <u>Movant's Claims Are Typical of the Class Claims</u>

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise."  *In re Initial Public Offering Sec.*

*Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002); *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir., 1984); *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir., 1983). Typicality does not require that there be no factual differences between the class representatives and the class members, or that their claims be identical, because it is the generalized nature of the claims asserted that determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004).

Since the plaintiff seeks to prove that defendants "committed the same unlawful acts in the same methods against an entire class . . . all members of this class have identical claims, and therefore, the typicality requirement of Rule 23(a)(3) is satisfied." *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1984); *accord Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722-25 (11th Cir.), *cert. denied*, 485 U.S. 959 (1988); *see also Phillips v. Joint Legislative Comm. On Performance and Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981), *cert. denied*, 456 U.S. 971 (1982) (proposed class representatives' claims need not be identical to the claims of the class to be typical).

Here, Movant seeks to represent a class of purchasers of Vitacost common stock that have identical, non-competing and non-conflicting interests. Movant satisfies the typicality requirement because he (a) purchased Vitacost shares during the Class Period at prices alleged to have been artificially inflated by the false and misleading statements issued by Defendants, and (b) was damaged by Defendants' alleged violations of the federal securities laws. Thus, Movant's claims meet the typicality requirement, since all the claims arise out of the same course

of events, are based on the same legal theories and questions of liability are common to all proposed class members. *See Mullen*, 186 F.3d at 625.

### 2.   <u>Movant  Will Fairly and Adequately Protect the Interests of the Class</u>

Under Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to the existence of any conflicts between the interests of the proposed lead plaintiff and of the members of the class. *Fischler*, 1997 U.S. Dist. LEXIS 2875 at *7-8. The evaluation for adequacy of representation under Rule 23(a)(4) considers: (1) whether there are any conflicts between the interests of the movant and the members of the Class; (2) whether the movant is an adequate representative of the Class; (3) whether the interests of the movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests. *See* 15 U.S.C. §78u-4(a)(3)(B); *see also In re Initial Public Offering Sec. Litig.*, 214 F.R.D. at 121.

Here, Movant will more than adequately represent the interests of the class. First, Movant's interests are clearly aligned with the interests of the members of the proposed class and there is no antagonism or conflict whatsoever between his interests and the interests of the class members. Second, Movant shares common questions of law and fact with the members of the Class and their claims are typical of the other class members. As evidenced by the injury that Movant suffered by purchasing shares of Vitacost common stock at prices artificially inflated by the Company's materially false and misleading statements, Movant's interests are clearly aligned with the interests of the other members of the Class.

Third, Movant has already taken significant steps demonstrating their willingness to protect the interests of the Class: (a) Movant has executed a sworn certification detailing his

Class Period transactions in Vitacost common stock (*see* White Decl. Exhibit B); (b) Movant has expressed his willingness to serve as Lead Plaintiff in this action (*see* White Decl. Exhibit B); (c) Movant has timely moved the Court to be appointed as Lead Plaintiff; and (d) Movant has retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner in order to secure the best result for the Class.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. N.J. 2001).

Finally, Movant is a sophisticated and motivated investor who will adequately represent the interests of all Class members.  Thus, in addition to having the largest financial interests, Movant also satisfies the typicality and adequacy requirements of Rule 23.  Therefore, Movant satisfies all elements of the Exchange Act's prerequisites for appointment as Lead Plaintiff in this Action pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii).

## B.    The Court Should Approve Movant's Choice of Lead Counsel

Pursuant to the PSLRA, the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class.  15 U.S.C. §78u-4(a)(3)(B)(v).  Moreover, the Court should not disturb the Lead Plaintiff's choice of counsel unless "necessary to protect the interests of the plaintiff class."  *See* Statement of Managers—The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H14691-08, at H13700 (daily ed. Nov. 28, 1995); *see also In re Cavanaugh*, 306 F.3d 726, 732-733 (9th Cir. Cal. 2002) (The court should honor the lead plaintiff's selection of counsel except in extreme circumstances, where the selection of counsel appears "irrational" or is otherwise clearly against the interests of the class members).  Lead counsel is responsible for "formulating . . . and presenting positions on substantive and procedural issues during the litigation."  Manual for Complex Litigation (Fourth) § 10.221

(2005).  Lead Counsel would also be responsible for appearing before the court, conducting discovery, working with opposing counsel, and performing all aspects of the litigation.  *Id.*

In that regard, Movant has selected the law firm of Saxena White serve as Lead Counsel to pursue this litigation on their behalf and on behalf of the Class.  Saxena White  possess extensive experience litigating securities class actions and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  As demonstrated in their firm resume, Saxena White has been appointed as lead or co-lead counsel in landmark, precedent-setting class actions.  *See* White Decl., Exhibit D.

Saxena White is a well-established, nationwide firm with an extensive and impressive track record of prosecuting complex lawsuits, including securities class actions, shareholder derivative cases and merger & acquisition litigation.  With offices in Boca Raton, Florida, Boston, and Montana, Saxena White is well-positioned to handle complex shareholder litigation across the country.  In litigating securities class actions, shareholder derivative actions, breach of fiduciary duty class actions, merger & acquisition challenges and consumer class actions, Saxena White has repeatedly demonstrated an ability to provide plaintiffs with superior representation as lead counsel.  The firm's considerable efforts have led to groundbreaking settlements and judgments resulting in a collective recovery in the hundreds of millions of dollars.

Indeed, Saxena White is currently serving as co-lead counsel in one of the most significant derivative cases in the nation, *In re Bank of America Corp. Securities, Derivative and ERISA Litigation*, No. 09-MD-2058 (S.D.N.Y. Filed).  The firm was appointed as co-lead counsel from amongst numerous firms, with Judge Chin expressly noting that **Saxena White is "*experienced and qualified to serve as lead counsel.*"**  Similarly, Saxena White is also serving as co-lead counsel in another noteworthy derivative action*, Lee P. Rosky v. Todd S. Farha, et al.*,

No. 8:07-cv-1952-VMC-MAP (Consolidated) (M.D.Fla. Filed Nov. 7, 2007), involving claims against WellCare Health Care Plans, Inc.  In that action, Plaintiffs have been awarded preliminary approval of a partial settlement and have achieved multiple proposed corporate governance reforms that have provided significant benefits to the nominal defendant company and its shareholders.[3]

In addition, Saxena White has also been involved in groundbreaking litigations resulting in significant monetary benefits for shareholders totaling hundreds of millions of dollars.  Courts throughout the country have recognized that Saxena White has the experience and resources to successfully and efficiently prosecute complex class and derivative actions as lead and co-lead counsel.

For instance, the Honorable Judge Jed S. Rakoff, a noted Judge of the Southern District of New York, recognized that Saxena White had performed "excellent work" in this "important case" on behalf of Merrill Lynch and its shareholders worldwide.  *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litig.*, 4:07 Civ. 9633 (JSR) (S.D.N.Y. Jan. 20, 2009). Similarly, in approving the settlement in *Klien v. FPL Group, Inc.*, United States District Court Judge Alan S. Gold recognized that the action presented "complex and novel legal issues…[where] the likelihood of success for Plaintiffs at the outset of the case was very low." In approving the exceptional settlement that was eventually reached after years of hard fought litigation, Judge Gold stated:

> Plaintiffs' counsel, a highly experienced group of lawyers with national reputations in large securities class actions, recovered an unprecedented amount of money for shareholders as a result of this settlement - $22.25 million in

---

[3] *See* Order Preliminarily Approving Partial Settlement And Providing For Notice, *Rosky v. Farha, et al.*, No. 8:07-cv-01952 (No. 164).

addition to sweeping corporate governance changes which FPL Group has agreed to implement.[4]

In addition, the Honorable William S. Duffey, Jr. of the Northern District of Georgia, noted that Saxena White's lawyers act with "dignity and respect," produce "well-done pleadings," are "thorough [and] insightful," and "fight[] as hard but as honestly and professionally as they can for the interest of their clients." *In re Freidman's Sec. Litig.*, 1:03-CV-3475-WSD (N.D. Ga. Feb. 5, 2009).

In terms of benefits conferred to Saxena White's clients, the firm has achieved resounding successes on behalf of shareholders nationwide. For example, the Western District of Texas, El Paso Division, granted final approval of a $4,500,000 securities fraud class action settlement in which Saxena White served as sole Class Counsel. *See In re Helen of Troy Limited Securities Litigation*, No. EP-05-CA-431-H (W.D. Tex. June 19, 2008).

Similarly, acting as sole Class Counsel in a securities fraud action against SIRVA, Inc., Saxena White gained final approval from the Northern District of Illinois of a $53.3 million settlement for shareholders. *See Central Laborers' Pension Fund v. SIRVA, Inc., et. al.*, No. 04 CV-07644 (N.D. Ill. November 2, 2007). In addition to the monetary component of the settlement, SIRVA made significant reforms to its internal controls policies, including discarding the SIRVA Board of Directors plurality standard for director elections, and strengthening requirements regarding director attendance at shareholder meetings. The development and implementation of these reforms (which the company recognized was a main result of the litigation) was truly a testament to the negotiating and litigation acumen that Saxena White demonstrated during the course of this complex action.

---

[4] *Klien v. FPL Group, Inc.*, Case No. 02-20170-civ-Gold (S.D. Fla. Nov. 23, 2004) (Order and Final Judgment of Dismissal at 9).

Accordingly, Saxena White has established a consistent and remarkable dedication to high-level shareholder representation and possess both the experience and resources to prosecute this action effectively and efficiently.

**V.    CONCLUSION**

For the foregoing reasons, Movant respectfully requests that this Court: (i) appoint Movant as Lead Plaintiff in the Action and (ii) approve Movant's selection of Saxena White as Lead Counsel for the Class.

Dated: July 23, 2010

**SAXENA WHITE P.A.**

By: */s/ Joseph E. White, III*

Maya Saxena (Fla. Bar No. 0095494)
msaxena@saxenawhite.com
Joseph E. White III (Fla. Bar No. 0621064)
jwhite@saxenawhite.com
Christopher S. Jones (Fla. Bar No. 00306230)
cjones@saxenawhite.com
Lester R. Hooker (Fla. Bar No. 0032242)
lhooker@saxenawhite.com
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3082

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 23rd day of July, 2010, I presented the foregoing to the

Clerk of the Court for filing and uploading to the CM/ECF system.


*/s/Joseph E. White, III*
Joseph E. White, III