UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:10-Civ-80644-RYSKAMP

| | |
|---|---|
| ANDREA MIYAHIRA, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| VITACOST.COM, INC., IRA P. KERKER, RICHARD P. SMITH, STEWART GITLER, ALLEN S. JOSEPHS, DAVID N. ILFELD, LAWRENCE A. PABST, ERAN EZRA and ROBERT G. TRAPP, | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OF LAW IN OPPOSITION TO THE
COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFFS**

Proposed lead plaintiffs the Cason Family Trust and the Cason Family LTD Partnership (collectively, the "Cason Family Investments") respectfully submit this memorandum of law in opposition to the competing motions for appointment as lead plaintiff filed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

**I.     PRELIMINARY STATEMENT**

Presently pending before this Court are lead plaintiff motions filed by the following Vitacost.com, Inc. ("Vitacost.com" or the "Company") investors: (1) the Cason Family Investments; (2) the Montgomery County Employees' Retirement Fund ("Montgomery County"); and (3) Craig Laub. Of these movants, the Cason Family Investments are presumptively the "most adequate

plaintiffs" under the standards established by the PSLRA, and should be appointed Lead Plaintiffs in this action.

While Montgomery County reports a loss of $9,043, purportedly higher than the Cason Family Investments' loss of $7,973, a closer examination reveals that this loss figure is overstated by more than 25%, or $1,925 (leaving it with a claimed loss of just $7,118), because its counsel failed to offset the impact of fraud-related *gains* realized from certain transactions occurring during the Class Period. After properly accounting for these gains, and performing an appropriate apples-to-apples loss comparisons under §10(b) of the Securities Exchange Act (or §11 of the Securities Act), the Court will find that the Cason Family Investments have the largest financial interest among the competing movants.

In addition to this greater financial interest, the Cason Family Investments easily satisfy the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. Thus, the Cason Family Investments are entitled to the PSLRA's "most adequate plaintiff" presumption.

With the Cason Family Investments qualifying as the presumptive lead plaintiff, the competing movants may rebut that presumption only with *proof* that the Cason Family Investments are unable to adequately represent the class. This they cannot do. To be sure, the competing movants cannot legitimately contend that the Cason Family Investments will not fairly and adequately protect the interests of the class or that they are subject to unique defenses that render them incapable of adequately representing that class.

Accordingly, pursuant to the standards established by the PSLRA, the Cason Family Investments should be appointed Lead Plaintiffs in this action, and their selected counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Dyer & Berens LLP ("Dyer & Berens"), should be approved as Co-Lead Counsel.

**II.     ARGUMENT**

    **A.     The Cason Family Investments Should Be Appointed Lead Plaintiffs**

"The manifest intent of the [PSLRA] is to determine the plaintiff most capable of pursuing the action and representing the interest of the class." *Fischler v. AmSouth Bancorporation*, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997).[1]  This is accomplished through "a two-step process" in which "the court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class has rebutted the presumption." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

        **1.     The Cason Family Investments are the Presumptive Lead Plaintiffs under the PSLRA**

The PSLRA sets up a rebuttable presumption that the plaintiff with the largest stake in the controversy will be the lead plaintiff provided it also satisfies the typicality and adequacy requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *see also Durgin v. Tousa, Inc.*, 2008 WL 2761301, at *1 (S.D. Fla. July 15, 2008).  Importantly, "the threshold determination of whether the movant with the largest financial losses satisfies the typicality and adequacy requirements should be a product of the court's independent judgment." *In re Cendant*, 264 F.3d at 263.

            **a.     The Cason Family Investments Have a Larger Financial Interest Than the Competing Movants**

"The PSLRA does not define 'largest financial interest in the relief sought by the class,' and the Eleventh Circuit has not addressed this issue." *Plymouth County Ret. Sys. v. Carter's, Inc.*, 2009 WL 692141, at *2 (N.D. Ga. Mar. 13, 2009).  However, courts recognize that the actual loss is

---

[1]     Unless otherwise noted, all emphasis is added and citations omitted.

3

determinative in comparing the competing movants' financial interests in the litigation.[2]  *See In re Bally Total Fitness Secs. Litig.,* 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball."); *see also Newman v. Eagle Bldg. Tech.,* 209 F.R.D. 499, 502 (S.D. Fla. 2002) (appointing the movant with the largest claimed loss); *Sherleigh Assoc. LLC v. Windmere-Durable Holdings, Inc.*, 184 F.R.D. 688, 692 (S.D. Fla. 1999) (same).

Indeed, both Montgomery County and Mr. Laub emphasize their loss numbers in support of their contentions that they possess the largest financial interest.  *See* Dkt. No. 13, Montgomery County Mem. at 9; Dkt/ No. 14, Laub Mem. at 7.  Nonetheless, the Cason Family Investments actually have the largest loss and, thus, the largest financial interest among the competing movants, regardless of how the losses are calculated.

This action alleges violations of the securities laws under both §10(b) and §11.  Under such circumstances, lead plaintiff movants customarily provide loss calculations using a §10(b) damage formula, like the Cason Family Investments and Mr. Laub here, because §10(b) damages usually exceed the damages recoverable under §11.  Also, because the PSLRA is written in terms of financial interest in the relief sought (and because an investor may have only one recovery), the appropriate financial interest comparison requires use of the damage formula yielding the larger loss.

---

[2]   In determining which movant has the largest financial interest, some courts consider: (1) the number of shares purchased during the class period; (2) the amount of the investment; and (3) the alleged loss.  *See Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *3 (S.D. Fla. Apr. 18, 2008). Factors (1) and (2) are of little assistance here because a large number of Montgomery County's purchases and expenditures resulted in gains that must be offset against its losses.

Here, Montgomery County's counsel initially calculated its losses using a §11 damage formula, thereby preventing an apples-to-apples comparison among the competing movants. More importantly, Montgomery County's damage analysis overstates its recoverable losses by more than 25%. Montgomery County purports to use the last-in-first-out ("LIFO") method to calculate its losses. *See* Dkt. No. 12, Montgomery County loss chart. "In the context of a securities class action, FIFO [first-in, first out] and LIFO refer to methods used for matching purchases and sales of stock during the class period in order to measure a class member's damages." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006). Under LIFO, "a class member's damages are calculated by matching the class member's last purchases during the class period ***with the first sales made during the class period***." *Ellenburg III v. JA Solar Holdings Co.*, 262 F.R.D. 262, 266 n.4 (S.D.N.Y. Apr. 17, 2009). "***The main advantage of LIFO is that . . . it takes into account gains that might have accrued to plaintiffs during the class period due the inflation of the stock price . . . .***" *City of Monroe Employees' Retirement System v. Hartford Financial*, 2010 WL 2816797, at *4 (S.D.N.Y. July 15, 2010).

Although Montgomery County claims that its $9,043 in "[l]osses [are] computed using the LIFO Method," its counsel actually applied a novel method by which it first ***eliminates*** Class Period gains -- the very gains LIFO seeks to count. *See* Dkt. No. 12, Montgomery County Certification & loss chart. While Montgomery County apparently listed all of its transactions in Vitacost.com stock on its Certification, its counsel ***omitted*** transactions relating to 1,885 of these shares from its loss calculations. *Id.* Counsel did this to avoid including nearly $2,000 in ***gains*** on those Class Period transactions in order to give the appearance of a larger loss. This is improper. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) (explaining that the "utilization of LIFO reflects

5

offsetting 'gains' that were attained through the sale of stock during the class period…. Subtracting the sales from the purchases, [the movant] arrives at its base class period losses.").[3]

The reasoning behind LIFO's offset of gains against losses in a movant's financial interest calculation is readily apparent under the particular facts of this case. Here, the Class Period commences on or about September 24, 2009 with the Company's IPO, and ends on April 20, 2010 with the disclosure of the fraud causing a precipitous stock price drop. *See* Dkt. No. 1, Class Action Complaint ("Complaint") at ¶¶1-2, 68-69. According to the Complaint, during the Class Period, on February 18, 2010, Defendants made material false and misleading statements to the market, including that the Company was "on track" to deliver strong 2010 results and that it expected 1Q10 revenues of $58 to $60 million. *See id.* at ¶¶ 63, 67. This February 18, 2010 misrepresentation infused Vitacost.com's stock price with additional artificial inflation. *See id.*; *see also* Wilens Opp. Decl., Exh. C (Vitacost.com stock price chart).

Montgomery County took advantage of this stock price inflation by selling certain shares on March 10 and 11, 2010, and thereby realizing a fraud-related gain. *See* Dkt. No. 12, Montgomery County loss chart. However, in its loss calculations submitted to the Court, Montgomery County excludes all of those March 10 and 11, 2010 sales as well as a corresponding number of purchases

---

[3] Indeed, courts frown upon such efforts by "prospective lead plaintiffs [to] manipulate their analysis in order to inflate their measure of damages." *See Bhojwani v. Pistiolis*, 2007 WL 2197836, at *6 (S.D.N.Y. July 31, 2007). Tellingly, in other cases, Montgomery County's counsel appropriately offset its clients' class period gains against its losses. *See* Wilens Opp. Decl., Exhs. A & B (lead plaintiff filings in *In re Superior Offshore Int'l, Inc. Sec. Litig.*, No. 08-cv-687 (S.D. Tex.)). References to the "Wilens Opp. Decl. Exh. ___" or the "Wilens Opposition Declaration" are to the exhibits attached to the accompanying Declaration of Douglas Wilens in Opposition to the Compating Motions for Appointment of Lead Plaintiffs, dated August 9, 2010, and submitted herewith.

6

made between December 23, 2009 and January 11, 2010. *Id.* By doing this, counsel was able to exclude a $1,925 gain for Montgomery County's loss figures.

Accordingly, consistent with LIFO's clear goals, Montgomery County's $1,925 Class Period fraud-related gain must be offset against its claimed loss. Put differently, it must include all Class Period purchases and sales in its loss calculation. In the context of a §10(b) calculation, the following chart demonstrates that Montgomery County's actual loss is less than that experienced by the Cason Family Investments:

| **Movant** | **Section 10(b) losses[4]** |
|---|---|
| Cason Family Investments | **$7,973.23** |
| Montgomery County | $7,406.97 |
| Craig Laub | $1,163.45 |

Again, under the PSLRA, the financial interest in the overall litigation is what controls the "most adequate plaintiff" presumption. Because investors may only recover once for their losses, and because §10(b) damages exceed §11 damages for each movant, it is this analysis which matters. Indeed, the following chart demonstrates that the recoverable loss for each movant is greatest under §10(b). It also shows that Montgomery County's loss is less than that of the Cason Family Investments even if a §11 analysis is used as the basis for comparison:

---

[4] Under §10(b), shares held after the end of the Class Period are valued at the mean trading price for the 90-day period following the end of the Class Period, or $9.34 per share. 15 U.S.C. § 78u-4(e)(1). For transactions occurring within that 90-day period, shares are valued at either the sale price or the mean trading price of the period between the end of the Class Period and the sales date, whichever is higher, or $9.54 per share. 15 U.S.C. §78u-4(e)(2). A correct calculation of Montgomery County's losses under §10(b) is set forth in Exhibit D to the Wilens Opposition Declaration.

| Movant | Section 11 losses[5] |
|---|---|
| **Cason Family Investments** | **$7,230.00** |
| Montgomery County | $7,118.77 |
| Craig Laub | $1,026.72 |

Consequently, once Montgomery County's gains are offset against its losses, there can be no dispute that the Cason Family Investments have the largest financial interest in the relief sought by the class in an apples-to-apples comparison under *either* §10(b) or §11.

### b.   The Cason Family Investments Otherwise Satisfy Rule 23

When considering whether a lead plaintiff movant otherwise satisfies Rule 23, "only two [requirements] – typicality and adequacy – are relevant . . . ." *Miller*, 2008 WL 2465286, at *6. The Court's inquiry on these issues "need not be extensive" and should focus on "traditional Rule 23 principles." *In re Cendant*, 264 F.3d at 264-65. In their initial motion, the Cason Family Investments demonstrated that they satisfy the prerequisites of Rule 23, as required by the PSLRA.

More specifically, the Cason Family Investments satisfy Rule 23(a)(3)'s typicality requirement because their claims, like the claims of every other class member, they: (1) purchased Vitacost.com common stock pursuant to the IPO and during the Class Period; (2) were adversely affected by the defendants' false and misleading statements; and (3) suffered damages thereby. *See Miller*, 2008 WL 2465286, at *6; *see also Belmont Holdings Corp. v. Suntrust Banks, Inc.*, 2009 WL

---

[5]   Under §11, shares held after the end of the Class Period are valued at the price on the date the action was filed on May 24, 2010, or $9.59 per share. 15 U.S.C. §77k(e). For transactions occurring after the end of the Class Period, shares are valued at the sale price, or $8.97 per share. *Id.* A correct calculation of Montgomery County's losses under §11 is set forth in Exhibit E to the Wilens Opposition Declaration.

3188695, at *2 (N.D. Ga. Sept. 29, 2009) ("[T]ypicality exists when a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff."). Additionally, the Cason Family Investments satisfy Rule 23(a)(4)'s adequacy requirement because their interests do not conflict with the interests of any other class member, and they have retained experienced counsel to vigorously prosecute this action on behalf of the class. *See Miller*, 2008 WL 2465286, at *6 ("The adequacy requirement is satisfied where, as here: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has sufficient interest in the outcome of the case to ensure vigorous advocacy." ).

Accordingly, because they have the largest financial interest among the competing movants and otherwise satisfy Rule 23, the Cason Family Investments are the presumptive lead plaintiffs in this action.

### 2. The Competing Movants Cannot Rebut the Cason Family Investments' Presumptive Lead Plaintiff Status

To overcome the rebuttable presumption in favor of the Cason Family Investments' lead plaintiff appointment, ***proof*** is required to show that they will not fairly and adequately protect the interests of the class or that they are subject to unique defenses that render them incapable of adequately representing the class. *See Newman,* 209 F.R.D. at 502. However, "[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Belmont Holdings Corp*, 2009 WL 3188695, at *2; *see also In re Cendant*, 264 F.3d at 268 ("once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job.").

9

Here, no competing movants can offer proof that the Cason Family Investments fail to satisfy the typicality or adequacy requirements of Rule 23.

Thus, because the competing movants can present no countervailing evidence that the Cason Family Investments will not fairly and adequately represent the Class, this Court should grant the Cason Family Investments' lead plaintiff motion.

### B. The Court Should Approve the Cason Family Investments' Choice of Counsel

Pursuant to the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v). In this regard, the Cason Family Investments have selected Robbins Geller and Dyer & Berens to serve as Co-Lead Counsel. The Cason Family Investments do not expect the competing movants to challenge the qualifications of these firms to vigorously prosecute this action.

### III. CONCLUSION

For all the foregoing reasons, the Cason Family Investments (1) oppose the competing motions submitted by Craig Laub and Montgomery County seeking appointment as lead plaintiffs and approval of their respective selections as lead counsel; and (2) request that the Court appoint the Cason Family Investments as Lead Plaintiffs and approve their selection of Robbins Geller Rudman & Dowd LLP and Dyer & Berens LLP as Co-Lead Counsel.

DATED:  August 9, 2010                    ROBBINS GELLER RUDMAN
                                            & DOWD LLP


                                              s/ Douglas Wilens
                                          DOUGLAS WILENS

                                          PAUL J. GELLER (FL Bar No. 984795)
                                          DOUGLAS WILENS (FL Bar No. 79987)
                                          SABRINA E. TIRABASSI (FL Bar No. 25521)
                                          120 E. Palmetto Park Road, Suite 500
                                          Boca Raton, FL  33432-4809
                                          Telephone:  561/750-3000
                                          561/750-3364 (fax)
                                          pgeller@rgrdlaw.com
                                          dwilens@rgrdlaw.com
                                          stirabassi@rgrdlaw.com

                                          DYER & BERENS LLP
                                          JEFFREY A. BERENS
                                          303 East 17th Avenue, Suite 300
                                          Denver, CO  80203
                                          Telephone:  303/861-1764
                                          303/395-0393 (fax)
                                          jeff@dyerberens.com

                                          [Proposed] Co-Lead Counsel for Plaintiff


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 9, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

                                              s/ Douglas Wilens
                                          DOUGLAS WILENS