UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:10-Civ-80644-RYSKAMP

| | |
|---|---|
| ANDREA MIYAHIRA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> VITACOST.COM, INC., IRA P. KERKER, RICHARD P. SMITH, STEWART GITLER, ALLEN S. JOSEPHS, DAVID N. ILFELD, LAWRENCE A. PABST, ERAN EZRA and ROBERT G. TRAPP, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE MOTION OF THE CASON FAMILY TRUST AND THE CASON
FAMILY LTD PARTNERSHIP FOR APPOINTMENT AS LEAD PLAINTIFFS
AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL**

Proposed lead plaintiffs the Cason Family Trust and the Cason Family LTD Partnership (collectively, the "Cason Family Investments") respectfully submit this reply memorandum of law in further support of their motion for appointment as lead plaintiffs filed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

**I.   PRELIMINARY STATEMENT**

The primary issue before the Court is whether the Cason Family Investments or the Montgomery County Employees' Retirement Fund ("Montgomery County") has the "largest financial interest" in this action against Vitacost.com, Inc. ("Vitacost.com") and certain of its

officers and directors, as required by the PSLRA.[1] Montgomery County asserts that it has the "largest financial interest" in this action, claiming a loss of $9,043 under §11 of the Securities Act, as compared to the loss of $7,973 under §10(b) of the Securities Exchange Act reported by the Cason Family Investments. In fact, in an apples-to-apples comparison under both §10(b) and §11, Montgomery County's financial interest is less.

Indeed, regardless of which statute is applied, Montgomery County has not accounted for – in fact, its counsel has completely ignored – the significant *gains* that it realized from sales of Vitacost.com stock *during the Class Period* at artificially inflated prices. When the proceeds of those transactions are properly included in Montgomery County's loss calculations, its financial interest decreases considerably. To be sure, Montgomery County incurred a loss of $7,407 under §10(b) and a loss of $7,119 under §11, either of which are lower than the reported losses of the Cason Family Investments under those same statutes. Accordingly, the Cason Family Investments possess the "largest financial interest" in this action.

Moreover, the Cason Family Investments have otherwise satisfied the requirements of Rule 23, and Montgomery County can present no rebuttal evidence demonstrating that the Cason Family Investments will not fairly or adequately represent the class of Vitacost.com investors or are subject to unique defenses. The fact that Montgomery County is an institutional investor is not enough to overcome the presumption favoring the Cason Family Investments.

Consequently, pursuant to the standards established by the PSLRA, the Cason Family Investments should be appointed Lead Plaintiffs in this action and their selected counsel, Robbins

---

[1] A third movant, Craig Laub, has abandoned his lead plaintiff motion by not filing an opposition to the other competing motions.

Geller Rudman & Dowd LLP ("Robbins Geller") and Dyer & Berens LLP ("Dyer & Berens") should be approved as Co-Lead Counsel.

## II.  ARGUMENT

### A. The Cason Family Investments Have a Larger Financial Interest in this Action than Montgomery County

In determining the "largest financial interest" under the PSLRA, the parties agree that the approximate loss incurred is the determinative factor to be considered by this Court. *See In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007) (noting that most courts consider "the approximate loss a plaintiff suffered during the class period, to be most influential in identifying the plaintiff with the largest financial interest.").[2] Under such circumstances, courts evaluate a movant's approximate loss in the context of a "net loss," a process which considers all class period transactions and arrives at a loss figure only after offsetting any applicable gains. *See In re McDermott Int'l, Inc. Sec. Litig.*, 2009 WL 579502, at *2 (S.D.N.Y. Mar. 6, 2009). As previously shown, Montgomery County's loss calculations ignore the concept of a "net loss," thereby allowing counsel to manipulate the numbers to give the appearance of a larger financial interest in the litigation.

While Montgomery County claims to use LIFO for its loss calculations,[3] its counsel did not actually do so, instead applying an unconventional methodology designed to exclude fraud-related gains arising from certain sales of Vitacost.com stock. More specifically, during the Class Period, Montgomery County sold 1,885 shares shortly after a February 18, 2010 false statement, taking

---

[2]   Unless otherwise noted all emphasis is added and citations are omitted.

[3]   *Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262, 266 n.4 (S.D.N.Y. Apr. 17, 2009) (Under LIFO, "a class member's damages are calculated by matching the class member's last purchases during the class period with the first sales made during the class period.").

3

advantage of additional artificial inflation in the stock price. Properly considering all of Montgomery County's Class Period transactions, these Class Period sales yielded a gain of $1,925 which must be offset against the losses arising from the remaining transactions. *See Ellenburg*, 262 F.R.D. at 266 ("The most accurate and realistic way to account for the gain realized from the August 20 sale is to subtract the purchase price of the shares sold from the proceeds of their sale, and to offset the resulting gain against Bill Chen's class period losses."); Wilens Opp. Decl., Exh. D, E.[4]

Instead of offsetting these fraud-related gains, though, counsel for Montgomery County chose to ignore them. It did so by first excluding the Class Period sales of 1,885 shares made on March 10-11, 2010. Once these shares were eliminated, it then purported to use LIFO to determine which corresponding Class Period purchases should also be jettisoned, settling on the "last" 1,885 shares purchased on eight days between December 23, 2009 and January 11, 2010. This curious approach, however, thwarted "[t]he main advantage of LIFO [which] is that . . . it takes into account <u>gains</u> that might have accrued to plaintiffs during the class period due the inflation of the stock price . . . ." *City of Monroe Employees' Retirement System v. Hartford Financial*, 2010 WL 2816797, at *4 (S.D.N.Y. July 15, 2010).[5]

---

[4] Just last week, on August 9, 2010, counsel for Montgomery County filed a lead plaintiff motion on behalf of a group of individuals in a case captioned *Bach v. Amedisys, Inc.*, Case No. 10-cv-395-BAJ-CN, which is pending in the Middle District of Louisiana. In that filing, one of the group members, Jay Dragon, appropriately offset gains attributable to class period sales against losses when calculating his loss figure. This case, along with the example provided in the prior brief (Wilens Opp. Decl., Exhs. A, B), demonstrate that counsel know how to properly calculate losses under similar circumstances. A copy of the loss chart submitted in the *Bach* case is attached as Exhibit 1 to the Reply Declaration of Douglas Wilens in Further Support of the Motion of the Cason Family Trust and the Cason Family LTD Partnership for Appointment as Lead Plaintiffs and Approval of Selection of Co-Lead Counsel ("Wilens Reply Decl.") and is submitted herewith.

[5] In reality, the application of either LIFO or FIFO makes no difference in this case because, due to the IPO, no movant had any pre-Class Period holdings, and a proper matching of all Class Period transactions would yield the same loss under either method. *Ellenburg*, 262 F.R.D. at 267

Accordingly, after properly including Montgomery County's $1,925 fraud-related gains, an apples-to-apples comparison under both §10(b) and §11 establishes that the Cason Family Investments have a larger net loss than Montgomery County:

| Movant | Section 10(b) losses[6] | Section 11 losses |
|---|---|---|
| Cason Family Investments | **$7,973.23** | **$7,230.00** |
| Montgomery County | $7,406.97 | $7,118.77 |

Perhaps recognizing the inherent problems with its loss calculations, Montgomery County alternatively contends that the Court should consider the "net shares" approach, which takes into account the number of net shares held after the close of the Class Period. Movants who lack the largest losses often "contend that [courts] should also examine factors such as the number of shares purchased, the number of net shares purchased, and the total net funds expended." *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *5 (N.D. Ill. Mar. 15, 2005).

---

("this case does not present a choice between the LIFO and FIFO accounting methods, because simply offsetting the $5,500 profit from the August 20 sale against Bill Chen's class period losses accounts for any gain accruing to Bill Chen from the alleged inflation of share prices at the time of that sale"). In any event, the application of FIFO using Montgomery County's flawed method of eliminating Class Period sales of 1,885 shares and the "first" 1,885 shares purchased yields a loss of $6,424.02 under §10(b). *See* Wilens Reply Decl., Exh. 2; *Ellenburg*, 262 F.R.D. at 265 (recognizing that some courts apply LIFO, while others apply FIFO).

[6] In its opposition, Montgomery County attempted to provide its own apples-to-apples comparison under §10(b). In so doing, in addition to ignoring its Class Period gains, Montgomery County improperly accounted for its post-Class Period sales. Pursuant to the PSLRA, post-Class Period sales shares are valued at either the sale price or the mean trading price of the period between the end of the Class Period and the sales date, whichever is higher. 15 U.S.C. §78u-4(e)(2). Although Montgomery County sold shares after the Class Period for $8.97 per share, the mean trading price of $9.54 per share (the closing price for shares for the 1 day between the end of the Class Period and the sale date) is greater, and should be used in calculating the §10(b) loss. Wilens Opp. Decl., Exh. D.

As the *Bally* court noted in rejecting a similar attempt to downplay the significance of losses, however, "[i]t is not self-evident, though, what weight these factors should be given in relation to the amount of loss, or even why we should consider them at all, and [movant] provides no explanation." *Id.* Rather, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball." *Id.*; *see also Weiss v. Friedman, Billings, Ramsey Group, Inc.*, 2006 WL 197036, at *4 (S.D.N.Y. Jan. 25, 2006) (court rejected movant that "urge[d] the Court to hold that the $121,231 difference in loss between itself and [another movant was] negligible, and [to] take note of the remaining *Lax* [*v. First Merchs. Acceptance Corp.*, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)], factors."). Indeed, the "net shares" approach now advanced by Montgomery County, like its other faulty methodology, ignores Class Period gains and therefore, under the facts of this case, is not helpful in determining the movants' "financial interests."[7]

---

[7] Further undercutting the "net shares" approach is, according to Montgomery County, the assumption that "the 'fraud premium' (*i.e.*, the amount that public misrepresentations falsely inflated the stock price) was uniform throughout the Class Period." Montgomery County Opp. Mem. at 7. As discussed above, the "fraud premium" in this case was not "uniform," as the February 18, 2010 misrepresentation caused a spike in Vitacost.com's stock price from which investors, like Montgomery County, realized a fraud-related gain. *See* Wilens Opp. Decl., Exh. C; *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (the net shares approach "gets into trouble . . . if the amount of the 'fraud premium' varied over the course of the class period."); *In re Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *11 (W.D. Wash. July 13, 2005) ("Where the fraud premium fluctuates, neither the gross nor the net number of shares purchased is a good indicator of financial loss, since the loss depends on how large the fraud premium was at the time of the purchase.").

### B.   Montgomery County Cannot Rebut the Cason Family Investments Showing of Typicality and Adequacy

In their initial motion, the Cason Family Investments demonstrated that they satisfy the prerequisites of Rule 23, as required by the PSLRA. More specifically, they satisfy Rule 23(a)(3)'s typicality requirement because their claims, like the claims of every other class member, are premised on defendants' dissemination of false and misleading public statements in violation of §10(b) and §11. *See Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *6 (S.D. Fla. Apr. 18, 2008) ("Capital Max satisfies the typicality requirement because its claims share the same essential characteristics as the class at large."). Additionally, the Cason Family Investments satisfy Rule 23(a)(4)'s adequacy requirement because their interests do not conflict with the interests of any other class member, and they have retained experienced counsel to vigorously prosecute this action on behalf of the class. *Id.* Thus, because they have the largest financial interest between the competing movants and otherwise satisfy Rule 23, the Cason Family Investments are the presumptive lead plaintiffs in this action.

In its opposition, Montgomery County does not attempt to rebut this presumption, offering no proof that the Cason Family Investments will not fairly and adequately protect the interests of the class or that they are subject to unique defenses that render them incapable of adequately representing the class. *See Newman v. Eagle Bldg. Tech.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002). On reply, however, Montgomery County may argue that, given the relatively small difference in losses, it should be appointed lead plaintiff because, as an institutional investor, it would make a better lead plaintiff than the Cason Family Investments. This type of comparative analysis is not permitted by the PSLRA.

In fact, "[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some

other plaintiff would do a better job." *Belmont Holdings Corp. v. Suntrust Banks, Inc.*, 2009 WL 3188695, at *2 (N.D. Ga. Sept. 29, 2009); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job."). And courts recognize that, "[a]lthough the PSLRA was enacted to encourage institutional investors to take a more active role in securities litigation," "there is no *per se* rule requiring that an institutional investor be appointed lead plaintiff in lieu of an individual who has a larger stake in the litigation." *See*, *e.g.*, *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 670 (C.D. Cal. 2005); *Kornfeld v. Opteum Inc.*, Case No. 07-14278, slip op. at 16 (S.D. Fla. Sept. 29, 2008) (Graham, J.). ("[T]here is nothing in the PSLRA that states that an institutional investor must be chosen over other investors").[8]

Thus, Montgomery County cannot rebut the lead plaintiff presumption favoring the Cason Family Investments based on its status as an institutional investor. In the absence of any proof that the Cason Family Investments cannot fairly or adequately represent the Class in this case, this Court should grant the Cason Family Investments' lead plaintiff motion.

**C. The Court Should Approve the Cason Family Investments' Choice of Counsel**

Montgomery County does not challenge the qualifications of Robbins Geller and Dyer & Berens to vigorously prosecute this action as Co-Lead Counsel. Accordingly, the Court should

---

[8] Wilens Reply Decl., Exh. 3. Notably, in the *Kornfield* case, Montgomery County's counsel was appointed lead counsel for the individual investor, and argued against the appointment of the institutional investor.

approve the Cason Family Investments' selection of these firms.  15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v).

### III.   CONCLUSION

For all the foregoing reasons, the Cason Family Investments request that the Court: (1) appoint the Cason Family Investments as Lead Plaintiffs; (2) approve their selection of Robbins Geller and Dyer & Berens as Co-Lead Counsel; and (3) grant any other and further relief that the Court deems just and proper.

DATED:  August 19, 2010                     ROBBINS GELLER RUDMAN
                                              & DOWD LLP


                                                 s/ Douglas Wilens
                                              DOUGLAS WILENS

                                            PAUL J. GELLER (FL Bar No. 984795)
                                            DOUGLAS WILENS (FL Bar No. 79987)
                                            SABRINA E. TIRABASSI (FL Bar No. 25521)
                                            120 E. Palmetto Park Road, Suite 500
                                            Boca Raton, FL  33432-4809
                                            Telephone:  561/750-3000
                                            561/750-3364 (fax)
                                            pgeller@rgrdlaw.com
                                            dwilens@rgrdlaw.com
                                            stirabassi@rgrdlaw.com

                                            DYER & BERENS LLP
                                            JEFFREY A. BERENS
                                            303 East 17th Avenue, Suite 300
                                            Denver, CO  80203
                                            Telephone:  303/861-1764
                                            303/395-0393 (fax)
                                            jeff@dyerberens.com

                                            [Proposed] Co-Lead Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on August 19, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

                                          s/ Douglas Wilens
                                          DOUGLAS WILENS