**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:10-CIV-80644-RYSKAMP

|  |  |
|---|---|
| ANDREA MIYAHIRA, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| VITACOST.COM, INC., IRA P. KERKER, RICHARD P. SMITH, STEWART GITLER, ALLEN S. JOSEPHS, DAVID N. ILFELD, LAWRENCE A. PABST, ERAN EZRA, and ROBERT G. TRAPP, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF
MONTGOMERY COUNTY EMPLOYEES' RETIREMENT FUND TO BE APPOINTED
LEAD PLAINTIFF AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF
COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS**

Montgomery County Employees' Retirement Fund ("Montgomery County") respectfully submits this reply brief in further support of its motion to be appointed lead plaintiff and for approval of its selected co-lead counsel in the above-captioned action. Montgomery County is the presumptive lead plaintiff in this action, with losses exceeding $10,000.[1] The second largest (and only remaining[2]) competing movant, Cason Family, has losses of less than $8,000.

## ARGUMENT

### I.   MONTGOMERY COUNTY SHOULD BE APPOINTED AS LEAD PLAINTIFF

#### A.   Montgomery County is the Presumptive Lead Plaintiff

Under all accepted methods for determining financial interest at this stage of the litigation, Montgomery County has the "largest financial interest" and is therefore the presumptive lead plaintiff. *See* 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I); 77z-1(a)(3)(B)(iii)(I). The PSLRA "does not define the term 'largest financial interest' and does not provide any explicit guidance about how to calculate that interest." *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332 (S.D.N.Y. 2005). However, the movants and the court are appropriately guided by the application of the *Lax/Olsten* factors:

> A number of courts have applied a four-factor test drawn from *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286 (E.D.N.Y. [2000]), and *Lax v. First Merchs. Acceptance Corp.*, No. 97-C-9715, 1997 WL 461036, at *5 (N.D.Ill. Aug.11, 1997), which looks at (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net

---

[1] In its opening motion, Montgomery County set forth losses of $9,043.66. These losses were calculated by applying the damages calculation methodologies established by §11 of the Securities Act of 1933 (as opposed to those of §10(b) of the Securities Exchange Act of 1934) to shares that have not yet been sold. Cason Family's losses under the §11 paradigm are $7,230; thus, under §11, Montgomery County has the largest losses and is the presumptive lead plaintiff. Cason Family disputes this §11 loss amount on an unsupported theory of gain offset, Cason Opp. at 7-8; however, as discussed *infra*, offsetting gains is inappropriate for the purposes of §10(b) loss approximation, and the same principles apply to Montgomery County's §11 loss calculations. Cason Family's arguments regarding §11 loss comparisons are therefore unavailing. Cason Family advocates that the §10(b) losses of the movants be compared instead. Cason Opp. at 4. In order to facilitate an apples-to-apples comparison, Montgomery County applies §10(b) provisions to all loss calculations in this reply. Under any methodology, Montgomery County has the largest losses.

[2] Craig Laub filed an opening motion for lead plaintiff, but his losses, at $1,163.45, were far smaller than the other movants', and he has not filed a motion opposing the appointment of either remaining movant.

funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs.

*Plymouth County Ret. Sys. v. Carter's Inc.*, 1:08-CV-2940-JOF, Slip Op., 2009 WL 692141, at *2 (N.D. Ga. March 13, 2009) (citations omitted). *See also* Cason Opp. at n. 2 (acknowledging that courts consider factors including: 1) the number of shares purchased during the class period; and 2) the amount of the investment).

### 1. There is No Dispute That Montgomery County is the Presumptive Lead Plaintiff Under an Analysis of the First Three *Lax/Olsten Factors*

As demonstrated in the table below, Montgomery County has the largest financial stake in the litigation under each of the first three *Lax/Olsten* factors:

| Method For Determining Financial Interest | Montgomery County | Cason Family |
|---|---|---|
| Shares Purchased During the Class Period | 6,941 shares | 3,000 shares |
| Net Shares | 3,866 shares | 3,000 shares |
| Net Funds Expended | $76,505.06 | $36,000 |

Cason Family has not disputed these numbers, which were presented in the movants' certifications and loss charts filed with the opening motions for lead plaintiff. Cason Family also has not argued, because it cannot, that it is the movant with the largest financial interest under any of these three analyses.

Instead, with no authority to support its argument, Cason Family asserts that these factors "are of little assistance here because a large number of Montgomery County's purchases and expenditures resulted in gains that must be offset against its losses." Cason Opp. at n. 2. This position is not only transparently self-serving, but also untrue because the first three *Lax/Olsten* factors do not take in account gains or losses. Rather, gains and losses are the primary focus of calculations of "approximate loss," a completely different method of comparing financial interest which falls under the fourth *Lax/Olsten* factor. However, even under the fourth *Lax/Olsten* factor, as discussed below, Montgomery County has larger "approximate losses" than the Cason

Family.

### 2.   Montgomery County Is the Presumptive Lead Plaintiff Under the Fourth *Lax/Olsten* Factor

The fourth *Lax/Olsten* factor looks to the "approximate losses suffered by the plaintiffs." *Plymouth County Ret. Sys.,* 2009 WL 692141, at *2. Under the fourth factor, Montgomery County also has the largest financial interest of all movants, with losses of $10,010.16, compared to Cason Family's losses of $7,973.23.

The sole basis on which Cason Family disputes Montgomery County's position as presumptive lead plaintiff manipulates loss calculations and is designed to make Cason Family appear to have the largest financial interest in this litigation when it does not. Cason Family claims that Montgomery County "failed to offset the impact of fraud-related gains realized from certain transactions occurring during the Class Period." Cason Opp. at 2. However, as discussed in detail below, it is not necessary to offset gains to determine financial interest for purposes of the appointment of lead plaintiff pursuant to the PSLRA. Losses are properly calculated on a transactional basis: only damaged shares are relevant to an evaluation of damages or losses.

Cason Family also argues that a complex statutory provision regarding potential limitations on the maximum damages recoverable at trial for shares sold after the end of the Class Period should be applied to loss calculations at the lead plaintiff stage. On the contrary, the range of recoverable damages under the PSLRA, and any limitations thereto, are determined after expert discovery (including submission of expert reports and depositions of damage experts of all parties), and clearly have no place in the evaluation of "financial interest" for lead plaintiff purposes.[3]

---

[3] Montgomery County does not object to the application of 15 U.S.C. §78u-4(e)(1) to value shares that were never sold. While the application of §78u-4(e)(1) at this early stage in the litigation is imperfect, it is the most widely utilized measure for valuing shares that are still held.

### i.  Montgomery County Appropriately Excluded Its Class Period Sales

Contrary to Cason Family's argument, it is proper to exclude losses and gains incurred by "in-and-out" trades, *i.e.*, purchases and sales made during the class period, before any disclosure of truth. Indeed, *Dura Pharmaceuticals v. Broudo*, the seminal case on loss causation in securities litigations, disallows recovery for actual losses incurred before the first disclosure. 544 U.S. 336, 342-43 (2005). Moreover, *Dura* does not require "an investor who suffers damages from specifically identified transactions" to offset its losses with any potential gains, nor does it hold that an "investor's other trading in the company's stock is relevant to a claim for damages based on the isolated transactions." *In re Cigna Corp. Sec. Litig.*, 359 F. Supp. 2d 338, 354 (E.D. Pa. 2006) (finding, where lead plaintiff had losses on some shares, but did not have a cumulative net loss, "that there is a significant amount of authority which would allow a jury to apply a transaction-based methodology. . . to calculate economic loss and damages, rather than requiring the jury to apply a cumulative approach that aggregates transactions and off-sets gains and losses stemming from different transactions).[4]

### ii.  Montgomery County is the Presumptive Lead Plaintiff Even When Its Class Period Sales Are Included

Nevertheless, even if these intra-Class Period, *i.e.*, in-and-out transactions, were included in determining movants' financial interests for purpose of the court appointing a Lead Plaintiff,

---

[4] *See also In re Sepracor*, 233 F.R.D. 52, 54 (D. Mass. 2005) ("I disagree with [the] suggested cumulative methodology, which includes offsetting gains in the loss calculation. To the contrary, I find a transaction-based methodology, which allows claims for unprofitable transactions without offsetting that recoverable loss with gains from profitable transactions, to be more consistent with the provisions of the statute and rule."); *Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d 666, 680 (E.D. Pa. 2004) ("[We prefer a 'transaction-based' methodology that allows claims for unprofitable transactions . . . without offsetting the recoverable loss with gains from profitable transactions. . . By using the singular nouns 'purchase' or 'sale', Congress and the SEC focus on each transaction individually. Neither the statute nor the Rule authorize any sort of aggregation of purchases or sales that could sanction the cumulative approach. . . We are aware that a transaction-based methodology generates higher calculated damages than a cumulative methodology because the former ignores profitable transactions and the latter includes them to offset unprofitable transactions, but this feature is not indefensible.").

Montgomery County's losses are $8,085.27, which are greater than the Cason Family's $7,973.23 losses.

The Cason Family erroneously argues that Montgomery County's losses are $7,406.97 once intra-Class Period trades are included. *See Cason* Opp. at 7. The Cason Family's loss calculation is incorrect, in that it uses the wrong price for certain of the intra-Class Period trades made by Montgomery County. Specifically, for the shares sold by Montgomery County on April 21, 2010, the Cason Family used the stock's closing price on April 21, 2010 of $9.54, rather than the *actual* sale price of $8.97. Cason Opp. at n. 4 (applying 15 U.S.C. §78u-4(e)(2)). Using such machinations, the Cason Family was able to create the illusion that Montgomery County's losses are less than its own.

This, however, has been flatly and expressly rejected by other courts. The Cason Family applies 15 U.S.C. §78u-4(e)(2), a statutory provision which is inapplicable to the analysis of the largest financial interest for purposes of the lead plaintiff determination. Movants in other cases who have sought to apply this very same "90-day bounce back" provision to the lead plaintiff financial interest calculation have failed. In *In re Ribozyme Pharm. Inc. Sec. Litig. 192 F.R.D. 656,* (D. Co. 2000), a lead plaintiff movant made the "novel argument that to determine largest financial interest [the Court] should look to the recoverable damages as allowed by the PSLRA," including the "90-day bounce back" provision cited by Cason Family here. The court found that approach improper, stating:

> ***[T]he determination of financial interest does not equate to damages.*** Damages is a term of art and a technical matter to be established by experts. The lead plaintiff provision in the PSLRA does not use the term "damages" but instead, "largest financial interest." The Shareholders Group directs my attention to only one published case that tangentially considered PSLRA damages in determining the "largest financial interest." ***I hold, therefore, that "damages" under the PSLRA is not the proper test to determine largest financial interest.***

*Id.* (citations omitted) (emphasis added). Moreover, because 15 U.S.C. §78u-4(e)(2) is

contingent on numerous facts to be determined through discovery and expert testimony (including, *inter alia*, the exact and final date on which information correcting the misstatements and omissions is disseminated to the market, and the appropriate average price to be applied where plaintiff sold shares before the end of a single day in that 90-day period) it is an inappropriate measure to be used at this stage of the litigation.[5]

It is important that the movant with the "largest financial interest" prevail over the movant with the largest potential PSLRA damages (although Montgomery County has both here) because the movant with the largest financial interest has the greatest incentive to pursue every avenue for loss and damages recovery. Indeed, it appears that Cason Family is eager to concede, before any discovery or expert analysis, that numerous class members' losses should be restricted, reduced by unrelated gains, or reduced by a cap on damages that may not actually apply. Although this approach may be convenient for Cason Family to presently argue, as it does not negatively affect its own losses and helps create the misimpression that Cason Family has the largest financial stake in this litigation by one (albeit improperly executed) measure, these arguments are neither legally cognizable nor in the best interest of the Class.[6]

A loss calculation that takes into consideration intra-Class Period gains, as Cason Family

---

[5] Moreover, 15 U.S.C. §78u-4(e)(2) limits damages for shares sold within 90 days after the end of the Class Period to the *average* trading price of the stock from "the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security." Because Montgomery County sold its shares before the end of a single complete trading day in that 90-day period, the average closing price, *i.e.* the price Vitacost stock reached *after* Montgomery County's sale, is not a practical measure to determine the cap on damages. Montgomery County's losses cannot properly be reduced by later upward movement in the stock. It is for this very reason – to negate the influence of any post-sale stock movement – that the statutory provision limits damages based on the *to-date* average, rather than the 90-day average used for held shares. Expert analysis would be required to determine the "mean trading price" of the security between the full dissemination of information correcting the misstatements and Montgomery County's April 21, 2010, sale.

[6] Notably, Cason Family is eager to prematurely apply this statutory limitation on damages, but ignores the preferred method of calculating damages at trial, which does not offset gains. Cason Family cannot have it both ways.

urges this Court to apply – taking the amount paid for all shares (whether or not damaged) and subtracting the amount received for those shares (while only roughly estimating the value of the share which were never sold) – undermines the substance and purpose behind the PSLRA's "financial interest" language. By contrast, the more precise and appropriate method of calculating a lead plaintiff movant's financial interest in the litigation before any premature, hypothetical evaluation of loss causation, timing of purchases or sales, or potential damage provisions, *inter alia*, is the proper and accepted measure at the lead plaintiff stage.

Furthermore, as demonstrated by the table below, Cason Family has a marginally larger financial interest *only* when damage concepts are selectively applied – an approach which has no legal or mathematical basis. In *every* legitimate loss analysis, including in the three other *Lax/Olsten* factors, Montgomery County has the largest financial interest:

| Method For Determining Financial Interest | Montgomery County | Cason Family |
|---|---|---|
| **Simplified Financial Interest -** amount paid for shares minus amount received for shares (applying statutory provisions only to estimate the value of held shares) | $8,085.27 | $7,973.23 |
| **Financial Interest** (properly excludes intra-CP gains and statutory cap for post-CP sales) | $10,010.16 | $7,973.23 |
| **Estimated PSLRA Damages** (properly excludes intra-CP gains, prematurely applies estimated statutory cap for post-CP sales) | $9,331.86 | $7,973.23 |
| **Hybrid Approach** (improperly includes intra-CP gains; prematurely applies estimated statutory cap for post-CP sales) | $7,406.97 | $7,973.23 |

### iii. Even Under a Premature Assessment of Cognizable PSLRA Damages, Montgomery County is the Presumptive Lead Plaintiff

Assuming, *arguendo*, that it is appropriate to determine at this early stage how much of each movants' financial interest would amount to legally recoverable losses, the analysis would be far more complex than Cason Family suggests, as all applicable common law and statutory

limitations and concepts must be applied. Share price movement would also have to be adjusted for market and economic factors and non-fraudulent disclosures and statements. Courts predominately prefer, for the purpose of determining which movant is the presumptive lead plaintiff under the PSLRA, a simplified approach focusing on financial interest (straight, out-of-pocket losses, without regard to potential damage theories like statutory caps on damages or intra-class period gains or losses). Under either analysis, Montgomery County is the presumptive lead plaintiff.

Shareholders, after a result at trial or settlement, will receive the proportionate share of the recovery to compensate them for the inflation encompassed in the purchase price of each share they own. On the first day of the Class Period, when the first misstatements are made, each share is equally inflated by those misstatements. The amount of the inflation per share, and thus the legally cognizable recovery, increases as materially false and misleading statements are made. The more false and misleading statements that are made before any truth has been disclosed, the more the stock is inflated, and the more the purchaser who acquired that stock after misstatements is entitled to recover. Thus, the largest per share recovery will be attained by the movants who purchased shares later in the class period, as inflation increased; and the largest overall recovery will be attained by the movants who have purchased the largest quantity of shares at the most inflated prices.

Importantly, Montgomery County: purchased more shares at artificially inflated prices than Cason Family (6,941 vs. 3,000 shares purchased during the Class Period); spent more to acquire its holdings in Vitacost stock ($76,505.06 vs. $36,000); paid, on average, more per share ($19.79/share vs. $12/share); and held more stock as the truth was revealed and the stock declined in value (3,866 vs. 3,000 net shares). Moreover, Montgomery County, unlike Cason

Family, purchased shares in the Class Period at various times, after increasing materially false and misleading statements were made. In contrast, Cason Family purchased all 3,000 on the first day of the Class Period, the date of the IPO. Cason Family will thus only be able to recover the inflation created by the statements made in the IPO prospectus, as it could not have relied on any misstatements made after its purchase. *See, e.g., Roots P'Ship v. Lands' End,* 965 F.2d. 1411, 1420 (7th Cir. 1992) ("post-purchase statements cannot form the basis of Rule 10b-5 liability, because the statements could not have affected the price at which plaintiff actually purchased.) (citing *Blue Chip Stamps* v. *Manor Drug Stores, 421* U.S. 723, 755 (1975)). By comparison, Montgomery also made purchases on the day of the IPO (2,046 shares), but, as Cason Family acknowledges, Cason Opp. at 5-7, Montgomery County made various purchases during the Class Period at increasingly artificially-inflated prices. Thus, while it is too early in the litigation to estimate the exact degree of inflation, Montgomery County clearly and irrefutably would have the largest recoverable loss after all applicable statutory and common law provisions are applied.

## B. Cason Family Has Failed to Rebut the Presumption in Favor of Montgomery County

"So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Belmont Holdings Corp*, 2009 WL 3188695, at *2; *see also In re Cendant*, 264 F.3d at 268 ("once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job."). Cason Family has not made any arguments that Montgomery County fails to satisfy the typicality or adequacy requirements of Rule 23. *See also* Montgomery Opp. at 7-10 (discussing that Montgomery County has claims

that are similar to those of all class members and otherwise meets the typicality and adequacy requirements). Thus, because there is no evidence that Montgomery County will not fairly and adequately represent the Class, this Court should appoint Montgomery County as lead plaintiff.

## II.    THE COURT SHOULD APPROVE MONTGOMERY COUNTY'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select counsel to represent the Class, and this selection should not be disturbed unless necessary "to protect the interests of the class." *See* 15 U.S.C. §§ 78u-4(a)(3)(B)  and 77z-1(a)(3)(B). Montgomery County has selected KSF and Chimicles & Tikellis, LLP to serve as co-lead counsel for the Class. These firms and their attorneys have not only successfully prosecuted complex securities actions, but have also successfully prosecuted many other types of complex class actions. *See* Vianale Decl. Ex. C [D.E. 12]. The competing movants have not argued that Montgomery County's proposed lead counsel are unqualified to prosecute this case, and Montgomery County's selection of counsel should be approved.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Montgomery County respectfully requests that this Court: (1) appoint Montgomery County to serve as lead plaintiff in this action; (2) approve Montgomery County's selection of KSF and Chimicles & Tikellis, LLP as co-lead counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: August 19, 2010                    Respectfully submitted,

**VIANALE & VIANALE LLP**

_____*/s/* Julie Prag Vianale_____
Julie Prag Vianale (FBN 184997)
jvianale@vianalelaw.com
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Telephone: (561) 392-4750

Facsimile: (561) 392-4775

*Liaison Counsel for Montgomery County*
*Employees' Retirement Fund*

**KAHN SWICK & FOTI, LLC**
Kim E. Miller
500 Fifth Ave., Suite 1810
New York, NY 10110
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
          -and-
Lewis S. Kahn
206 Covington Street
Madisonville, Louisiana 70447
Telephone (504) 455-1400
Facsimile: (504) 455-1498

**CHIMICLES & TIKELLIS, LLP**
Kimberly M. Donaldson
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: 610-642-8500
Fax: 610-649-3633

*Counsel for Montgomery County*
*Employees' Retirement Fund and Proposed Co-*
*Lead Counsel for the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<div style="margin-left:40%">

*s/* Julie Prag Vianale
Julie Prag Vianale (FBN 184977)
jvianale@vianalelaw.com
2499 Glades Road, Suite 112
Boca Raton, FL  33431
Telephone:  (561) 392-4750
Facsimile:  (561) 392-4775

</div>

## SERVICE LIST (All by CM-ECF)

*Miyahira v. Vitacost.com, Inc., et al;* Case No.9:10-cv-80644-KLR
United States District Court, Southern District of Florida

Paul R. Bessette
bessette@gtlaw.com
Michael J. Biles
bilesm@gtlaw.com
Sandra D. Gonzalez
gonzalezsd@gtlaw.com
Royale Price
pricer@gtlaw.com
**Greenberg Traurig LLP**
300 W 6th Street, Suite 2050
Austin, TX 78701
Tel. (512) 320-7200 / Fax. (512) 320-7210

Joseph Clay Coates, III.
coatesj@gtlaw.com
**Greenberg Traurig LLP**
Phillips Point - East Tower
777 S Flagler Drive, Suite 300E
West Palm Beach, FL 33401
Tel. (561) 650-7900
Fax. (561) 655-6222

Attorneys for Defendants Vitacost.com, Inc., Allen S. Josephs, David N. Illfeld, Eran Ezra, Ira P. Kerker, Lawrence A. Pabst, Richard P. Smith, Robert G. Trapp, and Stewart Gitler

Paul J. Geller
pgeller@rgrdlaw.com
Douglas Wilens
dwilens@rgrdlaw.com
Sabrina E. Tirabassi
stirabassi@rgrdlaw.com
**Robbins Geller Rudman & Dowd LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809
Tel.: (561) 750-3000 / Fax: (56) 750-3364

Jeffrey A. Berens
jeff@dyerberens.com
**Dyer & Berens LLP**
303 East 17th Avenue, Suite 300
Denver, CO 80203
Telephone: 303/861-1764
303/395-0393 (fax)

Attorneys for Plaintiff Cason Family Trust and the Cason Family LTD Partnership

Maya Susan Saxena
msaxena@saxenawhite.com
Joseph E. White, III
jwhite@saxenawhite.com
Lester Rene Hooker
lhooker@saxenawhite.com
Christopher Steven Jones
cjones@saxenawhite.com
**Saxena White PA**
2424 N Federal Highway, Suite 257
Boca Raton, FL 33431
Tel. (561) 394-3399 / Fax. (561) 394-3382

Attorneys for Plaintiffs Andrea Miyahira and Craig Laub